UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, *ex rel.* Kipp Fesenmaier,<br><br>          Plaintiff,<br>v.<br><br>The Cameron-Ehlen Group, Inc., dba Precision Lens, and Paul Ehlen,<br><br>          Defendants. | No.  13-CV-3003 WMW/DTS<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL DISCOVERY** |

In its Interrogatories and Requests for Production, Defendants Cameron-Ehlen Group d/b/a Precision Lens and Paul Ehlen ("Defendants") requested information and documents related to allegations in government's Complaint in Intervention ("Complaint").  As set forth below, the government has refused to respond to  certain interrogatories.

Defendants are entitled to seek discovery on facts relevant to the elements of the government's claims against them.  Fed. R. Civ. P. 33(a)(2) ("An interrogatory may relate to any matter that may be inquired into under Rule 26(b) [and] . . . is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact . . . ."); *id at* 26(b) (permitting discovery to matter "relevant to any party's claim").  As such, Defendants respectfully request the Court grant its motion and compel the government to respond fully, as discussed herein, to Defendants Interrogatories Nos. 1, 2, and 3; Request for Production No. 5 as set forth below; and

1

provide a more fulsome and appropriate privilege log as required under Fed. R. Civ. P. 26(b)(5).

## ANALYSIS

**I.  The Government Improperly Refuses To Provide Its Factual Basis for Allegations In Its Complaint.**

An essential element of the government's claims under the Anti-Kickback Statute ("AKS") is proof that remuneration was paid to a provider. 42 U.S.C. § 1320a-7b(b)(2). Remuneration comprises the transfer of items or services for free or below value. *Miller v. Abbott Laboratories*, 648 Fed. App'x 555, 561 (6th Cir. 2016); *see also United States v. McClatchey*, 217 F.3d 823, 834 (10th Cir. 2000) (recognizing that money paid for services rendered is not unlawful remuneration under the AKS); a*ccord, e.g., United States v. Omnicare, Inc.*, 663 F. App'x 368, 374 (5th Cir. 2016).

In its Complaint, the government repeatedly asserts that the Defendants did not seek repayment of fair market value for social activities (e.g., hunting and fishing trips) with certain physicians in specific instances. The following are examples of specific allegations in the government's Complaint that fair market value (or "FMV") was not paid:

- Defendants took trips to Stock Farm Club, Sutton Bay, Big Narrows Resort, and White Lake, and that accompanying doctors "paid a nominal amount that was *well below the FMV* of the trips." *Compl.* [Doc.105] at ¶ 64-65 (emphasis added).

- In 2010 and 2011, Defendants allegedly took "Dr. Richard D on two hunting trips, paid for a $500 birthday meal for him, and took him out for a dinner that cost just under $400." *Id.* at ¶ 96. The government alleged that "Dr. D. paid a portion of the hunting trips and the associated travel, but at an amount *below fair market value*." *Id.* at ¶ 97 (emphasis added).

- In 2012, Defendants allegedly provided Dr. D. 325,000 SkyMiles for a trip. The Complaint alleges she was "invoiced for the miles at .05 cents per mile, *well below fair market value*." *Id.* at ¶ 121 (emphasis added).

- In January 2011, the Complaint alleges physicians were involved in a group ski trip but were "invoiced and paid at amounts *well below FMV*." *Id.* at ¶ 127 (emphasis added).

- In 2010, the Complaint alleges Dr. M reimbursed PL for a trip and private flight to Big Narrows Resort, but alleged it was "*well below FMV*." *Id.* at ¶ 131 (emphasis added).

- In December 2011, the Complaint alleges "Dr. D . . . was billed $212.50 for 42,500 Sky Miles . . . and $185.73 for a private flight" and that "Dr. L was also billed $185.73 for the private flight." The government alleges "The invoiced amounts are *well below FMV*." *Id.* at ¶ 139 (emphasis added).

In Interrogatories served on the government on October 15, 2018, Defendants specifically asked the government to provide the basis for these allegations. However, the government refused to respond to provide the basis for the specific allegations regarding fair market value in its Complaint:

> **INTERROGATORY NO. 2:** **Identify each alleged kickback, including but not limited to the alleged provider, the recipient, the date, the nature of the kickback. For each such instance, identify:**
>
> **a) The amount and form of payment by the alleged provider.**
> **b) The amount and form of payment by the alleged recipient.**
> **c) The estimated fair value.**
> **d) The basis for the valuation.**
>
> **ANSWER:** . . . . Defendants also ask the United States to calculate the fair market value ("FMV") of each trip and other form of remuneration. This request is objectionable because it places the burden on the United States when this is in fact Defendants' burden, and Defendants are in a position at this

3

> point in discovery to know more about various details than the United States.
>
> The value of the trips will be further explored in discovery, but it should be noted that the pertinent analysis under the FCA is whether the physicians received something of value. The trips in question qualified as remuneration in multiple ways. . . . .

*Relevant excerpt from Plaintiff United States of America's Answers to Defendants' First Set of Interrogatories,* attached to the Declaration of Alethea Huyser as Ex. 3, at 4-17.

In Mr. Beimer's letter dated November 28, 2018, the Defendants asked the government to at least identify the basis for the allegations set forth in the Complaint regarding fair market value. Corr. from T. Beimers, Huyser Decl., as Ex. 1. The government again declined. Corr. from C. Blumenfield, Huyser Decl., as Ex. 2.

The government must have a factual basis for the assertions in its Complaint. *See* Fed. R. Civ. P. 11(b) (attorney signature indicates "the factual contentions" in a pleading "have evidentiary support"). Under Rules 33(b) and 26(g), a party must 'furnish the information available to [it]" or—failing that—provide a statement "under oath" that "it lacks necessary information" to answer and "set forth in detail the efforts made to obtain the information." *In re Katrina Canal Breaches,* CIV.A. 05-4182, 2007 WL 1852184, at *3 (E.D. La. June 2007) (internal citations omitted) (collecting cases). Consistent with Rule 26(b), at this time, Defendants merely seek discovery of that factual basis for the allegations. If the government does not have a basis for an allegation, then the government should say so.

In correspondence, the government has asserted that they do not have the burden of proof on fair market value and that is an affirmative defense. Corr. from C.

4

Blumenfield, Ex. 2. This is inaccurate. In any event, the government's response is irrelevant for purposes of discovery. The government made allegations in its Complaint that "fair market value" for the social activities was not sought, and the government should be compelled to articulate its basis for these allegations. *See, e.g., Plumbers and Pipefitters Local Union No. 630 Pension-Annuity Trust Fund v. Arbitron, Inc.*, 278 F.R.D. 335, 338-39 (S.D.N.Y. 2011) (holding that discovery is "clearly" appropriate when it seeks information "prominently state[d] in [the Complaint's] allegations"); *Summit Recovery v. Credit Card Reseller*, No. 08-5273, 2009 WL 10678533, at *3 (D. Minn. Sept. 9, 2009) (granting motion to compel more fulsome response where "purpose of this discovery is to allow defendants to obtain the factual basis behind the allegations made by plaintiff in its Complaint").

Defendants request the Court order the government to identify the basis for each allegation it has made that fair market value has not been paid, or if the government has no basis for the allegation, to so indicate.

## II. The Government Has Improperly Refused To Identify The False Claims At Issue In the Case.

The Complaint alleges that "[a]s a result of Defendants' offer and payment of kickbacks in violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b), Defendants knowingly caused to be made or used false records or statements that were material to false or fraudulent claims for payment." *Compl.* at ¶ 64-65. Under a 2010 amendment to the AKS, a claim is "a false or fraudulent claim for purposes of [the

5

FCA]" when the claim "includes the items or services *resulting from* a violation of the [the AKS]." 42 U.S.C. § 1320a7b(g).

As noted by the government, the Complaint only includes "representative examples" of alleged kickbacks and alleged claims. Corr. from C. Blumenfield, Ex. 2. In its Interrogatories, Defendants sought identification of the claims the government alleges *result from* an alleged kickback, and the government has refused to respond.

> **INTERROGATORY NO. 1. Identify each false claim alleged to have been submitted to the United States Government, including but not limited to the date, amount, identity of the submitting entity, billing codes, facility, Surgical Supplies, and Compliant Physician associated with each claim. For each such instance, identify the breakdown of the facility fee and the physician fee.**
>
> **ANSWER.** The United States incorporates its General Objections as if stated herein. The United States objects to this interrogatory on the grounds that it seeks to discover information protected by the work product doctrine. Specifically, this interrogatory seeks to discovery the mental impressions, conclusions, opinions, legal theories, and anticipated trial strategy of the United States' counsel concerning this litigation. Such information is protected by case law and by Rule 26(b)(3). The United States further objects to this interrogatory in that discovery is ongoing and the United States is still learning about the conduct described therein. Finally, the United States objects to this interrogatory as it is overly broad and unduly burdensome in that it seeks identification of "each false claim."
>
> Subject to and without waiving its objections, the United States states that it has made its initial disclosures of Medicare claims for an initial group of physicians and facilities. It will supplement that production with claims data for additional physicians as discovery continues, including a supplemental production in the very near term.

Ex. 1, at 3-4.

*Despite six years of investigation*, the government contends that any request that they identify any of the false claims at issue in this case with more specificity is "premature." Corr. from C. Blumenfield, Ex. 2. Instead, in its Initial Disclosures, the government appears to have simply included approximately 200,000 claims of payment by Medicare during the 9-year relevant time period for the 29 physicians identified in the Complaint, as well as 23 additional physicians and 14 hospitals and surgical centers not named in the Complaint. Although the government has indicated in discussions that it may not assert that all of these claims were caused by improper kickbacks, it has also indicated it may supplement with even more. *See Plaintiff United States of America's Answers to Defendants First Set of Interrogatories*, Ex. 3 at 4 ("It will supplement that production with claims data for additional physicians as discovery continues.").

The claims data the government has produced and intends to supplement is massive, and obviously over-inclusive. Thus, the government seeks to impose an unnecessary burden on the Defendants and third-parties to conduct discovery and produce documents on claims the government may, or may not, contend are at issue. Given the number of physicians and hospitals and the relevant time period, the undue burden on the Defendants and third parties will be enormous. Furthermore, the government has provided no date by which identification of the claims at issue would not be "premature." The government apparently seeks to keep the Defendants in the dark regarding its claims until the close of discovery. This is fundamentally unfair and fails to

comport with the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 26(e)(A)(A) (requiring timely disclosure of responsive information).

Defendants request that the government be compelled to identify the claims at issue.  At a minimum, the government should be able to identify a specific physician tied to a particular time period during which it alleges the claims were caused by improper remuneration in violation of the AKS.

The alternative to the government's identification of the claims at issue is a continued fishing expedition by the government that imposes an undue burden and potentially unnecessary costs on the Defendants and over 50 physicians and other health care providers.  Such resulting burden and costs on the Defendants and third parties would be grossly disproportionate to the needs of the case.  *See, e.g.,* Fed. R. Civ. P. 45(c)(1) (requiring parties to take "reasonable steps to avoid imposing undue burden or expenses" on subpoena recipient).

Defendants respect the Court order the government:  (1) identify all currently known claims (by physician and time period) within two weeks of the Court's order, and (2) identify all claims at issue in the case at least 45 days prior to the close of discovery.

### III. The Government Has Failed to Produce Non-Privileged Documents or Even a Proper Privilege Log

In February 2013, the Department of Justice commenced a criminal investigation associated with Sightpath Medical, Inc.'s ("Sightpath") and the Defendants' relationship with physicians.  As part of that investigation, federal law enforcement agents interviewed numerous witnesses, including employees of Precision Lens, Sightpath, and,

we believe, physicians. We have been advised by the criminal Assistant U.S. Attorney that the criminal case is inactive. It also appears that the statute of limitations has long passed.

Among other things, Defendants requested that the government identify the individuals it interviewed and produce its memoranda of interviews. The government declined to do so:

> **INTERROGATORY NO. 3: Identify the persons the Government interviewed during its Investigation of the allegations in the Complaint.**
>
> **ANSWER:** The United States incorporates its General Objections as if stated herein. The United States objects to this interrogatory on the grounds that it seeks to discover information protected by the work product doctrine. Specifically, this interrogatory seeks to discover the mental impressions, conclusions, opinions, legal theories, and anticipated trial strategy of the United States' counsel concerning this litigation. Such information is protected by case law and by Rule 26(b)(3). The United States further objects on the basis of the law enforcement/investigatory files privilege, and the informant's privilege.

Ex. 3, at 17; and

> **REQUEST FOR PRODUCTION NO. 5: All reports of interviews and notes of interviews made by you in the context of Your Investigation of the allegations in this case.**
>
> **RESPONSE:** The United States incorporates by reference its General Objections and its Objections to Instructions implicated by this request, as stated above. The United States objects on the basis of the informant's privilege, the law enforcement/investigatory files privilege and work product doctrine and is withholding any responsive documents on these bases.

9

*Relevant excerpt from Plaintiff United States of America's Answers to Defendants' First Set of Requests for Production,* Huyser Decl., as Ex. 4, at 5-6.[1]

Making Defendants' efforts more challenging, the government produced a one-page privilege log, with only a cursory description of the categories of responsive information and documents it has withheld. It appears from the log that no government attorney participated in witness interviews, but the government has refused on the basis of privilege to identify the persons interviewed and produce the associated documents.

| Document Category | Work Product Doctrine | Law Enforcement/ Investigatory Files Privilege | Deliberative process privilege | Joint prosecution privilege/ common interest doctrine | Informant's privilege |
|---|---|---|---|---|---|
| Correspondence among government counsel | X | X | | | |
| Correspondence between government counsel and relator's counsel, including but not limited to disclosure statements and supplemental disclosure statements | X | | | X | X |
| Correspondence between case agents and witnesses, including but not limited to relator | X | X | | X | X |
| Correspondence between government counsel (agency counsel and/or DOJ counsel) and case agents | X | X | X | | |
| Documents drafted by government counsel | X | | X | | |
| Correspondence between government counsel and other federal agency counsel | X | | X | | |
| Notes and documents drafted by case agents in connection with the case, including but not limited to memoranda of witness interviews | X | | X | | X |
| Audio recordings of discussions with witnesses, primarily in connection with the criminal investigation | X | X | | | X |
| Correspondence between government counsel and government contractors | X | X | X | | |

*USA Privilege Log*, Huyser Decl., as Ex. 5 (highlighting added).

The government has asserted that these documents are all protected by a work-product privilege, and it bears the burden of establishing that privilege applies. *See In re Grand Jury Supoena Duces Teacum*, 112 F.3d 910, 925 (8th Cir. 1997). The work

---

[1] In addition to the Correspondence attached as Exs. 2 & 3, the parties met and conferred by telephone on December 6, 2018, at which time the parties discussed the documents at issue in these associated Requests for Production, as well as the privilege log. The parties agreed they were at an impasse.

product doctrine applies to materials "prepared in anticipation of litigation or for trial." *Id.* at 924 (citing Fed. R. Civ. P. 26(b)(3) and *Hickman v. Taylor*, 329 U.S. 495, 511 (1947)).  While this can involve materials prepared by law enforcement agents for an attorney, "it is not necessarily the case that when a law enforcement agent conducts a witness interview as part of a criminal investigation, he does so as an agent of a Government attorney."  *U.S. ex rel. Landis v. Tailwind Sports Corp.*, 303 F.R.D. 419, 424 (D.D.C. 2014) (hereinafter "*Landis I*") (citing *Untied States v. Nobles*, 422 U.S. 225, 238-39 (1975) (noting that law enforcement agencies have an "independent mission" to investigate potential crimes).

Nothing in the government's privilege log entries provides any suggestion that the investigative materials at issue were created at the direction of an attorney.  Nor do the log entries make any clear assertion that the materials were created in association with the civil case, as opposed to the criminal investigation.  In short, the government has not identified a legitimate basis for the asserted work-product privilege.  *Id.; In re Grand Jury Supoena Duces Teacum*, 112 F.3d at 924-25.

However, even if the government were able to establish that some of the at-issue documents constitute work product, discovery still would be appropriate.  Courts draw a distinction between "fact" work product, which can be discoverable upon a showing of substantial need and unavailability, and "opinion" work product, which reflects an attorney's mental process and is not discoverable.  Fed. R. Civ. P. 26(b)(3); *Upjohn Co. v. United States*, 449 U.S. 383, 401 (1981).  Under this distinction, even attorney notes and memoranda reflecting FBI interviews and reporting verbatim or near-verbatim

witness interviews have been deemed fact work product. *See, e.g., U.S. ex rel. Landis v. Tailwind Sports Corp.*, 303 F.R.D. 429, 431 (D.D.C. 2014) (hereinafter "*Landis II*") (citing *In re Sealed Case*, 124 F.3d 230, 236 (D.C.Cir. 1997); *United States v. Clemens*, 793 F. Supp. 2d 236, 252 (D.D.C. 2011); *In re health South Corp. Sec. Litig.*, 250 F.R.D. 8, 12-13 (D.D.C. 2008)).  <u>Here, Defendants seek only documents that are fact work product—*i.e.*, the notes and interviews which reflect the statements and information witnesses have made relevant to this matter.</u>

Furthermore, there are several reasons Defendants have a substantial need for the discovery and cannot obtain it through other means.  First, Defendants have no way to even identify who may have had relevant information, because the government has not only refused to provide the statements of witnesses, they have also refused to identify them.

Second, even if the government had provided the identities of witnesses and scope of their investigation, the government investigation has taken more than six years.  A substantial amount of time has passed since the beginning of the government's investigation, which may affect the content and recollection of witnesses.  As the Court explained in *Landis I*:

> The civil lawyers litigating this *qui tam* action have received a substantial advantage from having access to the fruits of the prior criminal investigation.  Regardless of whether a parallel civil investigation was underway at the time of the interviews, statements given to FBI agents and other criminal investigators . . . are critical sources of evidence for *both* sides.  They can be expected to identify the principal witnesses in the case, both inculpatory and exculpatory; to provide the witnesses' initial, unadorned testimony on key

> issues; and to reveal how the witnesses' testimony and recollections may have changed over time. For those reasons, they are unique sources of both affirmative evidence and impeachment material for which there is no substitute. Particularly in *qui tam* actions, fairness dictates that both sides have equal access to relevant witness statements developed by law enforcement in prior or parallel criminal investigations.

303 F.R.D. at 426. Discovery of investigative and interview materials is supported here for the same reason.

The government also asserts that a law enforcement investigatory privilege, informant's privilege, and deliberative process privilege apply to one or several of the categories of information and documents, even though, by bringing the case, the government has put at issue these factual materials. *See, e.g., Fed. Deposit Ins. Corp. v. Wise*, 139 F.R.D. 168, 170 (D. Colo. 1991). Again, the government bears the burden of supporting the asserted privileges, and the government's correspondence and log fail to provide an adequate basis for their assertion. *See, e.g., In re Sealed Case*, 856 F.2d 268, 271-72 (D.C. Cir. 1988) (requiring a formal claim of privilege by the head of department, based on personal consideration, and identity of specific information for assertion of privilege and explanation of why it properly falls within scope); *see also In re U.S. Dept. of Homeland Sec.*, 459 F.3d 565, 571 (5th Cir. 2006). Here, the information and documents sought by Defendants do not relate to investigatory methods or deliberation, but rather to the factual information from past investigations that are relevant to the case. Furthermore, these privileges are qualified common-law privileges, *id.*, and fail for the same reasons the government's work-product privilege claims fail. *Supra* at pp. 7-9.

Finally, the one-page privilege log produced by the government fails to comply with Fed. R. Civ. P. 26(b)(5). The categories on the log fail to describe "the nature of the documents [and] communications . . . not produced" sufficiently to "enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5). *See also Great Lakes Gas Transmission Ltd. P'Ship v. Essar Steel Minn., LLC*, Civ. No. 09-3037 (SRN/LIP) 2011 WL 13135650, at *10 (D. Minn. Mar. 3, 2011).

Defendants respect the Court order the government: (1) produce a privilege log that identifies specific documents withheld, and (ii) produce agent notes or reports of witness interviews.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request the Court grant Defendants motion to compel.

Dated:  February 7, 2019   *s/ Joseph T. Dixon III*_____
Joseph T. Dixon III (#0283903)
Alethea M. Huyser (#0389270)
**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402-1425
Telephone:  612.492.7000
jdixon@fredlaw.com
ahuyser@fredlaw.com

Thomas Beimers (MN #0394812)
Matthew J. Piehl (MN #0395942)
HOGAN LOVELLS US LLP
80 South Eighth Street
Suite 1225
Minneapolis, MN 55402
Telephone: (612) 402-3000

Facsimile: (612) 339-5167
Thomas.Beimers@hoganlovells.com
Matthew.Piehl@hoganlovells.com

***Counsel for Paul Ehlen and The Cameron-Ehlen Group, Inc., dba Precision Lens***