**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| United States of America, ex rel., et al., | Case No. 13-cv-3003 (WMW/DTS) |
| Plaintiffs, | |
| v. | **ORDER** |
| Cameron-Ehlen Group, Inc., et al., | |
| Defendants. | |

---

## INTRODUCTION

In this *qui tam* action under the False Claims Act, Defendants Cameron-Ehlen Group (d/b/a Precision Lens) and Paul Ehlen move to compel discovery responsive to several interrogatories and a document request served on the Government. Specifically, they seek the basis for allegations in the Complaint that doctors paid below fair market value for expensive trips arranged by Defendants, as well as the identification of specific false claims of which the Government is currently aware. Defendants also seek production of memoranda of interviews the Government conducted during its pre-suit investigation. Relatedly, Defendants argue that the Government, though asserting privilege in response to some of the discovery requests, has provided an inadequate privilege log that must be supplemented. Defendants are entitled to almost all that they seek.

## FACTS

The present action began more than five years ago when, in November 2013, Relator Kipp Fesenmaier filed a *qui tam* action under seal and served the United States Attorney's Office. Over an approximately four-year period, the Government sought—and received—eleven extensions of the deadline to intervene in the case. The Government

eventually decided to intervene against select defendants, including Precision Lens and Paul Ehlen, in late 2017. The Government filed its Complaint, which became the sole operative complaint, in February 2018. Compl. in Intervention, Docket No. 105; Order, Feb. 26, 2018, Docket No. 114.

Nearly a year before Fesenmaier filed his *qui tam* action, the Federal Bureau of Investigation began investigating Defendants' business activities. Herrett Decl. ¶¶ 2-3, Docket No. 182. The FBI interviewed Precision Lens employees in 2013, coordinating at least minimally with the United States Attorney's Office. *Id.* at ¶ 4; Beimers Decl. ¶ 2, Docket No. 103. By 2014, Assistant United States Attorneys with the Office's civil division were coordinating regularly with the FBI on the investigation, including interviews of Precision Lens employees and customers. Herrett Decl. ¶ 5; Beimers Decl. ¶ 3.

## ANALYSIS

Defendants bring the present motion to compel, seeking more fulsome responses to three Interrogatories and a Request for Production of Documents. Federal Rule of Civil Procedure 26(b) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." The rule contemplates a liberal scope of discovery, though this Court "possess[es] considerable discretion in determining the need for, and form of, discovery." *In re Nat'l Hockey League Players' Concussion Injury Litig.*, 120 F. Supp. 3d 942, 949 (D. Minn. 2015).

**I.     Basis for Allegations of Below Fair Market Value Transfers**

In its Complaint, the Government alleges specific instances of physicians who were remunerated by not paying the full fair market value for trips and other benefits

2

provided by Defendants. *E.g.*, Compl. ¶¶ 56, 64-65, 97, 102, 121, 127, 131, 139. Defendants seek the Government's estimation of the fair market value regarding these specific allegations, and the basis of such estimations. Their original Interrogatory was considerably broader:

> **INTERROGATORY NO. 2:** Identify each alleged kickback, including but not limited to the alleged provider, the recipient, the date, the nature of the kickback. For each such instance, identify:
> a) The amount and form of payment by the alleged provider.
> b) The amount and form of payment by the alleged recipient.
> c) The estimated fair value.
> d) The basis for the valuation.

Huyser Aff. Ex. 3, at 4, Docket No. 175-1. Although the Government partially answered the Interrogatory, it objected to providing an estimation for the fair market value "because it places the burden on the United States when this is in fact Defendants' burden, and Defendants are in a position at this point in discovery to know more about various details than the United States."[1] *Id.* at 4-5.

Because the Government made specific allegations in the Complaint regarding fair market value, the factual basis for those allegations is presumptively discoverable. Factual contentions must either "have evidentiary support or, if specifically so identified, will likely have evidentiary support after reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b); *see also Summit Recovery v. Credit Card Reseller*, Civ. No. 08-5273 (DSD/JSM), 2009 WL 10678533, at *3 (D. Minn. Sept. 3, 2009) (noting that plaintiff must be "aware of the information sought by [the] discovery" because it was the factual basis for an allegation subject to Rule 11). That the Interrogatory is possibly a contention interrogatory does not, alone, alter that presumption of discoverability. Fed. R. Civ. P. 33(b). Although courts often allow parties to wait until the end of discovery to

---

[1] The Government reiterated this position in a letter to Defendants' counsel. Huyser Aff. Ex. 2, at 2.

answer contention interrogatories, *BB&T Corp. v. United States*, 233 F.R.D. 447, 450 (M.D.N.C. 2006), the Government mentioned specific instances of below fair market value payments in its Complaint for which it must have had some basis. Defendants may discover the basis for these initial allegations at this stage of the litigation, even if it is not the full universe of facts that ultimately are offered in support of the allegation at trial.

The Government's remaining arguments on this issue are unpersuasive. It argues that Defendants bear the burden of proof on the question of fair market value, and further stresses that a payment need not be below fair market value to be a remuneration under the Anti-Kickback Statute. None of this is relevant to the question currently before the Court. The Government made allegations in its Complaint for which it must have had some basis. That basis is discoverable at this stage of the litigation. The Government shall state its estimation for the fair market value of the specific allegations in the Complaint, as well as its basis for each of those estimations. If it does not have an estimation, the Government must still state the basis for its allegations.

## II. Identification of False Claims

Defendants next seek a more exacting response to their first Interrogatory, which sought specification of the alleged false claims at issue in this case, but to which the Government objected:

> **INTERROGATORY NO. 1:** Identify each false claim alleged to have been submitted to the United States Government, including but not limited to the date, amount, identity of the submitting entity, billing codes, facility, Surgical Supplies, and Complaint Physician associated with each claim. For each such instance, identify the breakdown of the facility fee and the physician fee.
>
> **ANSWER:** . . . The United States further objects to this interrogatory in that discovery is ongoing and the United States is still learning about the conduct described therein. Finally, the United States objects to this

4

interrogatory as it is overly broad and unduly burdensome in that it seeks identification of "each false claim."[2] . . .

Huyser Aff. Ex. 3, at 3-4. After objecting, the Government directed Defendants to its initial disclosures, which identifies all claims from specific physicians during the relevant time period.

The parties' disagreement is fundamentally about the appropriate timeline for this discovery. The Government insists that Defendants have served a contention interrogatory and that it will be prejudiced by having to respond this early in the discovery process. It also suggests that Defendants are well aware of the claims at issue because they are aware of many of the trips and other remunerations at issue. Defendants retort that the Government has been investigating the matter for nearly six years and that the allegedly false claims at issue must be narrowed in time for Defendants to conduct their own discovery and avoid potentially large costs associated with investigating every claim for every identified physician.

Defendants' Interrogatory may well be a contention interrogatory, but the Government must still respond. And it may do so now without being prejudiced. Interrogatories—including contention interrogatories—"may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(b). "Contention interrogatories that seek damage theory and methodology information almost invariably will comport with the requirements of Rules 26(b)(1) and 33(c)." *Honeywell Int'l Inc. v. Furuno Elec. Co., Ltd.*, Civ. No. 09-3601 (MJD/TNL), 2013 WL 2385224, at *4 (D. Minn. May 30, 2013) (quoting *U.S. ex rel Tyson v. Amerigroup Ill., Inc.*, 230 F.R.D. 538, 544

---

[2] The Government also objected on the basis of the work product doctrine, but it did not further that argument in either its briefing or at the motion hearing. Because the party asserting the privilege bears the burden of establishing its applicability, the Court will not pursue the issue. *See In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 925 (8th Cir. 1997).

5

(N.D. Ill. 2005)). Here, identification of the specific claims allegedly tainted by kickbacks is relevant to damages calculations at trial. And, frankly, it is relevant to Defendants' valuation of the case, a fact which favors providing such information sooner rather than later. Identification of specific claims allows Defendants to conduct third-party discovery on only those claims actually at issue without wasting resources on potentially hundreds or thousands of irrelevant claims that were made by a physician years after an alleged kickback.

The Government will not be prejudiced by answering the Interrogatory to the extent of its current knowledge. As to its scope, the request is not as broad as the Government suggests, as it does not "seek a catalog of all facts or all evidence that support a party's contentions." *Linde v. Arab Bank, PLC*, 2012 WL 957970, at *1 (E.D.N.Y. March 21, 2012). It merely seeks the identification of the claims that the Government contends supports its damages calculation, not every fact that undergirds why the Government thinks that particular claim is tainted by a kickback. Nor will the Government be "hemmed into fixing its position without adequate information" by answering the Interrogatory now. *See Strauss v. Credit Lyonnais, S.A.*, 242 F.R.D. 199, 233 (E.D.N.Y. 2007). Although such concerns may be real when the interrogatory seeks the detailed factual basis of a contention when discovery has just begun, such is not a concern here. The Interrogatory does not ask for a complete theory of *why* the claim is a false claim, but only seek to identify relevant claims. So there is no "hemming into" a particular theory. And as the court in *Strauss* noted, "plaintiffs are under an ongoing obligation to supplement their discovery responses."" *Id.* at 235. The Government can identify additional claims to be added or claims to be removed as discovery continues. So, there is no prejudice to its damages claim by providing an initial response.

The Government shall answer Defendants' Interrogatory No. 1 to the extent of its current knowledge regarding specific claims, without prejudice to further supplementation as discovery progresses. It shall also identify, without prejudice to further supplementation, any specific physicians and alleged remunerations it currently knows about, as well as the duration of any taint to claims it alleges stems from said remuneration. All supplementation of this information must be completed no later than 45 days before the close of discovery.

## III.     Privilege Log

Before turning to the final and thorniest discovery issue, the witness interviews, the Court must address the Government's privilege log. The log, one page long, sorts responsive documents into nine broad categories and then "checks the box" of one or more asserted privilege for each category. Huyser Decl. Ex. 5. This is insufficient. As discussed further below, the party asserting a privilege against discovery bears the initial burden. Though "[t]here is no 'privilege log' rule[,] . . . the privilege log is a convention of modern legal practice designed to conform with the requirements of Federal Rule of Civil Procedure 26(b)(5)." *Bartholomew v. Avalon Capital Grp., Inc.*, 278 F.R.D. 441, 447 (D. Minn. 2011). Rule 26 requires a party asserting a privilege to "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(ii); *see also In re Wirebound Boxes Antitrust Litig.*, 129 F.R.D. 534, 537 (D. Minn. 1990).

The Government's broad categories do not provide sufficient information that allows Defendants to assess the asserted privileges. This was made apparent in the recent status conference, when the parties discussed with the Court the disclosure of

7

certain surreptitious audio recordings made by the Relator. The Government had initially withheld these recordings as privileged and categorized them as "Audio recordings of discussions with witnesses, primarily in connection with the criminal investigation." This broad category could also include recorded interviews with witnesses conducted by the FBI or U.S. Attorney's Office. Indeed, the average reader of the log would likely not even consider surreptitious recordings as falling into that category. And that is exactly why the log as provided does not enable Defendants to assess any privilege claim for the documents within the categories, as they are entitled to under Rule 26(b).

To the Government's credit, it has provided a fuller supplemental privilege log for interview reports and other investigative materials. Samie Decl. Ex. A, Docket No. 181-1. Although not always dispositive, such a log at least homes in on the applicable issue in the asserted privilege. The Government shall provide a more fulsome privilege log, akin to the limited supplemental log already provided, for all documents it withholds based upon an asserted privilege. The log should identify each document's date, author, all recipients, a brief description of the document's contents, and the privilege asserted. The Government shall have two weeks from the date of this Order to provide Defendants with this supplemental privilege log.

## IV. Investigation Interviews

Defendants served discovery requests regarding interviews conducted by the Government during the course of its investigation:

> **INTERROGATORY NO. 3:** Identify the persons the Government interviewed during its Investigation of the allegations in the Complaint.
>
> **REQUEST FOR PRODUCTION NO. 5:** All reports of interviews and notes of interviews made by you in the context of Your Investigation of the allegations in this case.

Huyser Decl. Ex. 3, at 17; Ex. 4, at 5. The Government declined to answer either discovery request, citing the work product doctrine, the informant's privilege, and the investigatory files privilege. *Id.* at Ex. 3, at 17; Ex. 4, at 5-6. In its perfunctory privilege log, the Government also appears to invoke the deliberative process privilege. *Id.* at Ex. 5.

Of the various privileges asserted by the Government, only the work product doctrine warrants extended discussion. Each of the three other privileges alluded to is a qualified or narrow privilege under the common law, and the onus is on the asserting party to demonstrate its applicability. *See, e.g.*, *Elnashar v. Speedway SuperAmerica, LLC*, 484 F.3d 1046, 1052-53 (8th Cir. 2007) (informant's privilege); *Redland Soccer Club, Inc. v. Dep't of Army of U.S.*, 55 F.3d 827, 854 (3d Cir. 1995) (deliberative process privilege); *Stephens Produce Co., Inc. v. N.L.R.B.*, 515 F.2d 1373, 1376-77 (8th Cir. 1975) (investigatory files privilege). Beyond mere invocation, the Government has made no effort to satisfy its burden on any privilege asserted other than the work product doctrine, so the Court will not attempt to analyze their applicability to the present case. Even as to the work product doctrine, the Government has not demonstrated its applicability to Defendants' Interrogatory that merely asks who it interviewed as part of the investigation. Anyway, it is unlikely that the doctrine would cover such information, which is neither a "document" or "tangible thing," and the information, at least by itself, does not "inherently reveal the attorney's mental impressions." *Onwuka v. Federal Express Corp.*, 178 F.R.D. 508, 512-13 (D. Minn. 1997) ("[A]ccording to the great weigh of authority, while Rule 26(b)(3) affords protection for documents and tangible things, the underlying facts are not protected by the work-product doctrine"); *but see United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 270 F. Supp. 3d 220, 223-25

9

(collecting cases that show courts are split regarding applicability of work product doctrine to interrogatories that seek the identity of interviewees).

The assertion of the work product privilege to the document request is a trickier issue. For approximately a year before Fesenmaier filed this *qui tam* action, there was a criminal investigation involving the Defendants. The civil investigation ran parallel to, and likely intertwined with, this criminal inquiry for some while before the present action became the only case the Government chose to pursue. So, Defendants' discovery request encompasses interviews conducted by the FBI independent of the United States Attorney's Office, interviews conducted by FBI agents at the behest of, or even overseen by, the U.S. Attorney's Office, and interviews conducted by Assistant United States Attorneys themselves.[3] Where a particular memorandum falls on this list may determine whether the doctrine applies at all, and, if so, whether its application is surmountable by a showing of need. But the Court does not have in the record before it sufficient facts to definitely conclude which documents are protected by the work product doctrine, the application of which is sensitive to the specific facts of each document. The most logical path forward is for the Government to produce any responsive document, subject to the following guidance.

First, some unproduced documents are likely not work product at all. As the asserting party, the Government "must show the materials were prepared in anticipation of litigation, i.e., because of the prospect of litigation." *PepsiCo, Inc. v. Baird, Kurtz & Dobson LLP*, 305 F.3d 813, 817 (8th Cir. 2002). The Government is correct that this does not require a case to be literally filed, *id.*, and that the privilege may extend to materials created by an attorney's agent, *e.g.*, *In re Green Grand Jury Proceedings*, 492

---

[3] The supplemental privilege log suggests that this last category is not really at issue, as all of the interviews were apparently conducted by FBI agents. Samie Decl. Ex. A.

F.2d 976, 981-82 (8th Cir. 2007). What is less certain is whether the materials produced early in the investigation satisfy this fact-specific test. The Court's limited understanding of the investigation is that the civil division of the U.S. Attorney's Office did not become meaningfully involved in the investigation until 2014. Herrett Aff. ¶¶ 4-5. Even as to the criminal investigation, it is unclear how much control the U.S. Attorney had over the early interviews, as the special agent who oversaw the investigation only attests that she "discussed" interview subjects with an assistant U.S. Attorney, not that she was directed to cover specific topics. *Id.* at ¶ 4. But law enforcement agents are not necessarily agents of the government attorney. *United States ex rel. Landis v. Tailwind Sports Corp.*, 303 F.R.D. 419, 424 (D.D.C. 2014). Given the FBI's "independent mission to investigate potential criminal offenses, which [it] routinely pursues without supervision or even involvement by Government attorneys[,]" *id.*, the Court is loath to conclude on this thin record that the pre-2014 FBI interview materials were created by an attorney's agent. Accordingly, the Court finds that the work product doctrine does not apply to those documents, irrespective of their content.

Those materials created by FBI agents after the U.S. Attorney's Office became more intimately involved in 2014 are more properly characterized as the work of an attorney's agent. But that does not end the inquiry. Since the Supreme Court decided *Upjohn Co. v. United States*, 449 U.S. 383 (1981), courts have distinguished between opinion work product, "which encompasses counsel's mental impressions, conclusions, opinions or legal theories," and fact work product, which "includes raw factual information." *In re Green*, 492 F.3d at 980-81 (cleaned up). Of these, opinion work product enjoys a near absolute privilege, but fact work product can be discovered under

Rule 26 "upon a showing of substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship." *Id.* at 980.

The Eighth Circuit has opined that notes and memoranda of a witness interview are opinion work product because "when taking notes, an attorney often focuses on those facts that she deems legally significant." *Id.* at 981-82 (quoting *Baker v. General Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000)). The Government thus urges the position that any FBI notes or memoranda that is work product is opinion work product for which the Defendants have not demonstrated the incredibly high burden to get. That is not so obvious. The rationale of the Eighth Circuit's holding emphasizes the analysis an attorney (or agent) conducts when choosing to memorialize certain facts while disregarding others. This is consistent with the D.C. Circuit's position, re-articulated by the United States District Court for the District of Columbia in *Landis*, that the fact work product standard applies to notes or memoranda "that the lawyer has not sharply focused or weeded." *In re Sealed Case*, 124 F.3d 230, 236 (D.C. Cir. 1997) (reversed on other grounds). Although some, or even many, of the FBI reports may be opinion work product, the Court cannot say with confidence without reviewing the individual documents. If a memorandum is a "nearly verbatim transcript[]" of the interview, then the Court is inclined to find it to be fact work product. *In re HealthSouth Corp. Sec. Litig.*, 250 F.R.D. 8 (D.D.C. 2008).

For those documents properly viewed as fact work product, the Court is satisfied that Defendants have demonstrated both substantial need and the inability to otherwise obtain the information without undue hardship. Fed. R. Civ. P. 26(b)(3)(A)(ii). The *Landis* opinion is persuasive on this matter. As the court in that case noted, the civil lawyers in this matter have had the benefit of the prior criminal investigation, which

produced "critical sources of evidence for *both* sides." *Landis*, 303 F.R.D. at 425. This is truer here, where the Government conducted a parallel investigation and shaped the later parts of the criminal investigation. Although many of the witnesses were Precision Lens employees, the contemporaneous notes and memoranda are unique because they "provide the witnesses' initial, unadorned testimony . . . and reveal how the witnesses' testimony and recollections may have changed over time." *Id.* at 426. The investigation in this case began in late 2012; it is now 2019. The passage of time alone prejudices Defendants' ability to obtain the same information by interviewing the witnesses today. By extending the start of this case for almost four years through eleven requests to extend the deadline to intervene, the Government contributed to the Defendants' need for, and inability to otherwise obtain, the same information which now exists solely in the Government's possession.

The Government shall provide Defendants with all responsive documents, subject to the opportunity to submit any document for *in camera* review for privilege. Documents submitted for review may be submitted as either being privileged in their entirety, or submitted for approval of reasonable redactions. An example of such a reasonable redaction would be the redaction of minor commentary or analysis within a document that is otherwise a near verbatim recreation of an interview.

**ORDER**

IT IS HEREBY ORDERED that:

1. Defendants' Motion to Compel Discovery [Docket No. 172] is GRANTED.

2. The Government shall supplement its response to Defendants' Interrogatory No. 2 by providing its estimation of the fair market value of the specific

13

allegations it made in the Complaint that physicians paid below fair market value for trip or benefit, as well as its basis for each of each estimation.

3. The Government shall answer Defendants' Interrogatory No. 1 to the extent of its current knowledge regarding specific claims, without prejudice to further supplementation as discovery progresses. It shall also identify, without prejudice to further supplementation, any specific physicians and alleged remunerations it currently knows about, as well as the duration of any taint to claims it alleges stems from said remuneration. All supplementation of this information shall be completed no later than 45 days before the close of discovery.

4. Consistent with the discussion of the work product doctrine in this Order, the Government shall answer Defendants' Interrogatory No. 3. It shall also produce all documents responsive to Defendants' Document Request No. 5, but may submit any documents or proposed redactions to the Court for *in camera* review. No further briefing will be permitted.

5. The Government shall produce a supplemental privilege log that identifies each individual document it continues to claim is privileged. The log should include the date of the document, author, all recipients (including "cc" and "bcc" recipients), a brief description of the document's contents (e.g., "legal advice regarding operation of Anti-Kickback Statute"), and the privilege asserted.

Dated: April 2, 2019
s/David T. Schultz
DAVID T. SCHULTZ
United States Magistrate Judge