UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civ. No. 13-3003 (WMW/DTS)

United States of America,
*ex rel.* Kipp Fesenmaier,

Plaintiffs,

v.

The Cameron-Ehlen Group, Inc.,
d/b/a Precision Lens, and
Paul Ehlen

Defendants.

**MEMORANDUM IN SUPPORT
OF MOTION TO COMPEL
ATTORNEY-CLIENT
COMMUNICATIONS AND
WORK PRODUCT**

## I.      INTRODUCTION

Defendants the Cameron-Ehlen Group, Inc. d/b/a Precision Lens and Paul Ehlen

intend to defend this case by relying on the advice counsel provided them from 2006 to

2015 regarding Defendants' compliance with fraud and abuse laws, including the federal

Anti-Kickback Statute, as part of their day-to-day business practices. Plaintiffs the United

States of America and Relator Kipp Fesenmaier respectfully move this Court for an order:

(1) finding that Defendants have waived any attorney client privilege or work product

protection relating to this subject matter; (2) directing Defendants to immediately produce

all documents relating to this advice; (3) clarifying for any outside law firms the scope of

Defendants' subject matter waiver and that they should not withhold documents relating to

this advice; (4) requiring Defendants to submit a comprehensive privilege log of all

materials they continue to withhold; and (5) requiring Defendants to provide complete

responses regarding facts supporting their good faith and/or advice of counsel defense, in response to Plaintiffs' Interrogatory 9.

Defendants improperly limit the scope of their waiver to certain attorneys, as opposed to the subject matter of their advice of counsel defense. This construction is inconsistent with the law governing the advice of counsel defense, and concomitant waiver of the attorney-client privilege and work product doctrine. *See PaineWebber Group, Inc. v. Zinsmeyer Trusts P'ship*, 187 F.3d 899, 991-92 (8th Cir. 1999).

Of particular concern, Defendants continue to withhold communications involving Attorney Thomas Beimers on the basis that he is current trial counsel for Precision Lens. This ignores Attorney Beimers' role providing counsel to Defendants for years during the government's False Claims Act (FCA) investigation, wherein he provided advice about kickbacks Defendants provided or considered providing through 2015. In a similar case, the United States District Court for the District of South Carolina recently ordered FCA defendants to produce attorney-client communications and work product involving counsel that advised them during the government's investigation, where such materials related to the subject matter of the defendants' advice of counsel waiver and occurred during the timeframe of unlawful conduct alleged in the complaint. *United States ex rel. Lutz v. Berkeley Heartlab, Inc.*, No. 9:11-CV-1593-RMG, 2017 WL 1282012 at *2–3 (D.S.C., Apr. 5, 2017).

Defendants' continued withholding prejudices Plaintiffs because it would allow Defendants to hold back legal advice regarding compliance with fraud and abuse laws, including the federal Anti-Kickback Statute, as part of their day-to-day business practices

during the exact period of time at issue in the Complaint. This includes: (1) advice that Defendants followed; (2) advice that Defendants did not follow; (3) advice that contradicts advice Defendants intend to rely on; and (4) communications that show Defendants' state of mind.

It is critical that Plaintiffs receive prompt timely relief on this issue, as Defendants seek to assert that they took actions in good faith and/or in reliance on attorney advice. Plaintiffs are entitled to learn the nature of that advice prior to deposing the key witnesses in this case.

## II.    BACKGROUND

This motion involves Defendants' recent formal assertion of the advice of counsel defense and their corresponding subject matter waivers of the attorney-client privilege and work product doctrine, to include any documents withheld on these bases. Defendants have not produced – or properly logged – all records that fall within the scope of these waivers. Defendants' continued withholding and deficient logging is inconsistent with the law governing the advice of counsel defense, as well as Defendants' own treatment of its records to date, as set forth below.

### A.  Defendants Log and then De-Log Privileged Communications (LOG 1 and LOG 2) of Attorney Thomas Beimers.

Before intervening in this lawsuit, the United States conducted an investigation to determine if Precision Lens and Paul Ehlen, among others, violated the FCA. (*See* Declaration of Bahram Samie (hereinafter "Samie Decl.") ¶ 2.) During the investigation, Precision Lens produced a privilege log ("LOG 1") in connection with its document

production. (*Id.*, Ex. A, LOG 1) All logged materials were created within the relevant time period defined by the Complaint, January 1, 2006 – December 31, 2015. (*Id.*)

LOG 1 lists over one hundred withheld communications specifically identifying Attorney Thomas Beimers providing legal advice to Defendants. (*See id.*) Approximately half (66) of the entries mention an ongoing government investigation or ongoing litigation, and approximately half (52) do not. (*Id.*) For those that do not, LOG 1 describes the communications as related to discrete events or transactions involving remuneration to be paid by Defendants to their customers. (*See id.*) For example, LOG 1 describes some of the withheld documents as follows:

- Confidential document reflecting legal advice of Thomas Beimers* regarding kickback liability.

- Confidential communication from [Attorney Beimers] providing legal advice regarding compliance with fraud and abuse laws in connection with trips for physicians to product demonstrations.

- Confidential document to facilitate legal advice by Thomas Beimers* regarding kickback liability.

- Confidential communication to [Attorney Beimers] seeking legal advice regarding legal implications of paying for physician travel.

- Confidential communication to [Attorney Beimers] seeking legal advice regarding potential liability for product demonstration trips.

- Confidential document [provided to Attorney Beimers] to facilitate legal advice regarding potential kickback liability for marketing expenses.

- Confidential communication reflecting legal advice of Thomas Beimers* and providing legal advice regarding selling Delta Skymiles to customers.

4

- Confidential communication to [Attorney Beimers] seeking legal advice regarding a draft consulting agreement.

(*Id.*) LOG 1 also identifies, among other things, over five hundred withheld records where Precision Lens' former chief financial officer (CFO), Christopher Reichert, is the only named attorney; over 100 withheld records involving Defendants' outside counsel, Gina Kastel; and 90 withheld records deemed "non-responsive." (*Id.*)

On December 28, 2018, during this litigation, Defendants provided the government an updated privilege log ("LOG 2"). (Samie Decl., Ex. B, LOG 2) LOG 2 significantly overlaps with LOG 1, but omits <u>every single</u> entry mentioning Attorney Beimers. (*See* Samie Decl., Ex. C, summary report of de-logged items.) LOG 2 also omits a number of additional LOG 1 entries that do not specifically identify Attorney Beimers. (*Id.*) Defendants identified most of these entries as "non-responsive," while others as "responsive". (*Id.*)

Defendants also de-logged communications that should have never been withheld in the first place, and then delayed considerably in producing them to Plaintiffs. Specifically, Defendants withheld communications involving legal advice from Attorney Beimers that Reichert forwarded to physician/client Richard Lindstrom. (*See* Samie Decl., Ex. D, PL0183331-33.) Despite de-logging the Lindstrom entries on December 28, 2018, Defendants did not produce them to the government until March 8, 2019. (*Id.*) (*See also* Samie Decl., Ex. E, PL0204590-92 (a similar chain involving attorney advice forwarded to Lindstrom, which was improperly withheld and then produced on March 8th).)

LOG 2 continued to log, among other things, hundreds of communications with Reichert as the only putative attorney. (Samie Decl., Ex. B.)

### B.  Defendants Assert Advice of Counsel Defense and Waive Privilege.

Defendants asserted the following affirmative defense in their Answer:

> 13. The Government's claims are barred, in whole or in part, because any actions taken by Defendants with respect to matters at issue in the Complaint were undertaken in good faith, in accordance with established industry practice, *in compliance with reasonable interpretations of applicable laws, rules, and regulations, and/or in reasonable reliance upon regulatory interpretations and judgments by the United States or any agent or contractor thereof upon whom Defendants were entitled to rely.*

(Dkt. No. 157, Answer at 110 (emphasis added).) Similarly, in the parties Joint Rule 26(f) report, Defendants stated: "At all times relevant to the Complaint in Intervention, Precision Lens and Paul Ehlen worked in good faith to comply with relevant industry guidance, including the Advanced Medical Technology Association (AdvaMed) Code of Ethics on Interactions with Health Care Professionals, *and consulted with their counsel to ensure that all of their interactions with physicians was ethical and legal.*" (Dkt. No. 145, Joint Rule 26(f) report (emphasis added).)

The government sought discovery with respect to these defenses, but Defendants have been generally unwilling to provide details. In response to Interrogatory 8, which seeks facts and circumstances that form the basis for each defense, Defendants provided no information, other than referring the government to its Answer, which contains 21 affirmative defenses, and a reservation of rights to assert additional defenses. (Samie Decl. Ex. F, Defs' Answers to Interrogatories at 9.) Defendants' Answer does not appear to include information relevant to any of these defenses, let alone affirmative defense # 13.

(*See, generally*, Answer.) Similarly, Interrogatory 9 asks Defendants to specifically clarify whether they intend to reference communications with counsel in defense of this matter, details of the communications, and to identify all documents that relate to such advice. (Samie Decl., Ex. F at 10.) On November 28, 2018, despite possessing the relevant communications for several years, Defendants stated that they were still reviewing the relevant advice and would determine whether they will waive any applicable privilege before the close of fact discovery and permit Plaintiffs time to conduct discovery. (*Id.*)

Defendants' initial disclosures did not identify Chris Reichert as an attorney for Precision Lens. (Samie Decl., Ex. G, Defs' Rule 26(a)(1) Initial Disclosures at 2.)  But Defendants listed materials on LOG 1 and LOG 2 that suggested that they were treating him as an attorney in this matter. (Samie Decl., Exs. A-B.)  On March 5, 2019, after giving Defendants an additional three months to consider their position, the government sought clarification regarding Defendants' treatment of Mr. Reichert. (Samie Decl. Ex. H, Letter dated March 5, 2019.)

The government highlighted 538 e-mail communications from LOG 2 where Mr. Reichert is listed the only attorney and asked:

1.    Do Defendants intend to treat Christopher Reichert as an attorney in this matter;

2.    Do Defendants intend to reference or rely on communications with counsel in defense of this matter; and

3.    The facts and circumstances that form the basis for affirmative defense # 13 set forth in the Answer.

7

(*Id.*) The government also inquired whether Defendants had withdrawn the privilege designations for the hundreds of de-logged entries from LOG 1 to LOG 2. (*Id.*)

Defendants responded on March 8, 2019, stating that Reichert's primary function at Precision Lens was as CFO, but that he also operated as Precision Lens' sole in-house counsel. (Samie Decl., Ex. I, Beimers letter dated March 8, 2019.) In the letter, Defendants formally asserted an advice of counsel defense, and declared their intent to produce materials previously withheld as attorney-client privileged due to Mr. Reichert's role as legal counsel for Precision Lens. (*Id.*) Finally, Defendants stated that the de-logged items from LOG 1 to LOG 2, were based on an "understanding between the parties that privileged documents that constitute the communications and advice of counsel in the above-captioned matter need not be logged."[1] (*Id.*)

Defendants' corresponding document production contained a subset of the previously withheld Reichert communications, but Defendants continue to withhold others. (*See* Samie Decl., Ex. J, Samie letter dated March 13, 2019.)  Defendants supplemented their production on March 12, 2019, and again on March 18, 2019, to add additional Reichert communications, as well as previously withheld communications involving Precision Lens' outside counsel, Attorney Kastel. (*See* Samie Decl., Exs. K-L, production letters.)

Defendants also included a handful of Attorney Beimers' related communications in the March productions. These consist of four e-mail chains where Attorney Beimers

---

[1] Defendants' response relates only to the de-logged Attorney Beimers communications, but does not address the others. (*See id.*)

provided legal advice, each instance involving a discrete question regarding a particular

transaction or remuneration Defendants sought to provide their physician clients:



- (PL0204111-15.)[2]

- (Samie Decl., Ex. D, PL0183331-33.)

- (Samie Decl., Ex. M, PL0225475-76.)

- (Samie Decl., Ex. N, PL0225824-28.)

On March 22, 2019, Defendants supplemented their response to Interrogatory 9,

wherein they limited the waiver as follows:

> In defense of this case, Defendants intend to rely on the advice counsel
> provided to Defendants from 2006 to 2015 on the subject matter of
> Defendants' compliance with fraud and abuse laws, including the federal
> Anti-Kickback Statute, as part of their day-to-day business practices. The
> attorneys who provided this advice are: Chris Reichert, the Chief Financial
> Officer and In-House Counsel at Precision Lens; Gina Kastel, Faegre Baker
> Daniels; and Kevin Johnson, Fafinski Mark & Johnson.

---

[2] On April 1, 2019, pursuant to Plaintiffs' inquiry into confidentiality designations for the
purpose of this motion, Defendants indicated that this document was inadvertently
produced.  Plaintiffs will address the document in limited detail below, but are not
including it as an exhibit at Defendants' request. Defendants state that they intend to
provide this document to the Court for *in camera* review.

Defendants have made a full disclosure of documents associated with this advice, which have been produced in Productions 11 and 13. Defendants reserve the right to further supplement this response in the event Defendants locate additional responsive documents.

Defendants do not waive the attorney-client privilege or work-product privilege for legal and/or strategic advice provided by counsel in anticipation of or as part of litigation, including but not limited to: (i) any investigations by or subpoena from the Federal Bureau of Investigation, United States Attorney's Office, or Department of Health and Human Services Office of Inspector General, or (ii) litigation, including but not limited to the above-captioned case.

(Samie Decl. Ex. O, Defs' Supp. Interrogatory Response) Notwithstanding the above-identified e-mails, and Defendants previous characterization of many of Attorney Beimers' communications during the relevant time period, Defendants maintain that Attorney Beimers was only consulted and asked to provide advice as to the government's investigation and potential litigation, and that these 50+ entries were simply "inartfully worded." (Samie Decl. ¶ 3.)

### C. Defendants Re-Log with Blank Entries (LOG 3) and Continue to Withhold Documents Subject to the Waiver.

Defendants provided a third privilege log (LOG 3) on March 18, 2019. (Samie Decl., Ex. P, LOG 3.) LOG 3 contains approximately 548 entries, 373 of which are effectively blank. (*Id.*) These entries do not list an author, addressees, date, subject, or privilege description. (*Id.*) On March 27, 2019, Defendants confirmed that their production of LOG 3 was not a mistake. (Samie Decl. Ex. Q, Beimers e-mail dated March 27, 2019.) They further confirmed that all of the items appearing on LOG 3 fall within the relevant time period. (*Id.*) Finally, they stated that all of the blank entries either relate to this matter/litigation or are "non-responsive." (*Id.*)

10

Defendants also have produced approximately 31 documents with redactions. (*See* Samie Decl., Ex. P.) In one example, ████████████████████████████

████████████████████████████████████████████████

████████████ (Samie Decl., Ex. R.)

In sum, Defendants' ongoing withholding of materials subject to the waiver is as follows:

- Other than above identified email chains, Defendants have produced <u>none</u> of Attorney Beimers' communications or work product, including items characterized in LOG 1 as providing substantive legal advice about day-to-day business activities that raise fraud and abuse issues. Comparable records involving similarly situated attorneys also appear to be withheld or produced with redaction.

- Defendants continue to withhold other responsive Reichert communications and work product subject to the waiver.

- Defendants provide no detail as to hundreds of documents they contend are not implicated by their waiver.

## III.    DISCUSSION

Defendants have now asserted that they intend to rely on legal advice provided to them from 2006 to 2015 on the subject matter of Defendants' compliance with fraud and abuse laws, including the federal Anti-Kickback Statute, as part of their day-to-day business practices. This decision waived the protections afforded by the attorney-client privilege as to ***all*** information regarding: (1) trips, frequent flyer miles, private flights, or any other remuneration they offered or considered offering physicians during the relevant

11

time period; (2) all analysis or communications involving whether Defendants' conduct during the relevant time period complied with fraud and abuse laws, including the federal Anti-Kickback Statute; and (3) all work product by their attorneys who advised them on these subject matters, including Thomas Beimers, Gina Kastel, Christopher Reichert,[3] Kevin Johnson, and anyone else similarly situated.

In other words, Defendants' waiver applies to all information in their possession and in their lawyers' possession regarding the aforementioned subjects, regardless of whether Defendants chose to rely on the advice or to ignore it. Moreover, because the Defendants solicited this advice from their retained counsel, the law is clear that they have custody and control over that information and are therefore required to produce it pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure.

Permitting Defendants to make only a partial waiver, and withhold documents involving lawyers would permit them to use the attorney advice as both a sword and a shield, in direct contravention of the governing case law.

### A. Scope of Discovery

Rule 26(b)(1) outlines the scope of discovery:

> [U]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its

---

[3] As set out in Defendants' initial disclosures, it is not clear that Reichert was actually serving in a legal function for Precision Lens. Regardless, because Defendants are now taking the position that Reichert was inside counsel, the waiver extends to him.

12

likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Rule 37(a)(3)(B) provides that a party seeking discovery may move for an order compelling production or answers against another party when the latter has failed to produce documents requested under Federal Rule of Civil Procedure 34 or to answer interrogatories under Federal Rule of Civil Procedure 33. Fed. R. Civ. P. 37(a)(3)(B)(iii)-(iv). To the extent that the items at issue are relevant and properly discoverable, taking into consideration the proportionality factors under Rule 26(b)(2)(C), and to the extent that they have not been produced, a court should grant a motion to compel, but if the items are not relevant or discoverable, the motion should be denied. *See Lynn v. Monarch Recovery Mgmt., Inc.*, 285 F.R.D. 350, 360 (D. Md. 2012). Whether or not to grant a motion to compel is at the discretion of the trial court. *Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984).

For discovery purposes, a party is generally considered to have possession and control over documents in the possession of its current or formal legal counsel. *See Beach Mart, Inc. v. L & L Wings, Inc.*, 302 F.R.D. 396, 411 (E.D. N.C. 2014) (ruling that a party has control of documents where a party's attorney or former attorney has control, custody, or possession of those documents); *see also Poole ex rel. Elliott v. Textron*, 192 F.R.D. 494, 501 (D. Md. 2000) (holding that "documents in the possession, custody or control of a party's attorney or former attorney are within the party's control for the purposes of Rule 34").

13

**B. By Asserting the Advice of Counsel Defense, Defendants Waive Attorney-Client Privilege and Work Product Protection as to the Entire Subject Matter of Kickback Allegations Presented in the Complaint.**

"The attorney client privilege cannot be used as both a shield and a sword." *United States v. Workman*, 138 F.3d 1261, 1264 (8th Cir. 1998). "The attorney/client privilege is waived by the voluntary disclosure of privileged communications, and courts typically apply such a waiver to all communications on the same subject matter. Thus, a party wishing to invoke the privilege in responding to document discovery must assert it to all documents to which it may apply." *PaineWebber Group*, 187 F.3d at 991-92 (internal citation omitted), *cert denied*, 529 U.S. 1020 (2000). "Voluntary disclosure of attorney client communications expressly waives the privilege [and] the waiver covers any information directly related to that which was actually disclosed." *Workman*, 138 F.3d at 1263 (internal citations omitted). "[T]he attorney client privilege may also be implicitly waived, and one way that is done is by raising attorney advice as a defense.'" *Id*. "[A] party, therefore cannot claim advice of counsel as a defense without permitting the opposing party to explore the substance of that advice." *Id*.

By raising as a defense that they relied on the advice of their counsel, Defendants have waived the attorney-client privilege and work-product protections that would otherwise apply to "all communications to and from counsel concerning the transaction for which counsel's advice was sought." *Minnesota Specialty Crops v. Minnesota Wild Hockey Club, L.P.*, 210 F.R.D. 673, 675 (D. Minn. 2002); *United States ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 391 (4th Cir. 2015). This is because Defendants have the burden under this defense to show both that there was a "full disclosure of all pertinent facts to

14

counsel, and [a] good faith reliance on counsel's advice." *United States ex rel. Lutz v. Berkeley Heartlab, Inc.*, 225 F.Supp.3d 460 (D.S.C. 2016) (reviewing attorney-client communications after the defense was raised in a False Claims Act case premised on violations of the Anti-Kickback statute).[4]

A "crucial element" of the advice of counsel defense is that the defendant secured the advice before taking the action in question. *United States v. Polytarides*, 584 F.2d 1350, 1352 (4th Cir. 1978). Moreover, a defendant cannot rely on the defense if the defendant is advised by counsel that a contemplated course of action is legal, but the defendant subsequently discovers counsel's advice to be incorrect or discovers reason to doubt the advice. *United States v. Biller*, No. 1:06CR14, 2007 WL 325798, at *10 (N.D.W. Va. Jan. 31, 2007) (citing *United States v. Benson*, 941 F.2d 598, 614 (7th Cir. 1991)). Where a defendant has already taken "significant steps" toward the completion of a potential action, and has been warned of the illegality of the potential action, proof of subsequent advice does not support a valid defense based upon advice of counsel. *Polytarides*, 584 F.2d at 1353.

When an advice of counsel defense is raised, the reasonableness of that advice – as well as its content – is subject to discovery. Analysis of such defense requires "a rigorous

---

[4] The specific elements of the defense are that:"(1) before taking action, (2) [the defendant] in good faith sought the advice of an attorney whom he considered competent, (3) for the purpose of securing advice on the lawfulness of his possible future conduct, (4) and made a full and accurate report to his attorney of all material facts which the defendant knew, (5) and acted strictly in accordance with the advice of his attorney who had been given a full report." *United States ex rel. Bidani v. Lewis*, 2001 U.S. Dist. LEXIS 260, *23-24 (N.D. Ill. Jan. 12, 2001) (*citing United States v. Cheek*, 3 F.3d 1057, 1060 (7th Cir. 1993)).

examination of the factual predicates for an opinion." *Cordis Corp. v. SciMed Life Sys.*,
980 F.Supp. 1030, 1033 (D. Minn. 1997). The Third Circuit explained:

> The party opposing the defense of reliance on advice of counsel must be able
> to test what information had been conveyed by the client to counsel and vice-
> versa regarding that advice – whether counsel was provided with all material
> facts in rendering their advice, whether counsel gave a well-informed opinion
> and whether that advice was heeded by the client.

*Glenmede Trust Co. v. Thompson,* 56 F.3d 476, 486 (3d Cir. 1995). "A party who intends
to rely at trial on the advice of counsel must make a full disclosure during discovery;
'failure to do so constitutes a waiver of the advice-of-counsel defense.'" *Minnesota
Specialty Crops*, 201 F.R.D. at 677 (quoting *Trouble v. Wet Seal, Inc.*, 179 F.Supp. 2d 291,
304 (S.D. N.Y 2001)).

Thus, an advice of counsel defense operates a broad waiver of "the entire subject
matter of that defense: 'Were the law otherwise, the client could selectively disclose
fragments helpful to its cause, entomb other (unhelpful) fragments, and in that way
kidnap the truth- seeking process.'" *Lutz*, 2017 WL 1282012 at *2–3 (quoting *XYZ Corp.
v. United States*, 348 F.3d 16, 24 (1st Cir. 2003)). *See also Chiron Corp. v. Genentech,
Inc.*, 179 F.Supp.2d 1182 ("[I]nvoking the advice of counsel defense is not a painless
decision or a free lunch.").

Here, "Defendants intend to rely on the advice counsel provided to Defendants from
2006 to 2015 on the subject matter of Defendants' compliance with fraud and abuse laws,
including the federal Anti-Kickback Statute, as part of their day-to-day business practices."
As a result, this broad waiver applies to any communications or advice relating to
remuneration Defendants gave, or considered giving physicians, as alleged in the

16

Complaint. This includes communications with counsel about anytime between 2006 and 2015, that Defendants considered providing doctors trips, frequent flyer miles, private flights, events, games, meals, promoting physicians, special pricing, and the like.

### C. Because it is a Subject Matter Waiver, Defendants May not Limit the Waiver to Specific Attorneys.

Defendants improperly limit their waiver to Chris Reichert, Gina Kastel, and Kevin Johnson. Because the waiver is a broad subject-matter waiver, "[e]ven if a defendant claims to have relied on the legal advice of one attorney, any relevant advice he received from other attorneys is also discoverable because it 'bears on the issue of their reasonable reliance.'" *Lutz*, 2017 WL 1282012 at *2–*3 (*quoting In re Gaming Lottery Sec. Litig.*, No. 96 CIV. 5567, 2000 WL 340897, at *2 (S.D.N.Y. Mar. 30, 2000)). "[A] party should not be permitted to define selectively the subject matter of the advice of counsel on which it relied in order to limit the scope of the waiver of the attorney-client privilege and therefore the scope of discovery. To do so would undermine the very purpose behind the exception to the attorney-client privilege at issue here—fairness." *Glenmede*, 56 F.3d at 486-87.

As a result, communications relating to the subject matter waiver are not insulated by virtue of being provided during a known government investigation. *See Lutz*, 2017 WL 128202 at *4. In *Lutz*, the government alleged that defendants submitted false claims tainted by kickbacks as part of a scheme ranging from 2008 through 2015. *Id*. The court rejected the defendants' argument that, despite asserting an advice of counsel defense, they had not waived the attorney client privilege with regard to communications with counsel

who advised them during the OIG investigation that began in 2012. *Id.* ("By pleading an affirmative advice of counsel defense to the Government's complaint, Defendants placed their communications with counsel at issue and so waived the attorney-client privilege as to all information relating to their communications with counsel during the OIG investigation about the conduct at issue in this case). *See also AKEVA L.L.C. v. Mizuno Corp.*, 243 F. Supp. 2d 418, 423 (M.D.N.C. 2003) ("[O]nce a party asserts the defense of advice of counsel, this opens to inspection the advice received during the entire course of the alleged infringement. Consequently, the waiver of attorney-client privilege or work-product protection covers all points of time, including up through trial.")

Here, Defendants may not exempt Attorney Beimers, or any other attorney who provided substantive legal advice during the relevant time period, from the scope of their waiver. "[W]hen a party asserts an advice of counsel defense[, ] the privilege waiver applies to advice received during the entire period the misconduct is alleged to have been ongoing—even up to and during trial." *Lutz*, 2017 WL 1282012 at *3. *See Minnesota Specialty Crops*, 210 F.R.D. at 679 ("Even though these documents post-date the commencement of this litigation, we find that advice of counsel, concerning the potential for an infringement claim by the Plaintiff, was addressed. These documents, in our considered view, fall within the waiver of privilege that the Defendants have effected by the adoption of their advice of counsel defense.").

Defendants withhold attorney-client documents based on the flawed premise that Attorney Beimers operated exclusively with respect to the government's investigation and subsequent litigation. At the outset, Defendants' disclosures belie their current

characterization of Attorney Beimers' role as outside trial counsel. First, LOG 1 delineates fifty-plus Attorney Beimers communications that do not mention an ongoing government investigation (or other litigation). These entries stand in stark contrast with the sixty-plus entries that do. Moreover, Defendants' peculiar treatment (i.e. deletion) of these entries, from LOG 1 to LOG 2, further emphasizes the importance of the original LOG 1 descriptions, wherein it appears that Attorney Beimers is providing substantive legal advice regarding remuneration Defendants hoped to provide their customers, "as part of their day-to-day business."

Defendants also voluntarily waived and produced a handful of Attorney Beimers communications that illustrate his dual role. ██████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████ (PL0204111-13.) ████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████

---

[5] PL now claims that its production of this document was inadvertent, even though it was produced in the March 8, 2019, production wherein Defendants explicitly withdrew their claims of attorney-client privilege. Despite Plaintiffs' request, Defendants have been unwilling to share the steps that they purportedly took to prevent the disclosure of this document. But the email is a perfect example of the inconsistency in Defendants' distinction. In it, Beimers provides advice on Defendants' compliance with fraud and abuse laws regarding a specific event. The fact that this advice is being provided by a particular attorney during the pendency of an investigation does not affect the fact that it falls squarely within Defendants' waiver.

██████████████████████████████████████████████████████

████████████████████████████ (Samie Decl., Ex. D, PL0183331-33).

Some of these documents also show the close coordination between Attorney Kastel and Attorney Beimers, who worked at the same law firm, before providing a legal opinion related to a discrete transaction. ███████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████ (Samie Decl., Ex. M, PL0225475-76). ████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████ (Samie Decl., Ex. N, PL0225824-28). ████████████████████████████



(*Id.*).[6]

---

[6] This document presents another example of the problematic distinction that Defendants are attempting to make. This email was properly produced because it relates to the subject

These examples establish what LOG 1 suggests, that Mr. Beimers operated in a dual function during the relevant time period. As day-to-day business issues came up, Defendants sought counsel from Beimers directly, or indirectly through their outside team of attorneys. Because they have now waived attorney-client privilege as to the entire subject matter of compliance with the Anti-Kickback Statute, and related fraud laws during the relevant time period, these communications must be produced.

Defendants also lack legal precedent for withholding these materials. Plaintiffs are not aware of FCA case law that allows Defendants to limit their waiver by attorney as opposed to subject matter.[7] To the extent they seek support from willful patent infringement cases decided by the United States Court of Appeals for the Federal Circuit, such support is misplaced. *In re EchoStar Commc'ns Corp* is the leading case wherein the Federal Circuit addressed the impact of an advice of counsel defense on attorney-client privilege in the willful infringement context. 448 F.3d 1294 (Fed Cir. 2006). There, the court rejected EchoStar's contention that "waiver of opinions does not extend to advice and work product given after litigation began." 448 F.3d at 1302 n. 4. (stating that advice is discoverable so long as it is relevant to ongoing willful infringement and that ongoing infringement is at issue in the litigation). One year later, the Federal Circuit discussed the impact of an advice of counsel defense on communications with and documents from trial counsel who operated independently from opinion counsel. *In re Seagate Tech., LLC*, 497

matter of Defendants' waiver. The fact that Attorney Kastel happened to convey her law firm's legal guidance rather than Attorney Beimers is of no import.

[7] When the parties met and conferred regarding this issue, Defendants stated that they were not interested in discussing the law.

F.3d 1360 (Fed. Cir. 2007). The court determined that raising an advice of counsel defense does not waive as to trial counsel under such circumstances, but declined to assert an absolute rule, and would extend the waiver if production is justified in unique circumstances. *Id.* at 1374-75 ("[T]rial courts remain free to exercise their discretion in unique circumstances to extend waiver to trial counsel, such as if a party or counsel engages in chicanery.").

Since that time, *Seagate* has been undermined in several respects. First, the United States Supreme Court abrogated *Seagate's* test for willful infringement, which underpinned *Seagate*'s waiver analysis.[8] *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S.Ct. 1923, 1932-35 (2016). Second, the Federal Circuit has not extended *Seagate* in several contexts. *See, e.g., In re: Optuminsight, Inc.*, 2017-116, 2017 WL 3096300 at *4 (Fed. Cir. July 20, 2017) (holding that *Seagate* was not applicable where the defendant's waiver was not limited to pre-litigation conduct); *In re: Alcon Laboratories*, 2018-115, 2018 WL 7485446 at *2 (Fed. Cir., Feb. 14, 2018) (holding that district court properly extended waiver to trial counsel as part of discretion afforded by *Seagate*). Third, district courts have likewise limited *Seagate* as only applying "[w]hen a party maintains a sharp distinction between [the roles of opinion counsel and trial counsel]." *Krausz Indus. Ltd. V. Smith-Blair, Inc.*, Civ. No. 5:12-CV-00570-FL 2016 U.S. Dist. LEXIS 191859 at * 27-28 (E.D. N.C., Dec. 13, 2016) ("*In re Seagate*'s limitation on the waiver of both attorney-client

---

[8] Unlike *Seagate*, where the court incorrectly held willful patent infringement requires a showing of objective recklessness, the government can establish the requisite scienter in an FCA case through (a) actual knowledge; (b) deliberate ignorance of truth or falsity, *or* (c) reckless disregard of truth or falsity. 31 U.S.C. §§ 3729(a)(1)(A), (b)(1), b(2)(A)(i).

privilege and work product immunity is predicated on opinion counsel and trial counsel performing distinct roles in advising the alleged infringer.").

*Krausz*, like here, involved a situation where "opinion counsel" and "trial counsel" did not operate with a sharp distinction of roles. The court ultimately ordered production of communications between (a) opinion counsel and trial counsel; (b) trial counsel and defendant; (c) in-house counsel and defendant; and in-house counsel and trial counsel that relate to the subject matter of the defendant's waiver. *Id*. at 26-36. *See also, CVIN LLC v. Clarity Telecom, LLC*, Case No. 1:17-CV-00185-AGF 2018 WL 3020200 at *3. ("Thus, a defendant's use of an assumed date … for the assertion of privilege, without reference to the subject matter of the document for which privilege had been asserted, is inappropriate.") (internal quotations omitted).

The same should apply here. To the extent Defendants communicated about fraud and abuse laws, including the federal Anti-Kickback Statute, as part of their day-to-day business practices, from 2006 to 2015, Plaintiffs are entitled to discover those communications.

### D. Defendants' Subject Matter Waiver Applies to all Related Attorney Work Product.

The assertion of an advice-of counsel defense can also serve as a waiver of attorney work product immunity. *Minnesota Specialty Crops*, 210 F.R.D. at 675 (citing *Mushroom Assoc. v. Monterey Mushrooms, Inc.*, 1992 WL 442892 *3 (N.D. Cal., May 19, 1992). [A]t its heart, the fundamental inquiry as to the scope of the work product waiver is, again, a matter of fairness, and we must consider the waiver in the context of an asserted advice-

of-counsel defense…" *Id*. at 676. For instance, "[w]hen a party intends to rely at trial on the advice of counsel as a defense to a claim of bad faith, that advice becomes a factual issue, and opposing counsel is entitled to know not only whether such an opinion was obtained but also its content and what conduct it advised." *Id.* at 676-77 (quoting *Trouble*, 179 F.Supp.2d at 304).

In an FCA case, when a party asserts an advice of counsel defense, the waiver of the work product protection should extend to communicated, as well as uncommunicated, work product. *Lutz*, 2017 WL 1282012 at *4 (citing *Chiron Corp. v. Genentech, Inc.*, 179 F. Supp. 2d 1182, 1189-90 (E.D. Cal. 2001) (listing cases)). As the court in *Lutz* noted, to oppose an FCA defendant's advice of counsel defense, the Government must be able to discover the following about the relevant contracts and kickback schemes:

> discover the information that was conveyed by [Defendants] to counsel and vice-versa; discover what facts were provided by [Defendants] to [their counsel]; discover what facts [Defendants' counsel] may have obtained from any other sources other than Defendants; discover the legal research conducted by and considered by [Defendants' counsel]; discover the opinions that [Defendants' counsel] gave [Defendants] and discover whether [Defendants] selectively ignored any of the facts and opinions given [them] by [their counsel] in reaching a decision ...

*Lutz*, 2017 WL 1282012 at *5 (quoting *JJK Mineral Co., LLC v. Swiger*, 292 F.R.D. 323, 336 (N.D.W. Va. 2013).

Similarly, the court in *Dunhall Pharmaceuticals, Inc. v. Discus Dental, Inc.*, explained why uncommunicated records should also be produced:

> [C]ertainly it would not be rational to assume that everything in counsel's files reached the client, or that counsel communicated to the client all of what he or she really thought, but it would be comparably irrational to assume that

> there could be no relationship between what counsel really thought (as reflected in her private papers) and what she in fact communicated to her client. In this important sense, evidence about what really was in the lawyer's mind could be quite relevant to the issue of what was really in the client's mind.

994 F.Supp. 1202, 1205–06 (C.D.Cal.1998) (quoting *Electro Scientific Indus., Inc. v. General Scanning, Inc.,* 175 F.R.D. 539, 545 (N.D.Cal.1997)). "In substance, the *Dunhall* court reasoned that it would be fair to examine the client about what was in the attorney's files for the purposes of ascertaining whether, even if the negative documents were not disclosed to the client, the information in the documents had been revealed." *Beneficial Franchise Co. v. Bank One, N.A.*, 205 F.R.D. 212, 218 (N.D. Ill. 2001) ("Not all information conveyed to a client is neatly reflected in a transmittal letter or in a memorandum specifically directed to the client. The practical reality is that if negative information was important enough to reduce to a memorandum, there is a reasonable possibility that the information was conveyed in some form or fashion to the client.").

Accordingly, this Court should order Defendants to produce all documents in defendants' or counsel's files that relate to the subject matter of Defendants' compliance with fraud and abuse laws, including the federal Anti-Kickback Statute, as part of their day-to-day business practices from 2006 to 2015, irrespective of whether the documents indicate on their face that they were conveyed to Defendants.

### E.  Defendants Should Provide a Complete Privilege Log of Materials they Continue to Withhold.

Rule 26(b)(5)(A) sets forth the requirement for a party claiming privilege or protecting trial-preparation materials:

(A) *Information Withheld.* When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

(i) expressly make the claim; and

(ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A).

Based on the government's review of LOG 3, the 205 blank items bates stamped PL0149831 or before, consist of the de-logged (and now re-logged) entries, with a couple of exceptions. The following items were never de-logged (i.e. they appear in LOG 1 and LOG 2), but now appear in LOG 3, with blank entries.

- PL0146549 – Reichert/Ehlen/Johnson email about laser demonstration;
- PL0146552 – Reichert/Ehlen/Johnson email about laser demonstration;
- PL0147950 – Elkjer/Reichert/Gosz/Ehlen email about Vikings tickets;
- PL0148937 – Reichert/Norling email advice regarding compliance with Anti-Kickback Statute;
- PL0149681 – Reichert/Ehlen/Gosz email about compliance with Anti-Kickback Statute with regard to a purchase agreement.

(*See* Samie Decl., Ex. P.) Neither LOG 1 nor LOG 2 identified Attorney Beimers as being related to these communications, yet they continue to be withheld. The government is unable to conduct a meaningful review of the 168 blank items bates stamped after PL0149831, which relate to items withheld from productions on March 8, 12, and 18, 2019. Defendants state that these materials are being withheld because they are either "non-responsive" or because they "relate to this matter/litigation." (Samie Decl., Ex. Q.)

As an initial matter, Plaintiffs do not understand why Defendants are logging non-responsive documents.[9] Next, Plaintiffs need to meaningfully assess the materials Defendants claim the scope of their waiver, particularly here where Defendants incorrectly limit the scope of their waiver. Given the peculiar logging history set forth above, Plaintiffs request that the Court order Defendants to provide a complete log of everything that they are withholding, including but not limited to all attorney communications, all attorney files, entries that appear blank in LOG 3, as well as entries they previously identified as "non-responsive," to include, the author, addressees, date, subject, or privilege description.

### F. Defendants Must Provide Complete Interrogatory Responses Relating to Advice of Counsel Defense.

A party may move for an order compelling an answer if "a party fails to answer an interrogatory submitted under Rule 33." Fed. R. Civ. P. 37(a)(3)(B)(iii). Interrogatory responses should be "explicit, responsive, complete and candid." *In re Rail Freight Fuel Surcharge Antitrust Litig.* 281 F.R.D. 1, 7 (D.D.C. 2011). "Contention interrogatories … may ask another party to indicate what it contends, to state all the facts on which it bases its contentions, to state all the evidence on which it bases its contentions, or to explain how the law applies to the facts." *White v. 14051 Manchester, Inc.*, Civ. No. 4:12CV469 (JAR), 2012 WL 5994263 at *9 (E.D. Mo. Nov. 30, 2012) (internal quotation omitted). Because Defendants have provided incomplete answers to the aforementioned interrogatory request

---

[9] Indeed, approximately 24 communications originally marked "non-responsive" in LOG 1, and de-logged from LOG 2, were produced as a part of Defendants' March productions, and thus not re-logged in LOG 3. (*See,* Samie Decl., Exs. A, B, and P.)

9, the United States requests that this Court issue an order compelling a full and complete response.[10]

Interrogatory requests 8 and 9 were served upon the Defendants so that the United States could understand the bases for the Defendants' defenses, including specifically the advice-of-counsel defense. These are appropriate interrogatories that should be answered. *See, e.g., Finn v. BNSF Ry. Co.*, 11-CV-349-J, 2012 WL 12915486 (D. Wyo. Dec. 21, 2012) (granting motion to compel answers regarding affirmative defenses); To the extent that it would be burdensome to provide all facts, Plaintiffs merely seek the material and principal facts. *Bituminous Cas. Corp. v. Scottsdale Ins. Co.*, File No. 1:12-CV-84 (SNLJ), 2013 WL 1411544 at *1 (Mo. April 8, 2013) (holding that although a contention interrogatory will be considered overly broad and unduly burdensome if it seeks 'all facts' supporting a claim or defense, such that the answering party is required to provide a narrative account of its case, a party is nevertheless entitled to the "material" or "principal" facts in support of a contention) (citations omitted).

On March 8, 2019, Defendants stated that they would supplement their interrogatory responses to reflect their intent to rely on the advice of counsel in defense of this matter. (Samie Decl., Ex. I.) Two weeks later, Defendants provided a supplemental response to Interrogatory 9 which fails to describe discussions, dates of discussions, the

---

[10] Plaintiffs believe that Defendants have inadequately answered Interrogatory 8, as it currently provides no facts, let alone material and principal facts, relating to their affirmative defenses. (Samie Decl., Ex. F.) Nevertheless, because Defendants have stated that they will supplement their answer by April 15, Plaintiffs do not seek specific relief here with respect to Interrogatory 8.

method and manner of communication, or the subject matter Plaintiffs discussed with counsel during the relevant time period, as requested by the interrogatory. (Samie Decl., Ex. O.) Plaintiffs respectfully request that this Court order Defendants to provide complete answers to Interrogatory 9.

## IV.    CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that this Court issue an order:

(1) finding that Defendants have waived any attorney client privilege or work product protection relating to the advice counsel provided to them from 2006 to 2015 on the subject matter of Defendants' compliance with fraud and abuse laws, including the federal Anti-Kickback Statute, as part of their day-to-day business practices;

(2) directing Defendants to immediately produce all documents, unredacted, that relate to this advice;

(3) clarifying for any outside law firms the scope of Defendants' subject matter waiver to provide guidance that they should not withhold documents relating to this advice;

(4) requiring Defendants to submit a comprehensive privilege log of all materials they continue to withhold, including but not limited to all attorney communications, all attorney files, entries that appear blank in LOG 3, as well as entries they previously identified as "non-responsive," to include, the author, addressees, date, subject, or privilege description; and

(5) requiring Defendants to provide complete response regarding facts supporting their good faith and/or advice of counsel defense, in response to Plaintiffs' Interrogatory 9.

29

Dated:  April 2, 2019                    Respectfully submitted,

                                         ERICA H. MacDONALD
                                         United States Attorney

                                         s/ Bahram Samie

                                         BY:  BAHRAM SAMIE
                                         Assistant U.S. Attorney
                                         Attorney I.D. No. 392645
                                         BY: CHAD A. BLUMENFIELD
                                         Assistant U.S. Attorney
                                         Attorney ID Number 387296
                                         600 U.S. Courthouse
                                         300 South Fourth Street
                                         Minneapolis, MN 55415
                                         (612) 664-5600

                                         ***Attorneys for Plaintiff***
                                         ***United States of America***