UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civ. No. 13-3003 (WMW/DTS)

| | |
|---|---|
| United States of America, *ex rel.* Kipp Fesenmaier, <br><br> Plaintiffs, <br><br> v. <br><br> The Cameron-Ehlen Group, Inc., Dba Precision Lens, and Paul Ehlen <br><br> Defendants. | **MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL REGARDING SEARCH TERMS** |

## I.    INTRODUCTION.

Plaintiffs the United States of America and Relator Kipp Fesenmaier move this Court for an order compelling Defendants to run certain additional search terms and produce documents in response to Plaintiffs' Requests for Production. Specifically, Plaintiffs seek a discrete modification of the Court's February 13, 2019 Order (Dkt. 179) to run the additional searches (*See* Declaration of Chad Blumenfield (hereinafter "Blumenfield Decl."), Ex. A.).

The parties have discussed these issues with the Court informally, but we have not had the opportunity to engage in formal briefing.  Plaintiffs believe that when considered against the backdrop of the relevant caselaw, it is appropriate to grant additional search terms beyond what has been provided thus far.  Regrettably, Defendants' approach to discovery in this process has been quite different from the "cooperative and informed process" required by the courts when crafting search terms. *William A. Gross Const.*

*Associates, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 256 F.R.D. 134, 136 (S.D.N.Y. 2009). Plaintiffs have attempted to obtain additional documents from Defendants by agreement, but Defendants have been consistently unwilling to negotiate around these issues and have adopted a narrow interpretation of the Court's order and their obligations to cooperate with Plaintiffs as the Federal Rules require.

The Court's prior Order directed e-discovery by grouping disputed search terms into three categories: Category 1 for terms that would be run without modification; Category 2 for terms that would be run with modification; and Category 3 for terms that would not be searched at this time. Dkt. 179. The Court issued this Order "without prejudice to further requests by the United States or Relator for additional e-discovery." *Id.* at 3. Further, the Court contemplated that in response to the Order: "Defendant can either (1) review and produce the documents identified; (2) negotiate a resolution with the United States regarding review and production or (3) raise the issue at the next scheduled status conference." *Id.* at 2.

Based on Defendants' refusal to further confer regarding any search terms beyond the Court's February 2019 Order, Plaintiffs bring this motion seeking a discrete modification in the Court's Order as reflected in Blumenfield Decl., Ex. A. In order to provide appropriate justification for modification of the Court's Order as addressed in Blumenfield Decl., Ex. A, Plaintiffs respectfully submit the below memorandum.

## II.   BACKGROUND.

Plaintiffs briefly describe the history of document production in this matter, both in response to the Civil Investigative Demand ("CID") during the investigative phase of this

2

matter and to formal Requests for Production ("RPDs") during the current discovery period. This history is relevant because much of the Defendants' discussions with the Court has conflated the investigation with formal party discovery and intimated that requests for additional search terms are a "second bite at the apple" after meet and confer has completed. To be clear: there has never been an iterative back and forth over search terms during discovery in this matter. Rather, each production has been the result of either production based on unilaterally-set terms or, as is the case of production after the Court's e-discovery order, a refusal to have meaningful discussion over the actual results of search term hits.

Before intervening in this lawsuit, the United States conducted an investigation to determine if Precision Lens and Paul Ehlen, among others, violated the False Claims Act ("FCA"). The purpose of the United States' investigation was not to gather evidence sufficient to prevail at trial against all *qui tam* defendants; rather, the purpose was to determine whether the government should intervene in the civil case. During the investigation, the U.S. Attorney's Office for the District of Minnesota served a subpoena on Precision Lens for documents in various categories, including emails and other electronic materials. The United States worked with Precision Lens to mitigate the burden of its requests, engaging in much back and forth to arrive at a production volume that was mutually acceptable. These discussions were not driven to set search terms for the purpose of discovery or preparing the matter for trial. *Id.*

On August 14, 2017, the United States intervened in the FCA case against Defendants and filed its Complaint in Intervention on February 8, 2018. (Dkt. Nos. 63,

105.) Now that this case has proceeded to discovery, Plaintiffs are gathering the comprehensive evidence needed for trial. To that end, on October 26, 2018, Plaintiffs served Defendants with Requests for Production under Rule 34.  (Blumenfield Decl., Ex. B.) As with the investigative phase, Plaintiffs have expressed a broad willingness to mitigate the burden of production on Defendants associated with search term requests in discovery.

During the parties' ESI meet and confer calls (ongoing since October 17, 2018), Defendants initially indicated that they would not agree to perform searches of additional terms or custodians beyond those conducted during the investigation, nor would they agree to update the original production for materials obtained or created since 2015. During a meet and confer on Friday, November 30, 2018, Defendants agreed to run additional search terms against the documents collected during the investigation and to consider additional custodians. The parties agreed that Plaintiffs would propose additional search terms and custodians to be added to a list provided by Defendants on Wednesday, November 28.

Plaintiffs engaged in a careful review of those materials and, on December 12, 2018, proposed that Defendants run a set of terms, comprised of the terms that the parties had agreed to during the investigation plus an additional set of terms. (Blumenfield Decl., Ex. C, December 12, 2018 Letter.) Plaintiffs also proposed six new custodians in addition to the original five. (*Id.*)  With regard to the custodians whose accounts had previously been searched, Plaintiffs' proposal contemplated that only the new terms would be run. Plaintiffs indicated:

> We anticipate that you will want to discuss potential limitations
> on these terms after looking at the hit count results generated
> by these proposals, and we are certainly open to that. We also
> are willing to prioritize certain terms over others in order to
> expedite the production. In the event you are interested in
> doing so, please provide a hit count broken down by term and
> custodian.

(*Id.*)

Defendants did not provide Plaintiffs with the hit results regarding Plaintiffs'
proposed terms. Rather, on January 8, 2019, Defendants provided a list of the results for
its own terms only, which consisted of a narrowed list of search terms modified by specific
doctor names. (Blumenfield Decl., Ex. D.) At this time, the Assistant United States
Attorneys ("AUSAs") working on the case in Minnesota were unable to meaningfully work
on this matter because of the 35-day federal government shutdown, which started on
December 22, 2018. Nevertheless, Relator's counsel contacted Defendants immediately,
asking for the requested report. (Blumenfield Decl., Ex. E, January 9, 2019 email chain
among counsel.) After additional back and forth, Precision Lens then provided the list
broken down by custodian on January 14. (Blumenfield Decl., Ex. F.)

On a separate call later that same day, Defendants advised Relator's counsel that
they had decided to modify all of the terms to only capture results that also included the
last names of the doctors involved. Relator's counsel responded the next day:

> Due to the furlough, Government counsel are unable to
> participate in meet and confer over search terms, and we have
> not reached an agreement on proposed search terms.
> Defendant Precision Lens has proposed a narrower group of
> terms than those proposed by Plaintiffs and has advised that
> they will proceed to review the results of those narrowed
> searches for production.  On the call yesterday, we discussed

> that Plaintiffs have not agreed to the narrowed terms.
> However, we understand that the narrower results proposed by
> Defendants are at least the minimum of what should be
> reviewed for production, and if produced, will be without
> prejudice to the parties' efforts to meet and confer over
> additional search terms once the furlough is lifted.

(Blumenfield Decl., Ex. G, January 15, 2019 email chain).

On January 21, Defendants agreed to run additional terms: "fair market value",

FMV, ROI, "return on investment" and Kickback OR Anti-Kickback. (*Id.*, Blumenfield

Decl., Ex. H.)

Upon the conclusion of the government shutdown, the parties met and conferred by

way of a conference call on February 5th. Plaintiffs asked Defendants to reconsider their

position and re-run searches based on Plaintiffs' proposed terms. Plaintiffs further

proposed that the parties perform document sampling for terms with high returns (for

example, over 1,000 hits), whereby the parties would review a subset of the production and

collaborate to create search strings aimed to exclude nonresponsive documents. Defendants

indicated they may consider some additional terms on Plaintiffs' list and that they would

consider a proposal to sample some of the terms proposed if Plaintiffs identified those

terms specifically. In a good faith attempt to reach a compromise, Plaintiffs submitted a

list of prioritized search terms on February 8, 2019, and recommended a sampling approach

for specific underlined terms that result in more than 1000 hits for a particular custodian.

(*Id.*, Blumenfield Decl., Ex. I.)

However, at the discovery conference before this Court on February 12, 2019,

Defendants indicated an unwillingness to engage on Plaintiffs' search term proposal, citing

undue burden. (*See* Dkt. No. 178, Minute Entry.) After the hearing, the Court ordered Defendants to run a number of Plaintiff's search terms across all custodians, regardless of whether those results mentioned any doctor names.  (*See* Dkt. No. 179.)  The Court also allowed Defendants to run a number of search terms as proximity searches, e.g., "[search term] w/25 Dr. or doc* or (last name)]."  (*Id.*)  The Order did not address all of Plaintiff's proposed search terms, and the Court made clear that its order was "without prejudice to further requests by the United States or Relator for additional e-discovery."  (*Id.*)

On February 19, Defendants provided Plaintiffs with an updated search term report that illustrated the hits resulting from the terms listed in the Court's February 13 order. (Blumenfield Decl., Ex. J).  Plaintiffs responded to Defendants that the modified search terms amounted to a 92% reduction of results compared to Plaintiffs' original proposal, and therefore suggested that the parties meet to discuss these results. Plaintiffs pointed out, among other things, that many of the reductions impacted highly relevant terms (e.g., specific types of remuneration) that had reasonable standalone hit counts prior to being limited by proximity searches:

| Search Term | Original Hit Count | Modified Hit Count from Order |
|---|---|---|
| "Beaver Creek" | 70 | 9 |
| "Rolling Green"[1] | 2583 (as Rolling Green or RGE) | 1443 |
| "Stock Farm" | 909 (as stock farm) | 40 (as "stock Farm")[1] |
| "white lake" | 401 (as white lake) | 66 |
| Gunisao | 29 | 3 |
| "The Masters" | 1196 (as Masters) | 75 |
| "Big Narrows" | 703 (as Narrows) | 14 |
| Niska | 554 | 38 |
| Nueltin | 5 | 3 |
| Steichen | 90 | 7 |
| "Sutton Bay" | 3099 (as Sutton) | 440 (approx. max) (as Sutton) |
| "Frequent flyer" | 382 | unknown[2] |
| Manny's or Mannys | 408 (as Mannys) | unknown |
| Parasole | 688 | unknown |
| quid | 31 | unknown |
| slush | 49 | unknown |

Plaintiffs also highlighted certain terms unaddressed by the Court's order. *Id.* Based on these observations, Plaintiffs proposed targeted modifications to the Court-ordered searches, within the same framework set out by the Court. Consistent with the Order's approach, Plaintiffs specified which search terms should not be modified (category 1), which terms should be modified through proximity searches (category 2), and which terms Defendants need not be run at this time (category 3).

Citing burden, Defendants declined to negotiate Plaintiffs' proposed solution and refused to conduct additional searches not found in the Court's order. (Blumenfield Decl., Ex. K, Defs.' March 4 letter).

To that end, Defendants agreed to perform only one additional search that they did not previously perform (even though the term appeared in the Order). Specifically, the Order directs that certain terms be run against the relevant clinic names. Defendants asked Plaintiffs to provide a list of clinic names for the search. On March 6, Plaintiffs submitted

a clinic list that reflects the manner in which Defendants referred to the various clinics in their own documents (e.g., "Regional Eye" or "Hutch" or "Hutchinson" for the Regional Eye Center in Hutchinson, MN). *See, e.g.,* Blumenfield Decl., Ex. O (PL000157 (Expense Report referring to "Regional Eye, Hutch"); PL00073804 (referring simply to "Hutch")); (March 6 electronic correspondence is at Blumenfield Decl., Ex. L). Defendants rejected Plaintiffs' list and determined that they would only run searches using a clinic's official name (Blumenfield Decl., Ex. M, Defs.' March 8 email).  Plaintiffs asked Defendants to reconsider, but they declined to do so. *Id.*

Plaintiffs have taken numerous steps to facilitate the discovery or relevant materials and ameliorate Defendants' alleged burden, but Defendants have been uncooperative at every turn.  In addition to limiting custodians, modifying search terms based on hit counts, and narrowing search terms based on volume, Plaintiffs suggested a clawback agreement that would substantially reduce, if not eliminate the need for, Defendants to review documents. Defendants have also rejected that option.

In sum, while Defendants have represented that Plaintiffs have continued to seek additional search terms, the truth is that  Defendants have wholesale refused to engage in cooperative discussions that would yield the responsive documents Plaintiffs are looking for while mitigating Defendants' burden.

## III.   DISCUSSION.

Plaintiffs have negotiated in good faith with Defendants in this matter, but Defendants have been unwilling to engage with Plaintiffs in a meaningful way.  The Court's recent order was certainly a step in the right direction, but a comparison of the hit

counts and a review of the documents produced pursuant to that order indicates that there were significant material omissions. The Court indicated that its order expressly permitted the parties to approach the Court for additional relief if they felt the order did not provide complete relief. Plaintiffs now do so.

The search terms Plaintiffs now ask to be run are targeted to the specific issues in the case. To the extent that any particular term generates a large number of hits, Plaintiffs are willing to meet and confer about that issue, as they have expressed countless times throughout this process. But Defendants' claimed burden should not be permitted to overwhelm their discovery obligations, particularly where they have routinely declined to take Plaintiffs up on their many offers to mitigate that burden.

### A.   <u>Amended Rule 26 and Governing Law</u>

Federal Rule of Civil Procedure 26(b)(1), as amended in 2015, sets out the general scope of discovery in a civil case:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering [1] the importance of the issues at stake in the action, [2] the amount in controversy, [3] the parties' relative access to relevant information, [4] the parties' resources, [5] the importance of the discovery in resolving the issues, and [6] whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Relevancy is broadly construed, and the information sought need not be deemed admissible at trial before being properly subject to discovery. *Amador v. U.S. Bank Nat'l Ass'n*, 2-17 U.S. Dist. LEXIS 183459 (D. Minn. Nov. 6, 2017); *Sentis*

*Group, Inc. v. Shell Oil Co.*, 763 F.3d 919, 926 (8th Cir. 2014).  Once a requesting party has made a threshold showing that it seeks relevant information, "the burden shifts to the party resisting discovery to show specific facts demonstrating that the discovery is irrelevant or disproportional."  *Wildman v. Am. Century Servs., LLC*, 2017 U.S. Dist. LEXIS 140666 (W.D. Mo. Jul. 27, 2017).

"[T]he presumption is that the responding party must bear the expense of complying with discovery requests."  *W. Va. Pipe Traders Health & Welfare Fund v. Medtronic, Inc.*, 2017 U.S. Dist. LEXIS 222471 (D. Minn. Oct. 12 2017) (*citing Oppenheimer Fund v. Sanders*, 437 U.S. 340 (1978)); *Prime Aid Pharm. Corp. v. Express Scripts, Inc.*, 2017 U.S. Dist. LEXIS 2061 (E.D. Mo. Jan. 6, 2017) (citations omitted).  In some way, "[a]ll discovery requests are a burden on the party who must respond thereto," but "[u]nless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the [responding party] to bear that burden."  *Wildman*, 2017 U.S. Dist. LEXIS 140666 at *8-9 (*citing Continental Illinois Nat'l Bank & Trust Co. V Caton*, 136 F.R.D. 682 (D. Kansas May 22, 1991)).  (Therefore, a party that resists discovery based on undue burden must be able to substantiate its objections with specific facts demonstrating this burden. *Id.* at *5*; See also St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000).  For example, a discovery request is not automatically rendered too burdensome simply because it may duplicate previous discovery efforts.  *See United States v. Fed'n of Physicians & Dentists, Inc.*, 63 F.Supp.2d 475 (D. Del. 1999). Conclusory allegations, without any evidence regarding the time or expense required to comply with the request, do not allow a party to evade the discovery of relevant materials.

*CPI Card Grp., Inc. v. Dwyer,* 2018 U.S. Dist. LEXIS 171504 (D. Minn. Oct. 4, 2018) (*citing Vallejo v. Amgen, Inc.*, 903 F.3d 733 (8th Cir. 2018)).

The Federal Rules set forth additional standards for the discovery of electronically stored information ("ESI"). Specifically, the Rules state that a party can resist discovery of ESI if the information is "not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B). Here again, the party from whom the discovery is sought that bears the burden of showing that the ESI is not reasonably accessible. *Id.* However, "[t]he fact that a [party] has an unwieldy record keeping system which requires it to incur heavy expenditures of time and effort to produce requested documents is an insufficient reason to prevent disclosure of otherwise discoverable information." *W. Va. Pipe Traders*, 2017 U.S. Dist. LEXIS 222471 at *16-17. Even when information is shown to be not reasonably accessible, "the court may nevertheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C)." Fed. R. Civ. P. 26(b)(2)(B).

Using search terms is a common method of reducing the burdens of ESI discovery, but the method's usefulness can be limited by a "sometimes arbitrary choice of language to describe the topic of interest." *Custom Hardware Eng'g & Construction v. Dowell*, 2012 U.S. Dist. LEXIS 146, *7 (E.D. Mo. Jan. 3, 2012) (compelling defendants to run broader searches that did not require exact matches to precise language). Therefore, the construction of search terms requires careful thought and cooperation between parties. *Ohio A. Philip Randolph Inst v. Smith*, 2018 U.S. Dist. LEXIS 204080, *16 (S.D. Oh. Dec. 3, 2018. Ultimately, "the party selecting the methodology must be able to explain the

rationale for the method chosen to the court, demonstrate that it is appropriate for the task, and show that it was properly implemented." *Id.* at *16. A search-term based discovery request need not be so precise that it *only* captures documents that are relevant to the case. *See Beseke v. Equifax Info Servs., LLC*, 2018 U.S. Dist. LEXIS 197920, *13 (D. Minn. Oct. 18, 2018). Using search terms as a method of discovery will necessarily capture false hits, but "the possibility of returning false hits does not create a burden… that is undue." *Beseke*, 2018 U.S. Dist. LEXIS at *13.

**B.    Plaintiffs' Search Terms are Targeted to Identify Relevant Records.**

At the outset, Defendants have not challenged the relevancy of the proposed search terms.[1] Indeed, there is little doubt that the terms are relevant to the matters at issue in the case. The case revolves around trips, entertainment, and other forms of remuneration provided by Defendants to various physicians. These issues go to the heart of the matter.

---

[1] There is also no dispute that these terms would be responsive to a number of document requests. (*See, e.g.*, Blumenfield Decl., Ex. A, Request No. 7 (All documents relating to every instance you purchased, provided, coordinated or arranged for travel, lodging, entertainment, or meals for an ophthalmologist, including, for each instance, any communications, pictures, texts, social media posts, notes, receipts, credit card statements, reimbursement, or cost analysis); Request No. 8 (All documents relating to every instance you provided, traded, or sold frequent flyer miles, to an ophthalmologist or to anyone else, including, for each instance, any communications); Request No. 12 (All documents and communications from 2002 to the present relating to the propriety or legality, including under the Anti-Kickback Statute, of trips, meals, lodging, entertainment, frequent flyer miles, or other remuneration paid by Precision Lens, Paul Ehlen or any other individual or entity for the benefit of ophthalmologists, including all documents reviewed or prepared by counsel, both outside and in-house, to prepare or provide legal advice); and Request No. 18 (All documents discussing or analyzing how much participants in travel or entertainment (including trips taken using frequent flyer miles and private plane flights) should pay in exchange for that travel or entertainment).

In many instances, Defendants provided that travel via private flights or by providing Skymiles to the physicians at discounted rates. Various search terms directly address those points. Likewise, knowledge of wrongdoing will be a disputed issue in this matter, and a number of the terms address that issue.  The terms also address Defendants' efforts to carry out their scheme.

### 1.  Category 1: Terms Run Without Modification.

Plaintiffs' requested modification of the Court's February 2013 Order aligns with Categories identified in by the Court. In Category 1, for search terms to be run without modification, Plaintiffs request in Blumenfield Decl., Ex. A that the following additional terms be run without modification:

| Search Term | Original Hit Count | Modified Hit Count from Order |
|---|---|---|
| "Beaver Creek" | 70 | 9 |
|  |  |  |
| "Stock Farm" | 909 | 40 (as "stock Farm") |
| "white lake" | 401 | 66 |
| Gunisao | 29 | 3 |
| "The Masters" | 1196 (as Masters) | 75 |
| "Big Narrows" | 703 (as Narrows) | 14 |
| Niska | 554 | 38 |
| Nueltin | 5 | 3 |
| Steichen | 90 | 7 |
| "Sutton Bay" | Unknown, 3099 as Sutton, which may overlap with a relevant last name | 440 (approx. max) (as Sutton) |
| "Frequent flyer" | 382 | Unknown, was run in conjunction with modifiers, |
| Manny's or Mannys | 408 (as Mannys) | Unknown, was run in conjunction with modifiers, |
| Parasole | 688 | Unknown, was run in conjunction with modifiers |
| slush | 49 | Unknown, was run in conjunction with modifiers |

| Quid | 31 | Unknown was run in conjunction with modifiers |
| Skymiles | Unknown | Unknown, was run in conjunction with modifiers |

*See* Blumenfield Decl., Ex. A at p. 1.

For most of these, the hit count prior to modification was already very manageable (see underlined results). Plaintiffs propose these be run without modifiers. The remaining terms with larger hit counts – Stock Farm, The Masters, Big Narrows, Sutton Bay and Parasole – all relate to trip locations that are central to Plaintiffs' allegations of kickbacks. For many of the terms, Plaintiffs do not know the results because Defendants were unwilling to engage in an iterative analysis. Two examples are instructive. Defendants took issue with Plaintiffs' proposed term "Sutton" because it yielded 3,099 hits. But a review of the materials Defendants ultimately produced reveals that there is a doctor with the last name "Sutton" that is yielding false positives. Plaintiffs would certainly welcome removing that term. Similarly, Defendants used the fact that "ski*" yielded a large number of hits as an example of Plaintiffs' proposed terms being onerous. When Defendants had run the terms in connection with the doctors' last names, they used the term ski or skiing or skied or skis, and in retrospect the parties should have just used that term in place of "ski*" But rather than point this out to Plaintiffs or the Court, Defendants brought a document to the discovery conference (without providing it to Plaintiffs in advance) that showed an excessive number of hits, and used it as evidence of how onerous Plaintiffs' proposed terms were. That is far from the cooperative approach that the caselaw requires; and yet, it appears that Defendants' tactics have been working.

15

Crafting appropriate search terms requires "careful thought, quality control, testing, and cooperation with opposing counsel." *L–3 Communications Corp. v. Sparton Corp.*, 313 F.R.D. 661, 667 (M.D. Fla. 2015) (citing *William A. Gross Constr. Assocs., Inc. v. American Manufacturers Mut. Ins. Co.,* 256 F.R.D. 134, 134 (S.D.N.Y. 2009). Plaintiffs' proposed terms are laser focused on the issues in dispute in the case. Defendants' complaints about the volume, by contrast, fail to adhere to these requirements. Defendants chose to simply run the terms as proposed, and when a term yielded a large number of results for unanticipated reasons, they took issue with the large number of hits rather than proposing an alternative. They also routinely failed to take Plaintiffs up on their offers to use sampling to limit search terms with high hit counts. *Seroquel,* 244 F.R.D. at 652 ("Common sense dictates that sampling and other quality assurance techniques must be employed to meet requirements of completeness.").

In many instances, the Court responded to Defendants' purported burden concerns by ordering that search terms be run with modifiers, whereby a term would only generate a responsive document if it fell within a certain number of words of a doctor's name. This approach, while certainly understandable, will almost certainly miss responsive documents. *Custom Hardware Eng'g & Construction v. Dowell,* 2012 U.S. Dist. LEXIS 146, at *7 (discussing search terms' inherent flaws that they will only return documents that hit on the precise terms used).

Indeed, in this case, many relevant documents regarding trips and other remuneration do not reference a doctor within 25 words of the key term, or at all. Some

16

examples of documents produced by Precision Lens that do not reference a doctor within 25 of a key term or at all, but are very relevant to establishing the knowing offer of remuneration, can be found at Blumenfield Dec., Ex. O (PL0209777-209780; PL0219510; PL0223160).  Further, the third party productions contain examples of  documents that were ***not*** produced by Precision Lens, showing that the doctor modifiers appear to be inappropriately weeding out relevant documents. Blumenfield Dec., Ex. P (MEC-00000028; MEC-00000291; MEC00000351; MEC-00000573; MEC-LIN-00001754-1777; WEIR006129-6130).  The end result of the process to date is that Defendants have evaded their cooperation obligations while Plaintiffs will miss out on responsive documents.

## 2.  Category 2: Terms Run With Modifications.

In Blumenfield Decl., Ex. A, Plaintiffs also request that the modifier for certain searches in Category 2 be changed to reflect the company vernacular.  Specifically, the documents reflect that the use of a doctor's last name, or "Dr. or doc*, does not capture common references to doctors.  Based on counsel's review of records, Plaintiffs propose that the following search terms (identified at 2.n. of the Court's Order) be modified as follows:

> hotel or lodg* or golf or tournament or invoice or reward or Vikings or twins or wild or tickets or football or baseball and (doctor or doctors or physician or physicians or ophthalmologist or ophthalmologists or customer or customers or MD or M.D. or Dr. or Drs. or Dr or Drs or Jit or ricky or hunk or (first name) or (last name) or (clinic name))

*See* Blumenfield Decl., Ex. A at p. 2.  Examples of doctor references that reflect the additional modifiers proposed above are attached at *See* Blumenfield Decl., Ex. O

(PL0046407-46410; PL0203598-203599; PL0203660-662; PL0203668-670; PL0203674; PL0203727; PL0203730-203731;  PL0209777-209778; PL0222642)**.**

 In addition, Plaintiffs request that the searches relating to frequent flyer miles or skymiles be run differently.  In the e-discovery Order, the Court directed that "frequent flyer" or Skymiles or miles be run against doctor names or dr. or doc* as part of search 1.n. Because these miles were a consistent way Defendants are alleged to have offered kickbacks to physicians, Plaintiffs propose that these terms be more closely scrutinized. For example, "frequent flyer" only brought back 382 results originally, but no hits when modified, and Plaintiffs ask that those results be reviewed without further modification. In addition, Plaintiffs also propose that Skymiles, which refers to the Delta points program that Defendants most frequently used in connection with trips, be run without further modification.  However, Plaintiffs propose that the word "points" be added to category 2 because a review of Defendants' documents reflects that this term is frequently used to mean frequent flyer miles (*see, e.g.,* Blumentfield Dec., Ex. O and P (PL0055316-55317; PL0055448;        PL0097989-97991;        PL0169902-169903;        PL0203848-203849; MEC00000018-19; MEC00000022-25; MEC00000351).  As such, Plaintiffs propose the following string be added to Category 2:

- Points and (fly or flight or flights or ticket or tickets)

*See* Blumenfield Decl., Ex. A at p. 2.

In this Category, Plaintiffs also request that the Court specify the following list of clinic name references to be used for the following search:

("Convert*" or conversion) w/10 (Dr. or doc* or (last name) or (clinic name)). Plaintiffs compiled this list of clinic names by reviewing how Defendants typically refer to clinics in their internal communications (e.g., "Hutch" instead of the Regional Eye Center in Hutchinson, MN).  *See* Blumentfield Dec., Ex. O (PL0000157; PL0002464; PL0020254-20255.  *See also* PL0205054-205055 (using "converted" to signify achieving sales from a practice); PL0209178-209179 (same with regard to "conversion").  Defendants did not want to confer about this list, instead insisting on hypertechnical use of each clinic's formal name. This is inconsistent with basic search term protocol.  *L–3 Communications Corp. v. Sparton Corp.*, 313 F.R.D. 661, 667 (M.D. Fla. 2015) (effective search terms must take into account relevant words and abbreviations used by the ESI custodians).

Consistent with e-discovery principles, Plaintiffs have asserted that using search terms divorced from the company's internal vernacular is ineffective.  Plaintiffs instead propose the following:

- Cabinet
- HealthCenter
- Trinity or Minot
- Southwest or Oklahoma or OKC
- Tulsa
- "Regional Eye" or Hutch or Hutchinson
- VTV or Sanford
- "Minnesota Eye" or MEC
- (Ophthalmology w/2 Ltd or Limited) or "Sioux Falls"
- Wisconsin or "EC Laser" or Wausau
- Liberty
- Phillips or PEI
- Bay or Carolina
- Florence or Carolina
- Wabash
- "North Dakota Surgery Center"

- "Kansas City" or KC
- Bismarck
- Northwoods
- "Stevens Point"
- "Same Day"
- Albemarle

*See* Blumenfield Decl., Ex. A at pp. 2-3.

### 3. Category 3: Terms That Do Not Need to Be Searched At This Time.

Plaintiffs do not contest the Court's Order for the following terms:

- Boat,
- Fly-in,
- Hangar 374
- Premier Jet
- 3242Z
- Baron or Bravo
- Excess*
- "kristina bowar"
- Bluesox19@aol.com
- Flight
- Ski

### 4. Terms Not Addressed by the Court's Order.

The Court's Order did not address several terms originally proposed by Plaintiffs.

Those terms are set forth below:

| Search Term | Original Hit Count |
|---|---|
| Fraud* | 4326 |
| Helicopter OR copter | 1357 |
| Hotline | 2469 |
| Incentive* | 2157 |
| Induc* | 3919 |
| Valuat* | 1393 |
| Wine* | 3094 |

| | |
|---|---|
| Quid | 31 |

Plaintiffs propose the following treatment of these terms:

| Search Term | Original Hit Count | Proposal |
|---|---|---|
| Fraud* | 4326 | Run in Category 2 with the following modifiers: fraud* and (doctor or doctors or physician or physicians or ophthalmologist or ophthalmologists or customer or customers or MD or M.D. or Dr. or Drs. or Dr or Drs or Jit or ricky or hunk or ((first name) or (last name) or (clinic name)) |
| Helicopter OR copter | 1357 | Run in Category 2 with the following modifiers: Helicopter or copter and (doctor or doctors or physician or physicians or ophthalmologist or ophthalmologists or customer or customers or MD or M.D. or Dr. or Drs. or Dr or Drs or Jit or ricky or hunk or ((first name) or (last name) or (clinic name)) |
| Hotline | 2469 | Do Not Run -- Category 3 |
| Incentive* | 2157 | Run in Category 2 with the following modifiers: incentiv* and (doctor or doctors or physician or physicians or ophthalmologist or ophthalmologists or customer or customers or MD or M.D. or Dr. or Drs. or Dr or Drs or Jit or ricky or hunk or ((first name) or (last name) or (clinic name)) |
| Induc* | 3919 | Run in Category 2 with the following modifiers: induc* and (doctor or doctors or physician or physicians or ophthalmologist or ophthalmologists or customer or customers or MD or M.D. or Dr. or Drs. or Dr or Drs or Jit or ricky or hunk or ((first name) or (last name) or (clinic name)) |

| Valuat* | 1393 | Run in Category 2 with the following modifiers: Valu* and (doctor or doctors or physician or physicians or ophthalmologist or ophthalmologists or customer or customers or MD or M.D. or Dr. or Drs. or Dr or Drs or Jit or ricky or hunk or ((first name) or (last name) or (clinic name)) |
| Wine* | 3094 | Do Not Run -- Category 3 |

*See* Blumenfield Decl., Ex. A at pp. 3-4.

### B. Defendants' Burden Arguments Lack Merit.

Rather than challenge relevancy, Defendants complain about the cost associated with reviewing the documents and indicate that the documents would be duplicative of those already produced. But a discovery request is not automatically rendered unduly burdensome simply because it might duplicate previous discovery efforts. *See Fed'n of Physicians & Dentists, Inc.*, 63 F.Supp.2d 475 (granting the Government's motion to compel when defendants could not demonstrate how information that was previously supplied through a Civil Investigative Demand rendered the current discovery request duplicative). Another court recently rejected as unsubstantiated a similar argument that additional discovery would be duplicative and add nothing to address the issue at hand, reasoning that: "Absent production of the relevant documents, there is no way for the Court or Defendants to know the significance or lack of significance of the documents." *Cargill Meat Sols. Corp. v. Premium Beef Feeders, LLC*, 13-CV-1168-EFM-TJJ, 2015 WL 3937410, at *4 (D. Kan. June 26, 2015). Certainly, updating searches from 2015 onward is unlikely to produce any duplicative records.

22

With respect to the cost issues, Defendants should not be heard to complain, considering that they have refused to avail themselves of numerous efforts by Plaintiffs to mitigate any burden associated with the search terms. When a party fails to appropriately meet and confer, and instead unilaterally adopts a position on discovery, it cannot then claim that the costs resulting from additional discovery which may be required creates an undue burden. *ProCom Heating, Inc. v. GHP Grp., Inc.*, 2016 U.S. Dist. LEXIS 193650 (W.D. Ky. Jul. 7, 2016) ("Because GHP should have resolved these issues before undertaking its unilateral search, the issue is not what *additional* expense it might incur.").

Plaintiffs have proposed many compromises in an attempt to reduce the review burden. Defendants, however, have rejected every one of these options and instead have unilaterally adopted an under-inclusive approach. Defendants' unwillingness to cooperate with Plaintiffs to arrive at a reasonable set of search terms is inconsistent with good discovery practice.  As one court observed:

> [W]hile key word searching is a recognized method to winnow relevant documents from large repositories, use of this technique must be a cooperative and informed process. Rather than working with Plaintiffs from the outset to reach agreement on appropriate and comprehensive search terms and methods, [Defendant] undertook the task in secret.

*In re Seroquel Prod. Liab. Litig.*, 244 F.R.D. 650, 662 (M.D. Fla. 2007). "Selection of search terms requires careful advance planning by persons qualified to design effective search methodology," so ultimately "the process of crafting keywords must be a cooperative one." *L–3 Communications Corp. v. Sparton Corp.*, 313 F.R.D. 661, 667 (M.D. Fla. 2015).

Rather than engage in the collaborative process called for by these cases, Defendants have simply informed Plaintiffs that they believe that Plaintiffs search terms are over-inclusive, and made the unilateral decision to make productions without meaningful meet and confer over the effectiveness of the terms and modifiers used.  In the production Defendants made prior to the Court's Order, Defendants unilaterally proposed its own terms against physicians' last names, and declined to run any of the previously agreed upon terms for the new custodians.  In response to the Court's Order, Defendants rigidly ran those terms and then rejected any meet-and confer over even perverse results.  For example, the term "convert" is a critical term, as it is often used by Defendants to discuss sales targets and successful sales operations.  Defendants asked Plaintiffs for a list of clinic names that they proposed to be run in conjunction with that term, as the Court ordered.  Plaintiffs provided a list that took into account the various abbreviations and shortcuts of which they were aware.  Defendants rejected that list and insisted on only running the actual official name, even though for all but three of the clinics this narrow focus led to no responsive documents.  *Cf L–3*, 313 F.R.D. at 667 (mandating a cooperative approach); *Gross* 256 F.R.D. at 136 (mandating the consideration of abbreviations and the actual words used by the key custodians).

Gunisao, one of the trip locations, provides another good example of this.  It had only 29 hits originally and was narrowed by the Court's Order to 3 hits – Defendants rejected Plaintiffs' suggestion that the original 29 documents simply be reviewed. This is a far cry from the cooperative posture that is called for in this context, and it is difficult to

countenance the idea that 29 hits for an important trip location would have been unduly burdensome.

That Defendants have been so unwilling to meet and confer on these key issues is typical of the unilateral position they have consistently taken during this entire discovery process. Plaintiffs therefore request that the Defendants be ordered to run the search terms in Blumenfield Decl., Ex. A for all custodians, and that the parties be ordered to meet and confer over any hit results in Category 2 with more than 500 hits for a particular custodian.

### C. Defendants Cannot Establish that their Burden of Production Disproportionately Outweighs the Needs of Plaintiffs' FCA Case.

Consistent with the law surrounding kickback cases, a kickback submitted taints all affected claims for a period of time thereafter. *United States v. Rogan*, 517 F.3d 449, 453 (7th Cir. 2008) (In an FCA case predicated on an AKS violation, the proper measure of damages is the full amount of each tainted claim). *See also, e.g.*, *U.S. ex rel. Freedman v. Suarez-Hojos, No. 8:04-cv-933-T-24 EAJ,* 2012 WL 4344199, at *4 (M.D. Fla. Sept. 21, 2012) ("[T]he amount of the Government's damages resulting from the payment of false claims tainted by a kickback arrangement equals the full amount that Medicare paid on such claims."). In light of the number of physicians at issue in this case and the time period at issue, if Plaintiffs fully prevail at trial, damages would run well into the tens of millions of dollars. Precision Lens' former corporate partner, Sightpath, settled similar allegations in this matter for $12 million, and a single named physician settled related allegations for almost $3 million. The amount at stake in a potential trial in this matter is considerable.

Defendants have not properly addressed their arguments against this backdrop. Rather, they have focused their argument only on their potential burden, an approach criticized in a recent opinion:

> Although Plaintiff articulates the issue as one of proportionality, the only factor Plaintiff mentions is the cost of the discovery. Plaintiff does not set forth what the relative cost of production would be as compared to the amount in controversy. The Court notes that both parties seek damages/setoff in excess of $2,000,000. Plaintiff's unsupported estimate of $4,000 to $5,000 per custodian in discovery costs does not lead the Court to find that ordering the requested discovery violates proportionality, particularly given the history, scope, and nature of this case.

*Cargill*, 2015 U.S. Dist LEXIS 83137 at *12. As Magistrate Judge Thorson remarked in another case recently in rejecting the Defendant's concerns regarding undue burden, "given the issues in this case, it is not surprising that nearly 100,000 documents could be discoverable." *Murphy v. Piper*, Docket #102, 2017 U.S. Dist. LEXIS 205750 (D. Minn. Dec. 14, 2017).

The "importance of the issues at stake in the action" consideration set forth in Rule 26 also militates in favor of utilizing the search terms requested in Plaintiffs' Attachments A, many of which relate specifically to the trips and other remunerations. The Anti-Kickback Statute and the False Claims Act are also of critical importance to the United States, and the alleged violations in this matter are serious. *United States ex. Rel. Lutz v. BlueWave Health Consultants, Inc. et. al.,* 2018 U.S. Dist. LEXIS 119203, *7 (D.S.C. May 23, 2018)(("AKS violations are not technical violations of unnecessarily strict regulatory

requirements… Claims that were induced by violations of the Anti-Kickback Statute are serious, so serious that the Government often punishes them criminally.")

Finally, Plaintiffs address Defendants' argument that this case has been pending for several years and that the government obtained documents during the investigative phase. The focus of the investigative phase is to determine whether the United States has a sufficient basis for intervention. The government takes that decision quite seriously, but it in no way treats the investigatory phase of the case as a substitute for discovery. The search terms used for those purposes were much narrower, as was the time frame of production. At that stage, the Government properly assumes that it will have the opportunity to build its case in discovery just as any other litigant would have the right to do. Thus, the fact that the Government obtained information in a previous investigation does not preclude it from seeking additional information through the formal discovery process. *See United States v. Fed'n of Physicians & Dentists, Inc.*, 63 F.Supp.2d 475 (D. Del. 1999) (granting the Government's motion to compel when defendants could not demonstrate how information that was previously supplied through a Civil Investigative Demand rendered the current discovery request duplicative); see also *Donovan v. Lynn's Food Stores, Inc.*, 1981 U.S. Dist. LEXIS 17619 (S.D. Ga. Dec. 12, 1981) (finding the Government's prior investigation did not render subsequent discovery requests duplicative). Defendants' ongoing arguments that the government should have to rely on the information gathered prior to filing its case conflate the purposes of the FCA and the discovery process, and is inconsistent with the plain language of, and the spirit behind, the Federal Rules.

27

Likewise, Defendants' suggestions that Plaintiffs should have to tell them what they believe is missing from the earlier productions is inconsistent with the way in which discovery works. So are their requests that Plaintiffs look at the prior documents and tell them what terms they believe generated the best results, despite not having access to the information Defendants have. Discovery is inherently asymmetrical; the producing party has access to its information in ways that the receiving party simply does not. To place the burden on Plaintiffs at this stage to tell Defendants what else they believe might exist in Defendants' materials is simply illogical.

## IV.    CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that this Court order Defendants to: (1) run the search terms as provided by Plaintiffs in Blumenfield Decl., Ex. A to this Motion; and (2) engage with Plaintiffs in good faith to limit the total number of responsive documents for terms that yield more than 500 documents for a particular custodian.

Dated: April 2, 2019                              Respectfully submitted,

                                                  ERICA H. MacDONALD
                                                  United States Attorney

                                                  s/ Chad A. Blumenfield

                                                  BY:  CHAD A. BLUMENFIELD
                                                  Assistant U.S. Attorney
                                                  Attorney I.D. No. 387296
                                                  BY: BAHRAM SAMIE
                                                  Assistant U.S. Attorney
                                                  Attorney ID Number 392645

28

600 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5600

**Attorneys for Plaintiff United States**


  s/ Jennifer M. Verkamp
Jennifer M. Verkamp, Esq.
(admitted pro hac vice; OH 0067198)
Frederick M. Morgan, Esq.
(admitted pro hac vice; OH 0027687)
Sonya A. Rao
(admitted pro hac vice; MA 647170)
Chandra Napora
(admitted pro hac vice; OH 0092886)
Morgan Verkamp LLC
35 East 7th Street, Suite 600
Cincinnati, OH 45202
Telephone: (513) 651-4400

Susan M. Coler, Esq. (MN 0217621)
Halunen Law
80 South 8th Street, Suite 1650
IDS Center
Minneapolis, MN 55402
Telephone: (612) 260-5383

**Attorneys for Relator**