UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, *ex rel.* Kipp Fesenmaier, | Case No. 13-cv-3003 (WMW/DTS) |
| Plaintiffs, | **ORDER** |
| v. | |
| The Cameron-Ehlen Group, Inc., and Paul Ehlen, | |
| Defendants. | |

Plaintiff United States of America appeals the April 2, 2019 Order of United States Magistrate Judge David T. Schultz. For the reasons addressed below, the April 2, 2019 Order is affirmed.

## BACKGROUND[1]

Relator Kipp Fesenmaier filed a *qui tam* complaint in November 2013 against, among others, Defendants The Cameron-Ehlen Group, Inc., doing business as Precision Lens (Precision Lens), and Paul Ehlen, the founder and majority owner of Precision Lens. After investigating Fesenmaier's complaint, the United States filed a notice of its election to intervene in this case in August 2017. The United States subsequently filed an intervenor complaint (complaint) against Precision Lens and Ehlen on February 8, 2018. The intervenor complaint alleges that Precision Lens and Ehlen provided kickbacks to

---

[1] The magistrate judge's April 2, 2019 Order and this Court's October 22, 2018 Order provide a detailed factual and procedural summary. Accordingly, the Court refers to the procedural history and facts pertaining to this litigation only as relevant to this appeal.

physicians in violation of the Anti-Kickback Statute (AKS), 42 U.S.C. § 1320a-7b(b). According to the complaint, as a result of those kickbacks, false and fraudulent claims for payment were made to federal health care programs, including Medicare, in violation of the False Claims Act (FCA), 31 U.S.C. § 3729(a)(1), (a)(2). The intervenor complaint also alleges common-law claims for unjust enrichment and payment by mistake.

The Federal Bureau of Investigation (FBI) initiated its investigation of Defendants' business activities at least as early as 2012, before Fesenmaier commenced this lawsuit. The FBI interviewed potential witnesses during the course of the investigation. But the United States Attorney's Office did not begin to coordinate closely with the FBI's investigation and witness interviews until at least 2014.

On February 7, 2019, Defendants moved to compel discovery. As relevant to this appeal, Defendants sought an order compelling the United States to respond with greater specificity to Defendants' Interrogatory No. 1, which seeks identification and details of each false claim alleged to have been submitted to the United States. Defendants also sought an order compelling the United States to respond to Defendants' Request for Production No. 5, which seeks the production of all reports and notes of witness interviews prepared during the investigation.

The magistrate judge granted Defendants' motion to compel on April 2, 2019. The April 2, 2019 Order directs the United States to answer Defendants' Interrogatory No. 1 by identifying with specificity each alleged false claim no later than 45 days before the close of discovery. The April 2, 2019 Order also directs the United States to produce all documents that are responsive to Defendants' Request for Production No. 5, namely,

reports and notes of witness interviews made during the investigation. The magistrate judge reasoned that, because the United States Attorney's Office "did not become meaningfully involved in the investigation until 2014," the United States did not satisfy its burden to establish that the work-product doctrine applies to any witness interview reports or notes prepared before 2014. As for witness interviews that occurred *after* the United States Attorney's Office became involved in 2014, the magistrate judge reasoned that, to the extent the interview reports or notes contain fact work product (as opposed to opinion work product), "Defendants have demonstrated both substantial need and the inability to otherwise obtain the information without undue hardship" as required to obtain discovery of such documents under Federal Rule of Civil Procedure 26(b)(3)(A)(ii). The April 2, 2019 Order permits the United States to submit responsive documents to the Court for *in camera* review to identify any protected non-discoverable information that may be redacted or withheld. Because it objects to these aspects of the April 2, 2019 Order, the United States appeals.

## ANALYSIS

A district court applies an "extremely deferential" standard of review to a magistrate judge's ruling on a nondispositive issue. *Scott v. United States*, 552 F. Supp. 2d 917, 919 (D. Minn. 2008). A district court will modify or set aside a ruling only if it is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); LR 72.2(a); *Ferguson v. United States*, 484 F.3d 1068, 1076 (8th Cir. 2007). A ruling is clearly erroneous when, although there is evidence to support the ruling, "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been

3

committed." *Wells Fargo & Co. v. United States*, 750 F. Supp. 2d 1049, 1050 (D. Minn. 2010) (internal quotation marks omitted). A nondispositive ruling is contrary to law when it "fails to apply or misapplies relevant statutes, case law or rules of procedure." *Id.* (internal quotation marks omitted).

The United States challenges two of the magistrate judge's rulings—first, the requirement that the United States identify with specificity each alleged false claim no later than 45 days before the close of discovery and, second, the requirement that the United States produce reports and notes of witness interviews made during its investigation. The Court addresses each challenge in turn.

**I.  Identification of False Claims**

The United States argues that the magistrate judge clearly erred by ordering it to identify every alleged false claim no later than 45 days before the close of discovery. According to the United States, complying with this order would require a "laborious" and "time-intensive" process, and it is for "practical reasons like this that courts often do not require contention interrogatories to be answered until close to or at the end of discovery." For these reasons, "[t]he United States would strongly prefer to complete the fact discovery period" before engaging in "the time-intensive process of identifying all false claims during expert discovery."

None of the arguments advanced by the United States demonstrates that the magistrate judge's decision is clearly erroneous, nor is reversal of a magistrate judge's decision warranted merely because a party "strongly prefer[s]" a different outcome. Although the United States contends that "Defendants should be required to demonstrate

4

substantial need for the identification of false claims 45 days before the close of fact discovery," it provides no legal authority for imposing such a requirement. If the United States requires additional time to complete fact discovery in light of the April 2, 2019 Order, it has the option of seeking an extension of the fact discovery deadline. Indeed, while this appeal was pending, the United States sought and was granted such an extension.

Because the magistrate judge did not clearly err by requiring the United States to identify all the alleged false claims no later than 45 days before the close of discovery, this aspect of the April 2, 2019 Order is affirmed.

## II. Witness Interview Reports and Notes

The United States also argues that the April 2, 2019 Order is clearly erroneous and contrary to law to the extent that it requires the United States to produce reports and notes of witness interviews made during its investigation. According to the United States, these documents are protected by the work-product doctrine.

The work-product doctrine "limits the access of an opponent to materials 'prepared in anticipation of litigation or for trial.' " *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 924 (8th Cir. 1997) (quoting Fed. R. Civ. P. 26(b)(3)(A)). The party invoking the work-product doctrine "bears the burden of establishing the elements of work product immunity." *Id.* at 925. To do so, the party seeking protection must establish that "the materials were prepared in anticipation of litigation, i.e., because of the prospect of litigation." *PepsiCo, Inc. v. Baird, Kurtz & Dobson LLP*, 305 F.3d 813, 817 (8th Cir. 2002). Such materials nonetheless may be discoverable if the party seeking the materials shows a "substantial need for the materials to prepare its case" and that it cannot "obtain

5

their substantial equivalent by other means" without undue hardship. Fed. R. Civ. P. 26(b)(3)(A); *accord PespiCo, Inc.*, 305 F.3d at 817.

The United States Court of Appeals for the Eighth Circuit has "distinguish[ed] between two kinds of work product: ordinary work product, which includes raw factual information, and opinion work product, which encompasses counsel's mental impressions, conclusions, opinions or legal theories." *In re Green Grand Jury Proceedings*, 492 F.3d 976, 980 (8th Cir. 2007) (internal quotation marks omitted). Whereas ordinary work product generally is discoverable based on a showing of substantial need and the inability to obtain substantially equivalent materials without undue hardship, opinion work product "enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." *Id.* (internal quotation marks omitted). Opinion work product includes not only the notes and memoranda of an attorney, but also those of an attorney's agent. *Id.* at 981.

### A.  Pre-2014 Interview Materials

The magistrate judge first concluded that the United States did not satisfy its burden of establishing that pre-2014 FBI interview materials were created in anticipation of litigation. The United States argues that the April 2, 2019 Order erroneously concludes that interview materials created before 2014 categorically are not entitled to work-product protection.

The record reflects that the FBI's lead case agent "do[es] not recall closely coordinating with the U.S. Attorney's Office for the District of Minnesota in connection with the 2013 interviews." The case agent recalls speaking with an Assistant United States

6

Attorney before conducting the interviews about which witnesses would be interviewed and what topics would be covered. But the United States provides little detail as to the circumstances of these discussions beyond the case agent's vague recollections that they occurred. As the magistrate judge correctly observed, the record is "thin" as to this issue. Moreover, when a law-enforcement officer conducts a witness interview as part of an investigation, the officer's decision to do so is not necessarily the result of a directive from an attorney for the government in anticipation of litigation. *See United States ex rel. Landis v. Tailwind Sports Corp.*, 303 F.R.D. 419, 424 (D.D.C. 2014). Without more, the fact that pre-interview conversations may have occurred between an FBI agent and a government attorney does not establish that any subsequently prepared interview reports and notes were created in anticipation of litigation.

It is the burden of the United States to establish that the FBI's pre-2014 interview materials are protected by the work-product doctrine and, on this record, the magistrate judge did not err by concluding that the United States failed to satisfy this burden.[2]

### B. Post-2013 Interview Materials

The United States also challenges the April 2, 2019 Order's conclusions with respect to witness interviews conducted in 2014, *after* the United States Attorney's Office became

---

[2] To the extent that any of the pre-2014 interview materials *were* created in anticipation of litigation despite the failure of the United States to meet its burden of proof, the magistrate judge also concluded that these materials nonetheless are discoverable based on Defendants' substantial need for the materials. This conclusion, as addressed below, is not erroneous. Moreover, the April 2, 2019 Order provides the United States the option of submitting any responsive documents to the magistrate judge for *in camera* review for possible redaction.

involved in the FBI's investigation. According to the United States, the magistrate judge erred by failing to recognize that the post-2013 interviews are *opinion* work product, rather than *fact* work product, by virtue of the significant involvement of an Assistant United States Attorney with those interviews. The United States also contends that the magistrate judge erred by concluding that any fact work product is discoverable based on Defendants' substantial need for the materials and inability to obtain equivalent materials without undue hardship.

1. **Opinion Work Product**

According to the United States, *all* post-2013 interview materials are opinion work product because an Assistant United States Attorney was involved.

The FBI's lead case agent attests that an Assistant United States Attorney was involved with every witness interview in 2014 and thereafter but did not personally attend each interview. The magistrate judge concluded that "[a]lthough some, or even many, of the [post-2013] FBI reports may be opinion work product, the Court cannot say with confidence without reviewing the individual documents." For that reason, the April 2, 2019 Order permits the United States to submit responsive documents to the Court for *in camera* review prior to the production of these materials in discovery so as to identify any protected non-discoverable information that may be redacted or withheld.

The United States contends that *in camera* review by the magistrate judge is unnecessary because the involvement of an Assistant United States Attorney with all witness interviews in 2014 and thereafter renders those interviews opinion work product. But the legal authority that the United States cites does not support this broad, categorical

definition of opinion work product. The notes and memoranda of an attorney's agent are opinion work product to the extent that such documents reveal "counsel's mental impressions, conclusions, opinions or legal theories." *In re Green Grand Jury Proceedings*, 492 F.3d at 980 (internal quotation marks omitted). The magistrate judge acknowledged that many of the post-2013 interview materials may reveal such protected information. But the record here is insufficient to conclude that *all* of the post-2013 interview materials are opinion work product based solely on a case agent's recollection that an Assistant United States Attorney was "involved with all of the interviews." The record is silent as to what the interview reports and notes contain, who drafted them, at who's direction they were prepared, or for what purpose. As the April 2, 2019 Order observes, some of these materials may contain a near-verbatim transcription of the interview, which likely would be raw factual information as opposed to opinion work product.

For these reasons, the magistrate judge did not err by requiring the United States to submit such documents for *in camera* review before determining whether these interview materials are opinion work product.

### 2. Fact Work Product

The April 2, 2019 Order concludes that any post-2013 interview materials that are *fact* work product are discoverable because "Defendants have demonstrated both substantial need and the inability to otherwise obtain the information without undue hardship." The United States argues that this ruling is clearly erroneous and contrary to law because the magistrate judge made insufficient factual findings and "developed no

9

record regarding when Defendants learned of the investigation, their efforts to meet with individuals interviewed by the government, or the results of these efforts."

Work-product materials may be discoverable if the party seeking the materials "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A); *accord PespiCo, Inc.*, 305 F.3d at 817. "A party . . . does not demonstrate substantial need when it merely seeks corroborative evidence." *Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000). And a witness's prior statement to an attorney generally is not discoverable "if that witness is available to the other party." *Id.*

The magistrate judge found that notes and memoranda from interviews conducted as early as 2012 are unique because they provide contemporaneous, unadorned testimony and may demonstrate how witnesses' recollections have changed over time.[3] Implicit in this finding is the determination that this evidence is not merely corroborative of other evidence. The United States does not dispute the relevance of these witness interviews to this case. Indeed, the witnesses that were interviewed between October 2012 and April 2016 include Fesenmaier, current and former Precision Lens employees, and physician customers of Precision Lens. In addition, the magistrate judge correctly found that "through eleven requests to extend the deadline to intervene, the Government contributed to the Defendants' need for, and inability to otherwise obtain, the same information which

---

[3] Notably, the United States alleges claims against Defendants that date back to 2006, which further bolsters the likely importance of witness statements made closer in time to the alleged conduct.

now exists solely in the Government's possession." On this record, the magistrate judge correctly concluded that Defendants have a substantial need for these witness interview materials and an inability to otherwise obtain this information without undue hardship.

In summary, the April 2, 2019 Order is neither clearly erroneous nor contrary to law to the extent that it requires the United States to produce reports and notes of witness interviews made during its investigation. As such, this aspect of the April 2, 2019 Order is affirmed.

### ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that the April 2, 2019 Order of United States Magistrate Judge David T. Schultz, (Dkt. 203), is **AFFIRMED**.

Dated: July 19, 2019

s/Wilhelmina M. Wright  
Wilhelmina M. Wright  
United States District Judge