# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, ex rel., et al., | Case No. 13-cv-3003 (WMW/DTS) |
| Plaintiffs, | |
| v. | **ORDER** |
| Cameron-Ehlen Group, Inc., et al., | |
| Defendants. | |

_____

As part of discovery in this False Claims Act matter, the Government and Relator Kipp Fesenmaier have asserted a common interest privilege over communications shared between the Relator (and his counsel) and Government agents (including members of the U.S. Attorney's Office). During the May 2019 status conference, Defendants first challenged Plaintiffs' assertion that the Government and Fesenmaier had a unity of interest beginning on April 24, 2013, the date on which the Relator told an FBI agent that he had hired an attorney for a potential False Claims Act lawsuit. May 21, 2019 Hr'g Tr. 38-39, Dkt. No. 277. In a subsequent Order, this Court analyzed the common interest privilege and its application in False Claims Act cases, both generally and in the present case. June 10, 2019 Order, Dkt. No. 275.[1] There, the Court ordered production of any documents not independently subject to attorney-client privilege or the work product doctrine, but invited the parties "to provide sufficient factual detail and legal argument necessary to resolve the broader question of whether the common interest doctrine is to be applied prior to September 2013." *Id.* at 5. Defendants accepted that invitation and brought the motion that is the subject of this Order.

---

[1] The Court expressly incorporates that prior Order and its analysis into the present Order.

In their briefing, Defendants questioned Fesenmaier's standing to bring the qui tam action at all, arguing his interest in the claim should have been part of his bankruptcy estate. Without standing, the theory posits, there could be no common legal interest between Fesenmaier and the Government. That argument presents an interesting question that has, at least, the potential to undermine the claim of common interest. However, its resolution would require the consideration of other dispositive issues that are currently before District Judge Wright on Defendants' motion for summary judgment against Fesenmaier. This Court defers on these broader questions.

Nonetheless, this Court left open the original challenge as to when the common interest privilege began. With fact discovery now ostensibly closed, this open question must be addressed. As the asserting side, Plaintiffs bear the burden of establishing that the privilege applies in the specific instance. *See Hollins v. Powell*, 773 F.2d 191, 196 (8th Cir. 1985). On the record before this Court, any common interest privilege is properly asserted only once Fesenmaier made his pre-filing disclosure to the Government.

The very nature of the pre-filing disclosure makes the date it occurred a clear point of demarcation. As discussed in the prior Order, the caselaw is fairly clear that the Relator does not waive applicable privileges by following the disclosure requirements of 31 U.S.C. § 3730(b)(2). *In re Uehling*, 2014 WL 1577459, at *5 (E.D. Cal. Apr. 17, 2014). It is logical that the Government, upon receipt of that file, would follow up with the Relator and counsel as it weighs intervention and considers potential case strategy. Further, although no bright line "relation back" rule exists in the caselaw, the Government's ultimate intervention in the case lends factual support to the present record that the communications between the Plaintiffs were in fact in furtherance of a

strategic common legal interest. Because they had a sufficient unity of interests at the time Fesenmaier made his pre-filing disclosure, Plaintiffs did not waive otherwise applicable privileges by sharing documents and communications among themselves on or after September 20, 2013.

The record is far less clear as to the earlier date on which Plaintiffs also assert the common interest privilege. On April 24, 2013, Fesenmaier emailed Mary Jo Herrett, the case agent leading the FBI's criminal investigation. Decl. of Matthew Piehl, Sept. 27, 2019, Ex. 1 (Fesenmaier Dep. 184-85), Dkt. Nos. 333-34. He informed Special Agent Herrett that he had retained a law firm for a potential qui tam action, and Special Agent Herrett responded she was not surprised. *Id.*

Bearing in mind that Plaintiffs have the burden of demonstrating the applicability of a discovery privilege, *Hollins*, 773 F.2d at 196, Fesenmaier's email informing Special Agent Herrett that he had hired an attorney is insufficient to meet that burden. Even assuming that Special Agent Herrett's knowledge that Fesenmaier hired an attorney could be imputed to the Government, there is no further factual predicate demonstrating, in that early phase, a common legal strategy or unity of interests. At the time Fesenmaier made the statement, the FBI's investigation was apparently still criminal in nature, and the civil division of the U.S. Attorney's Office did not become involved in witness interviews until 2014. Decl. of Mary Jo Herrett, Feb. 14, 2019, at ¶¶ 4-5, Dkt. No. 182. Because Fesenmaier was cooperating in the criminal investigation when he hired an attorney, it is far from obvious that any subsequent communication was made in furtherance of a common interest, rather than as a cooperating witness.

Plaintiffs have argued that a broad view of the common interest privilege in this matter is consistent with the purpose of the False Claims Act. Although the limited

authority in this area suggests that a unity of interest can be assumed at certain points prior to intervention, the argument does not carry as much water as Plaintiffs need. The interests of the Relator and the Government are not always and necessarily aligned. *United States ex rel. (Redacted) v. (Redacted)*, 209 F.R.D. 475, 479 n. 3 (D. Utah 2001). At the time he informed the FBI he hired an attorney, Fesenmaier's interests could have been well at odds with the Government's interest in prosecuting the criminal action. Even in the civil action, the statute authorizing qui tam lawsuits gives the Government the power effectively to sideline a relator when useful to litigating the case as the Government sees fit. 31 U.S.C. § 3730(2)(A)-(D) (allowing the Government to dismiss or settle the action over the relator's objections and authorizing the court to limit the relator's participation in the litigation).

In sum, Plaintiffs have not met their burden to show that the common interest privilege applied to otherwise privileged material before September 20, 2013. If Plaintiffs shared such documents or communications with each other before that date, they waived any otherwise applicable privilege.

The Court, having heard argument on the matter and being fully apprised hereby makes the following order.

IT IS HEREBY ORDERED that Defendants' Motion to Compel Withheld Materials and Testimony [Dkt. No. 330] is GRANTED. Plaintiffs shall produce all responsive communications previously withheld pursuant to the common interest privilege if the communication occurred before September 20, 2013.

Dated: Dec. 17, 2019

                                          s/ David T. Schultz
                                          DAVID T. SCHULTZ
                                          United States Magistrate Judge