UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, ex rel. Kipp Fesenmaier, | Case No. 13-cv-3003 (WMW/DTS) |
| Plaintiffs, | |
| v. | **ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| The Cameron-Ehlen Group, Inc., and Paul Ehlen, | |
| Defendants. | |

This matter is before the Court on Defendants' motion for summary judgment as to Relator Kipp Fesenmaier. (Dkt. 425.) Defendants argue that Fesenmaier lacks standing to assert claims under the False Claims Act (FCA), 31 U.S.C. §§ 3729 *et seq.*, because any such claims were assigned to Fesenmaier's bankruptcy estate before this lawsuit commenced. In the alternative, Defendants contend that Fesenmaier should be judicially estopped from asserting FCA claims in this case. For the reasons addressed below, Defendants' motion is denied.

**BACKGROUND**

Defendant The Cameron-Ehlen Group, Inc., doing business as Precision Lens (Precision Lens), is a distributor of intraocular lenses (IOLs) and other products related to ophthalmic surgeries. Defendant Sightpath Medical, Inc. (Sightpath) is Precision Lens's corporate partner, and Defendant Paul Ehlen is the founder and majority owner of Precision Lens. Precision Lens provides ophthalmic supplies and equipment to

ophthalmologists and facilities for use in ophthalmology procedures, including cataract surgeries. Relator Kipp Fesenmaier worked for Sightpath for approximately 15 years, including several years as a vice president of Sightpath.

In March 2010, Fesenmaier reported to the FBI allegations that Defendants were providing kickbacks to physicians. In a document that he sent to the FBI, Fesenmaier provided specific factual allegations pertaining to these kickbacks. The FBI interviewed Fesenmaier in December 2011 and designated Fesenmaier as a "confidential human source" a short time later. Fesenmaier continued to communicate with the FBI about these allegations for several years thereafter.

Fesenmaier and his wife filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the District of Minnesota on August 23, 2012. *In re Fesenmaier*, No. 12-44900-JNF (Bankr. D. Minn. 2012). The Fesenmaiers worked with an attorney to prepare the required bankruptcy paperwork, including identifying their assets and liabilities. Shortly thereafter, the Fesenmaiers attended a meeting with the Chapter 7 trustee and responded to the trustee's questions about their assets and liabilities, including legal claims that might qualify as assets. The Fesenmaiers did not disclose as assets any anticipated FCA claims pertaining to the allegations Fesenmaier had reported to the FBI. The Fesenmaiers' bankruptcy case resulted in a discharge of $55,783.40 in medical and credit card debt on November 30, 2012. The bankruptcy case was closed on January 3, 2013, and the trustee was discharged.

In April 2013, Fesenmaier retained counsel for the purpose of a potential FCA lawsuit. Fesenmaier subsequently commenced this FCA lawsuit in November 2013

against Sightpath and other defendants, including Precision Lens and Ehlen. In his complaint, Fesenmaier alleged that Defendants violated the FCA by paying kickbacks to induce the use of their products by Medicare beneficiaries. The allegations in Fesenmaier's complaint arise from the same conduct that Fesenmaier reported to the FBI beginning in March 2010.

During Fesenmaier's September 2019 deposition in this case, Defendants questioned Fesenmaier about his nondisclosure of FCA claims in the 2012 bankruptcy proceedings. After his deposition, Fesenmaier sought new bankruptcy counsel to "figure out how to fix our mistake if we had made one." Fesenmaier applied to reopen the bankruptcy matter in November 2019. The bankruptcy court granted Fesenmaier's application on December 2, 2019, and appointed Erik Ahlgren as trustee (the Trustee). *In re Fesenmaier*, 12-44900-JNF, Dkts. 13, 14 (Bankr. D. Minn. 2019). Fesenmaier notified the Trustee of this case and entered into a settlement agreement with the Trustee on December 24, 2019. Pursuant to the settlement agreement, the Fesenmaiers paid $100,000 to fund the estate fully, including all previously discharged debts, interest on that debt, and the Trustee's administrative expenses. The settlement agreement also provides that "the Trustee will be deemed to have abandoned any further interest in the [Fesenmaiers'] assets, including the ongoing FCA Litigation."

Defendants move for summary judgment against Fesenmaier, arguing that he lacks standing to assert FCA claims against Defendants because those claims became an asset of and belong to the bankruptcy estate. In the alternative, Defendants contend that Fesenmaier should be judicially estopped from asserting FCA claims against Defendants

3

because asserting those legal claims in this case is inconsistent with Fesenmaier's earlier position in the bankruptcy proceedings—that he possessed no such legal claims. Fesenmaier opposes Defendants' motion as to both arguments.

## ANALYSIS

Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, there is "no genuine dispute as to any material fact" and the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Windstream Corp. v. Da Gragnano*, 757 F.3d 798, 802–03 (8th Cir. 2014). A genuine dispute as to a material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To defeat a motion for summary judgment, the opposing party must cite with particularity those aspects of the record that support any assertion that a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1)(A); *accord Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). The Court addresses each of Defendants' summary-judgment arguments in turn.

### I.   Standing

Defendants first argue that Fesenmaier lacks standing to assert FCA claims against Defendants because those claims became an asset of the bankruptcy estate during Fesenmaier's bankruptcy proceedings. Fesenmaier counters that the FCA claims never belonged to the bankruptcy estate and, even if they had, the FCA claims were reassigned

to Fesenmaier when the Trustee expressly abandoned those claims in the December 24, 2019 settlement agreement in the reopened bankruptcy proceedings.

As a threshold matter, the parties disagree as to whether Defendants' standing argument implicates constitutional standing or prudential standing. This distinction is material here because constitutional standing is jurisdictional and must exist when a case is filed, whereas prudential standing is non-jurisdictional and may be subsequently cured. As such, the Court first addresses the nature of Defendants' standing argument.

Under Article III of the United States Constitution, the jurisdiction of federal courts extends only to actual cases or controversies. U.S. Const. art. III, § 2, cl. 1; *Neighborhood Transp. Network, Inc. v. Pena*, 42 F.3d 1169, 1172 (8th Cir. 1994). A plaintiff must establish Article III standing as an "indispensable part of the plaintiff's case." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *accord Hargis v. Access Capital Funding, LLC*, 674 F.3d 783, 790 (8th Cir. 2012). To satisfy the requirements of Article III standing, a plaintiff must have suffered an injury in fact, establish a causal relationship between the contested conduct and the alleged injury, and show that a favorable decision would redress the injury. *Lujan*, 504 U.S. at 560–61; *Hargis*, 674 F.3d at 790. Article III standing is determined based on the facts as they existed when the complaint was filed. *Lujan*, 504 U.S. at 569 n.4.

In addition to Article III standing, courts also must consider judicially imposed prudential limits on standing. *Oti Kaga, Inc. v. S. Dakota Hous. Dev. Auth.*, 342 F.3d 871, 880 (8th Cir. 2003). Even if a plaintiff has Article III standing, the plaintiff's claimed injury might "run afoul of prudential standing limits because the claim rests on

5

the legal rights of third-parties." *Id.* (citing *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). "Constitutional and prudential standing are about, respectively, the constitutional power of a federal court to resolve a dispute and the wisdom of so doing." *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 934 (8th Cir. 2012) (internal quotation marks omitted).

The Supreme Court of the United States addressed standing in the context of FCA claims in *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765 (2000). In *Vermont Agency*, the Supreme Court considered whether a *qui tam* relator has Article III standing to pursue claims under the FCA, which authorizes a private party to bring suit to remedy an injury suffered by the United States as a result of fraud. 529 U.S. at 770–71. The Supreme Court held that the FCA "effect[s] a partial assignment of the Government's damages claim" and that assignment of the "United States' injury in fact suffices to confer standing on [the relator]." *Id.* at 773, 774. As such, "the assignee of [an FCA] claim has standing to assert the injury in fact suffered by the assignor." *Id.* at 773.

Here, Defendants expressly do not seek dismissal of the United States, as they do not dispute that the United States satisfies the three requirements of Article III standing—namely, an injury in fact, a causal relationship, and redressability. Nor do Defendants dispute that, under *Vermont Agency*, an injury suffered by the United States is partially assigned to a private party relator pursuant to the FCA, and this partial assignment confers Article III standing on the relator. Instead, Defendants dispute the *identity* of the assignee of the United States's damages claim—whether the legal claims belong to

6

Fesenmaier or to Fesenmaier's bankruptcy estate. As such, Defendants' argument is best characterized as a dispute over the identity of the real party in interest.[1]

Rule 17(a)(1), Fed. R. Civ. P., provides that "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). "This rule requires that the party who brings an action actually possess, under the substantive law, the right sought to be enforced." *United HealthCare Corp. v. Am. Trade Ins. Co.*, 88 F.3d 563, 569 (8th Cir. 1996). "The concepts of real party in interest and standing are related but not identical, and the 'requirements of Rule 17 should not be confused with the jurisdictional doctrine of standing.' " *Mecklenburg Farm, Inc. v. Anheuser-Busch, Inc.*, 250 F.R.D. 414, 417 (E.D. Mo. 2008) (quoting *Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 756 (7th Cir. 2008)); *accord* 4 Moore's Federal Practice § 17.10[1]; *cf. Captiva Lake Invs., LLC v. Fid. Nat'l Title Ins. Co.*, 883 F.3d 1038, 1050 n.4 (8th Cir. 2018) (concluding that argument as to the transfer of a legal interest implicates the nonjurisdictional real-party-in-interest rule as opposed to standing); *Lucas v. Lucas*, 946 F.2d 1318, 1322 & n.6 (8th Cir. 1991) (distinguishing real-party-in-interest rule from standing)). "Some courts have described Rule 17's real-party-in-interest requirement as essentially a codification of this nonconstitutional, prudential limitation on standing." *Rawoof*, 521 F.3d at 757 (collecting cases).

As addressed above, the Supreme Court held in *Vermont Agency* that the FCA effects a partial assignment of the United States's damages claim to a private party. 529

---

[1]  Indeed, in their memoranda of law, Defendants repeatedly characterize their argument in these or similar terms, arguing that the "bankruptcy trustee was the real party to any interest Fesenmaier may have had in the claims."

7

U.S. at 773. Here, as in *Vermont Agency*, the FCA claims asserted by Fesenmaier involve a redressable injury in fact that qualifies as a "case or controversy" under Article III. Defendants do not dispute the *existence* of the asserted FCA claims. The only disputed question pertains to *who* possesses and, therefore, may assert those claims—Fesenmaier or the Trustee. A dispute as to who possesses a claim that has been reassigned, and whether a plaintiff is improperly asserting claims that belong to a third party, implicates non-jurisdictional prudential standing and the real-party-in-interest requirements of the Federal Rules of Civil Procedure, not constitutional standing. *See, e.g.*, *Captiva Lake Invs.*, 883 F.3d at 1050 n.4; *Rawoof*, 521 F.3d at 756–57; *United HealthCare*, 88 F.3d at 569; *Lucas*, 946 F.2d at 1322 & n.6. Because such a dispute is non-jurisdictional, it may be waived or cured after the lawsuit has commenced. *See, e.g.*, *Rawoof*, 521 F.3d at 756–57; *United HealthCare*, 88 F.3d at 569; *Lucas*, 946 F.2d at 1322 & n.6; *Mecklenburg Farm*, 250 F.R.D. at 417–18.

Nonetheless, Defendants insist that, because Article III standing is implicated, this Court must limit its analysis to the facts that existed when the complaint was filed, and that Fesenmaier is not permitted to later remedy the alleged defect. Defendants' argument is contrary to the relevant legal authority. The decision by the United States Court of Appeals for the Eighth Circuit in *Wolfe v. Gilmour Manufacturing Co.*, 143 F.3d 1122 (8th Cir. 1998), is instructive. The original plaintiff in *Wolfe*, Vicky Heller, petitioned for bankruptcy *after* being injured in an accident but *before* commencing a product-liability lawsuit arising from that accident. 143 F.3d at 1126. Heller later reopened her bankruptcy estate and, pursuant to Federal Rule of Civil Procedure 17(a),

8

substituted the bankruptcy trustee as the plaintiff in her product-liability lawsuit. *Id.* On appeal, the Eighth Circuit acknowledged that when Heller filed her product-liability complaint and "sought to invoke the jurisdiction of the trial court, she did not have standing under . . . Article III . . . to pursue her action." *Id.* But the Eighth Circuit rejected the defendant's Article III standing challenge, holding that Heller remedied the standing problem because "once [the trustee] replaced Ms. Heller, the suit continued as if [the trustee] had filed it originally." *Id.* at 1127. In doing so, the Eighth Circuit acknowledged that "no action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest" until an opportunity for substitution is provided, and that the substitution "shall have the same effect as if the action had been commenced in the name of the real party in interest." *Id.* at 1126–27 (quoting Fed. R. Civ. P. 17(a)).

Just as the plaintiff in *Wolfe* lacked Article III standing when she commenced her lawsuit, Defendants here contend that Fesenmaier lacked Article III standing when he commenced this lawsuit. But the fact that the defect in *Wolfe* implicated Article III standing did not preclude the plaintiff from later remedying the defect by taking steps to ensure the real party in interest was prosecuting the claim. *Id.* That is because Article III standing *existed* when the plaintiff commenced her lawsuit, she simply was not the real party in interest who was entitled to prosecute the claim. *Id.* This type of defect may be remedied after-the-fact. *Id.*

Applying the Eighth Circuit's reasoning in *Wolfe* to the circumstance here, and assuming that the FCA claims in this case became an asset of Fesenmaier's bankruptcy estate in 2012, any standing defect at the commencement of this lawsuit could have

9

subsequently been remedied by substituting the Trustee in the place of Fesenmaier. In lieu of substituting the Trustee, Fesenmaier reopened his bankruptcy estate and reached a settlement with the Trustee pursuant to which the Trustee relinquished the FCA claims to Fesenmaier. As addressed below, this process had the same material effect as the substitution that occurred in *Wolfe*—the real party in interest, Fesenmaier, is prosecuting the FCA claims. Defendants' contention that Fesenmaier was not permitted to remedy the alleged standing defect after filing his complaint is contrary to the Eighth Circuit's decision in *Wolfe* and, therefore, unfounded.

Rule 17 of the Federal Rules of Civil Procedure applies to the transfer of legal interests "occurring prior to the commencement of a lawsuit." *ELCA Enters., Inc. v. Sisco Equip. Rental & Sales, Inc.*, 53 F.3d 186, 190 n.4 (8th Cir. 1995). Relatedly, Rule 25(c) of the Federal Rules of Civil Procedure "permits substitutions when . . . an interest is transferred during a lawsuit." *Id.* at 191. Indeed, as the Eighth Circuit recognized in *Wolfe*, even if Fesenmaier were *not* the real party in interest, dismissal is not permitted based on a "failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3); *accord Wolfe* 143 F.3d at 1126–27. "After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest." Fed. R. Civ. P. 17(a)(3).

Assuming without deciding that the FCA claims in this case belonged to the bankruptcy estate at the commencement of this lawsuit, Fesenmaier presents uncontroverted evidence that the Trustee subsequently abandoned the FCA claims.

10

When a bankruptcy trustee abandons an asset, that asset "ceases to be property of the estate and title reverts to the debtor." *In re Olson*, 930 F.2d 6, 8 (8th Cir. 1991); *accord Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 617 (7th Cir. 2002) (explaining that "the effect of a trustee's abandoning a claim is to revest the ownership of it in the debtor," and that "when property of the bankrupt is abandoned, the title reverts to the bankrupt, nunc pro tunc, so that [the debtor] is treated as having owned it continuously" (internal quotation marks omitted)).  Here, in the December 24, 2019 settlement agreement, the Trustee expressly abandoned any FCA claims that may have belonged to Fesenmaier's bankruptcy estate.  As such, the FCA claims belong to Fesenmaier as if he has owned them continuously, and he is the real party in interest who may prosecute those claims.

Defendants rely on *United States ex rel. Gebert v. Transport Administrative Services*, 260 F.3d 909 (8th Cir. 2001), arguing that a relator cannot maintain standing after the relator has assigned an FCA claim to a bankruptcy estate.  In *Gebert*, the Eighth Circuit concluded that the debtors had been divested of their FCA claim both because their "right to the claim (including any money damages) is now the property of the bankruptcy estate" and, even if the debtors had not acquired the FCA claim until later, they nonetheless "assigned their right to the [FCA] claim to the bankruptcy estate through [a] settlement agreement and release."  260 F.3d at 914, 915.  But neither circumstance is present here.  Fesenmaier never expressly assigned his right to the FCA claim in this case pursuant to a settlement agreement and release.  And Fesenmaier's right to the FCA claim is not the property of the bankruptcy estate because, even assuming the FCA claim

11

had been transferred to the bankruptcy estate, it has since been transferred back to Fesenmaier by virtue of the bankruptcy trustee's express abandonment of the claim. No such abandonment had occurred in *Gebert* and, therefore, the Eighth Circuit did not address the effect of such an occurrence. Therefore, *Gebert* is inapposite.

For all these reasons, Defendants' challenge to Fesenmaier's standing implicates non-jurisdictional prudential standing and the real-party-in-interest requirement. Because the record establishes that Fesenmaier is the real party in interest with respect to the FCA claims he asserts in this case, Defendants' motion for summary judgment on this basis is denied.

## II.   Judicial Estoppel

Defendants argue, in the alternative, that Fesenmaier should be judicially estopped from asserting FCA claims against Defendants. According to Defendants, asserting those legal claims in this case is inconsistent with Fesenmaier's earlier position, in the bankruptcy proceedings, namely, that he possessed no such legal claims.

The doctrine of judicial estoppel prevents a litigant who takes a position in one legal proceeding—and succeeds—from later assuming a contrary position. *Scudder v. Dolgencorp, LLC*, 900 F.3d 1000, 1006 (8th Cir. 2018) (citing *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)). Judicial estoppel invokes the premise that, "absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." *Id.* (quoting *New Hampshire*, 532 U.S. at 749). When determining whether judicial estoppel applies, courts consider three factors: (1) whether a party's later position clearly is

inconsistent with that party's earlier position, (2) whether the party succeeded in persuading a court to accept that party's earlier position such that accepting the contrary or inconsistent position in the later proceeding would create the perception that one of the courts was misled, and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Id.* (citing *New Hampshire*, 532 U.S. at 750–51).

"In the bankruptcy context, a party may be judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements" because the "debtor's failure to list a claim in the mandatory bankruptcy filings is tantamount to a representation that no such claim existed." *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1047 (8th Cir. 2006) (internal quotation marks omitted). But "judicial estoppel does not apply when a debtor's prior position was taken because of a good-faith mistake rather than as part of a scheme to mislead the court." *Id.* at 1049 (internal quotation marks omitted). Because "[c]areless or inadvertent disclosures are not the equivalent of deliberate manipulation," a court "should only apply the [judicial-estoppel] doctrine as an extraordinary remedy when a party's inconsistent behavior will result in a miscarriage of justice." *Id.*

As to the first factor, assuming that Fesenmaier had an obligation to disclose potential FCA claims in the bankruptcy proceedings, his admitted failure to do so demonstrates that he represented to the bankruptcy court that no such claim existed. *See id.* at 1047. That representation clearly is inconsistent with Fesenmaier's position here, in

13

which he asserts FCA claims based on conduct that occurred before his bankruptcy proceedings commenced.  Thus, this factor weighs in favor of applying judicial estoppel.

The second factor addresses whether the bankruptcy court accepted Fesenmaier's prior position, such that accepting a contrary position in this case would create the perception that either this Court or the bankruptcy court has been misled.  The bankruptcy court accepted Fesenmaier's prior position when it discharged his debt in November 2012.  But Fesenmaier amended his position in the bankruptcy court—albeit many years later—by reopening the bankruptcy proceedings and disclosing the FCA claims.  In doing so, Fesenmaier repaid his previously discharged debt, with interest, such that Fesenmaier has relinquished any benefit that he previously derived by not disclosing potential FCA claims in the bankruptcy proceedings.  As such, the resolution of the bankruptcy proceedings no longer is premised on the bankruptcy court's acceptance of Fesenmaier's representation that no FCA claims existed.  *Cf. id.* at 1049 (concluding that the bankruptcy court did not accept plaintiff's prior inconsistent position because plaintiff's debts had not been discharged based on the incomplete disclosures).  Also, because no inconsistency persists, there is no perception that either this Court or the bankruptcy court has been misled.  This factor weighs against applying judicial estoppel.

The third factor addresses whether Fesenmaier would derive an unfair advantage, or impose an unfair detriment on Defendants, if he is not estopped.  As addressed above, any advantage Fesenmaier gained in his bankruptcy proceedings has been relinquished by virtue of the reopening and settlement of the bankruptcy case.  Indeed, the Trustee attests in his declaration that there has been no prejudice to the creditors or the bankruptcy

14

estate. Notably, because Defendants in this case were not creditors or otherwise involved in Fesenmaier's bankruptcy proceedings, Fesenmaier gained no advantage to Defendants' detriment in those proceedings. *See id.* (rejecting application of judicial estoppel when the defendants in the second case were not creditors in the prior bankruptcy proceedings). In addition, Defendants have not identified an unfair advantage Fesenmaier will gain in this case, or an unfair detriment Defendants will suffer in this case, if Fesenmaier is not judicially estopped from asserting his FCA claim. The fact that Defendants will have to defend themselves against a potentially valid claim, although advantageous to Fesenmaier and detrimental to Defendants, does not amount to an *unfair* advantage or detriment. *See, e.g.*, *In re Knight-Celotex, LLC*, 695 F.3d 714, 724 (7th Cir. 2012) (rejecting application of judicial estoppel because it is not unfair to require a defendant to defend against potentially valid claims). This factor also weighs against applying judicial estoppel.

Judicial estoppel generally is not warranted when the debtor's prior inconsistent position was taken because of a good-faith mistake or inadvertence, as opposed to a deliberate scheme to manipulate or mislead the court. *Stallings*, 447 F.3d at 1049. Defendants provide no basis for finding bad faith or intent other than by inference. But in *Stallings*, the Eighth Circuit expressly rejected adopting a "rule that the requisite intent for judicial estoppel can be inferred from the mere fact of nondisclosure in a bankruptcy proceeding." *Id.* (internal quotation marks omitted). Courts must evaluate the specific facts of the case instead. *Id.* Here, for several reasons, the record belies Defendants' suggestion that Fesenmaier's nondisclosure of FCA claims in the bankruptcy proceedings

15

was intentional, let alone that it was part of a deliberate scheme to manipulate or mislead the bankruptcy court. Fesenmaier attests in a signed declaration that he did not know that he was required to disclose potential FCA claims in his bankruptcy proceedings. In doing so, he provides a detailed explanation as to why he held such a belief, including the diligent steps that he and his wife took when preparing their bankruptcy disclosures. Fesenmaier also attests—and the record undisputedly reflects—that Fesenmaier took steps to remedy any possible mistake he had made soon after becoming aware of it. Those steps included hiring a new bankruptcy attorney, reopening the bankruptcy proceedings, disclosing the FCA claims, and entering a settlement agreement with the Trustee that included repaying all of the previously discharged debt with interest. Based on the specific facts of this case, Defendants have not established that Fesenmaier acted in bad faith when he did not initially disclose FCA claims during his bankruptcy proceedings.

The Court is mindful of Defendants' contention that Fesenmaier's "eleventh-hour candor does not prevent the application of judicial estoppel." The Eighth Circuit has recognized that judicial estoppel *may* be applied even if a debtor later reopens bankruptcy proceedings to disclose a previously undisclosed claim. *See Jones v. Bob Evans Farms, Inc.*, 811 F.3d 1030, 1033–34 (8th Cir. 2016). Application of judicial estoppel in such circumstances, however, is not *required*. *Id.* at 1032 (acknowledging that application of judicial estoppel is within the district court's discretion). Moreover, *Jones* is factually inapposite in several material respects. First, the bankruptcy court had discharged nearly $150,000 of the debtor's unsecured debts in *Jones* and, although the debtor later amended

16

his disclosures, there is no indication that he repaid the discharged debt as Fesenmaier has done here. *Id*. at 1031–34. Second, it was undisputed in *Jones* that the debtor had knowledge of his undisclosed claims, as he had received a right-to-sue letter from the Equal Employment Opportunity Commission, and the record demonstrated that the debtor knew that he had an obligation to disclose such claims. *Id*. at 1034. Based on the specific circumstances presented in *Jones*, the Eighth Circuit concluded that the district court had not abused its discretion by finding that the debtor intentionally failed to disclose his claims to the bankruptcy court. *Id*. However, because those circumstances are materially different from the circumstances presented here, *Jones* is inapposite.

In summary, three of the four relevant factors weigh against applying judicial estoppel. And the record demonstrates that Fesenmaier's prior inconsistent position was a good-faith mistake—not a deliberate scheme to mislead the bankruptcy court. Accordingly, applying judicial estoppel in this case is not warranted. Defendants' motion for summary judgment on this alternative basis is denied.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' motion for summary judgment as to Relator Kipp Fesenmaier, (Dkt. 425), is **DENIED**.

Dated: August 4, 2020                               s/Wilhelmina M. Wright
                                                    Wilhelmina M. Wright
                                                    United States District Judge