## UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America *ex rel.* Kipp Fesenmaier, | Case No. 13-cv-3003 (WMW/DTS) |
| Plaintiffs, | |
| | **ORDER ON MOTIONS IN LIMINE** |
| v. | |
| The Cameron-Ehlen Group, Inc., *doing business as* Precision Lens, and Paul Ehlen, | |
| Defendants. | |

This matter is before the Court on four motions in limine filed by Plaintiff United States of America, (Dkt. 748), three motions in limine filed by Relator Kipp Fesenmaier, (Dkts. 758, 764, 769), four motions in limine filed by Defendant The Cameron-Ehlen Group, Inc., *doing business as* Precision Lens (Precision Lens), (Dkts. 742, 744, 746, 759), and three motions in limine filed by Defendant Paul Ehlen, (Dkts. 763, 768, 773). For the reasons addressed below, the parties' motions are granted in part and denied in part.

## BACKGROUND

Precision Lens is a distributor of intraocular lenses and other products related to ophthalmic surgeries. Precision Lens provides ophthalmic supplies and equipment to ophthalmologists and facilities for use in ophthalmology procedures, including cataract surgeries. Ehlen is the founder and majority owner of Precision Lens.[1] Relator Kipp Fesenmaier worked for Sightpath Medical, Inc. (Sightpath), a corporate partner of

---

[1]     Precision Lens and Ehlen are referred to collectively as Defendants.

Precision Lens, for approximately 15 years, including several years as a vice president of Sightpath.

Fesenmaier filed a qui tam complaint in November 2013 against Precision Lens, Ehlen, Sightpath, TLC Vision Corporation and various other individuals and entities.[2] Plaintiff United States of America filed an intervenor complaint against Precision Lens and Ehlen in February 2018.[3]  The intervenor complaint alleges that Precision Lens and Ehlen offered unlawful kickbacks to physicians in order to obtain and retain their business, and that, as a result of those kickbacks, false and fraudulent claims for payment were made to federal health care programs, including Medicare, in violation of the False Claims Act (FCA), 31 U.S.C. § 3729(a)(1), (a)(2).[4]   The parties now move for an order admitting or excluding certain evidence at trial.

## ANALYSIS

## I.      The Parties' Letters Regarding *United States ex rel Cairns v. D.S. Medical LLC*

Before addressing the parties' motions in limine, the Court first addresses the impact of the recent United States Court of Appeals for the Eighth Circuit decision in *United States*

---

[2]      The Court subsequently dismissed Fesenmaier's claims against Sightpath and TLC Vision Corporation based on those parties' stipulation for dismissal pursuant to a settlement agreement.

[3]      Fesenmaier and the United States are referred to collectively as Plaintiffs.

[4]      In an October 22, 2018 Order, the Court granted Defendants' motion to dismiss Plaintiffs' common-law claims for unjust enrichment and payment by mistake but denied Defendants' motion to dismiss Plaintiffs' FCA claims.

*ex rel. Cairns v. D.S. Medical LLC*, 42 F.4th 828 (2022), discussed in the parties' August 2022 letters to the Court.

The FCA imposes liability on anyone who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the United States. *United States ex rel. Strubbe v. Crawford Cnty. Mem'l Hosp.*, 915 F.3d 1158, 1163 (8th Cir. 2019) (quoting 31 U.S.C. § 3729(a)(1)(A)). "The FCA attaches liability, not to the underlying fraudulent activity, but to the claim for payment." *Id.* (quoting *Olson v. Fairview Health Servs. Of Minn.*, 831 F.3d 1063, 1070 (8th Cir. 2016)). The three elements of an FCA claim are (1) the defendant presented, or caused to be presented, a claim for payment to the United States; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent. *Olson*, 831 F.3d at 1070; *see also* 31 U.S.C. § 3729(a)(1)(A). FCA liability can be predicated on a number of fraudulent practices, including violations of the Anti-Kickback Statute (AKS), 42 U.S.C. § 1320a-7b(b). *See, e.g.*, *United States ex rel. Kosenske v. Carlisle HMA, Inc.*, 554 F.3d 88, 94 (3d Cir. 2009) (holding that falsely certifying compliance with the AKS is a sufficient predicate for a claim under the FCA).

Before 2010, parties regularly brought FCA cases premised on AKS violations under a material-falsity theory, namely that FCA claims premised on AKS violations are false or fraudulent because they seek payment for services that are not payable by Medicare because they violate a material condition of reimbursement. *See, e.g.*, *McNutt ex rel. United States v. Haleyville Med. Supplies, Inc.*, 423 F.3d 1256, 1260 (11th Cir. 2005) (permitting FCA claims premised on AKS violations because "compliance with the [AKS] is necessary for reimbursement under the Medicare program"); *United States ex rel. Pogue*

*v. Diabetes Treatment Ctrs. Of Am.*, 565 F. Supp. 2d 153, 159 (D.D.C. 2008) (holding that AKS violations can be pursued under the FCA, because "they would influence the Government's decision of whether to reimburse Medicare claims."). Under these pre-2010 cases, therefore, plaintiffs could establish liability under the FCA by demonstrating that the AKS was violated, and that this violation was a material condition of the government's payment of a claim. *See, e.g.*, *U.S. ex rel. Bidani v. Lewis*, 264 F. Supp. 2d 612, 614 (N.D. Ill. 2003) (explaining that to succeed on an FCA claim, the plaintiff "must show that the alleged AKS violation was material to the government's treatment of defendants' Medicare claims.")

Congress subsequently amended the AKS in 2010. 42 U.S.C. § 1320a-7b(g) (2010 Amendment); *see* 155 Cong. Rec. S10852, S10853–54 (daily ed. Oct. 28, 2009) (Sen. Kaufman). The 2010 Amendment obviated the need to plead that compliance with the AKS was material to the government's decision to pay any specific claims in an FCA case. *See, e.g.*, *Guilfoile v. Shields*, 913 F.3d 178, 190 (1st Cir. 2019).

Prior to the Eighth Circuit's decision in *Cairns*, this Court issued its January 12, 2021 Order addressing the parties' cross-motions for summary judgment and *Daubert* motions. *United States ex rel. Fesenmaier v. Cameron-Ehlen Grp., Inc.*, No. 13-cv-3003 (WMW/DTS), 2021 WL 101193 (D. Minn. Jan. 12, 2021). In that Order, this Court rejected the but-for causation standard advanced by the Defendants for FCA claims premised on a violation of the AKS. *Id.* at *10–11. Instead, this Court concluded that there need only be "some record evidence that shows a link between the alleged kickbacks and

the medical care received." *Id.* at *11 (quoting *United States ex rel. Greenfield v. Medco Health Sols., Inc.*, 880 F.3d 89, 100 (3d Cir. 2018)).

In *Cairns*, the Eighth Circuit found that but-for causation is required for FCA claims predicated on the 2010 Amendment. 42 F.4th at 836 ("[W]hen a plaintiff seeks to establish falsity or fraud through the 2010 [A]mendment, it must prove that a defendant would not have included particular 'items or services' but for the illegal kickbacks.") In reaching its holding, the Eighth Circuit relied upon the text of the 2010 Amendment, which states that a claim that "includes items or services *resulting from*" a violation of the AKS constitutes a false or fraudulent claim for purposes of the FCA. 42 F.4th at 833–85 (citing 42 U.S.C. § 1320a-7b(g)). Because the Eighth Circuit determined that the phrase "resulting from" was "unambiguously causal", it rejected the government's theory that any failure to disclose an anti-kickback violation, regardless of the relationship between the illegal kickbacks and the items or services included, was sufficient to support an FCA claim. *Id.* at 836. Therefore, in accordance with the Eighth Circuit's holding in *Cairns*, this Court now applies the but-for causation standard for FCA claims brought under the 2010 Amendment. This conclusion does not, however, end the Court's inquiry as to the effect of *Cairns* on this case.

The parties dispute whether *Cairns* requires Plaintiffs to prove but-for causation for their alternative theory—the material-falsity theory—both for claims that pre-date the 2010 Amendment and claims that were made after the 2010 Amendment went into effect. Although Plaintiffs previously relied on both the 2010 Amendment *and* the material-falsity theory in this case, Plaintiffs represent to the Court in pre-trial and motions-in-limine

briefing that, in the wake of *Cairns*, Plaintiffs now seek to prove their case solely under a material-falsity theory. Therefore, the Court must decide whether *Cairns* forecloses a material-falsity theory for FCA claims premised on AKS violations absent evidence of but-for causation. For the reasons set forth below, the Court does not read *Cairns* as requiring the Plaintiffs to prove but-for causation under a material-falsity theory.

First, nothing in the text of the 2010 Amendment indicates that it was intended to supplant or overrule existing case law that allowed parties to pursue an FCA claim based on a violation of the AKS when that party could demonstrate that the AKS violation was materially false. *See generally* 42 U.S.C. § 1320a-7b(g). Indeed, the Eighth Circuit in *Cairns* indicated that the 2010 Amendment was *not* meant to codify the pre-2010 FCA cases. *See* 42 F.4th at 836 (rejecting the government's argument that the 2010 Amendment codified earlier court holdings and explaining that "[i]f Congress wanted to 'codify' the pre-2010 cases, it could have selected different language."). Absent the Eighth Circuit's express indication to the contrary, which *Cairns* lacks, this Court is guided by existing precedent.

Second, although Defendants urge this Court to extend *Cairns* to find that but-for causation is required in *all* FCA claims predicated on an AKS violation, *Cairns* explicitly limits its holding to only cases brought pursuant to the 2010 Amendment. Specifically, *Cairns* recognizes that there are several ways to establish FCA liability and holds that but-for causation is only required "when a plaintiff seeks to establish falsity or fraud **through the 2010 amendment**." *Id.* at 831, 836–37 (emphasis added). Moreover, the Eighth Circuit emphasizes that its ruling in *Cairns* is "narrow." *Id.* at 836. Indeed, *Cairns* "do[es]

6

not suggest that every case arising under the [FCA] requires a showing of but-for causation." *Id*.

Therefore, if Plaintiffs can establish all the elements of their material falsity theory without reliance on the 2010 Amendment—including that the purported AKS violations were material—Plaintiffs need not prove but-for causation to establish liability under the FCA. With this application of *Cairns* in mind, the Court addresses the parties' motions in limine.

## II. United States' Motions in Limine

The United States moves for (1) the exclusion of evidence pertaining to surgical supplies and the value of services, (2) clarification pertaining to the Court's prior orders, (3) permission to ask leading questions of certain adverse witnesses and (4) the exclusion of evidence pertaining to the government's investigation and the Court's imposition of discovery sanctions against Plaintiffs. The Court addresses each motion in turn.

### A. Evidence Pertaining to Surgical Supplies and the Value of Services

The United States asks the Court to conclude as a matter of law that the proper measure of damages in this case is the full amount the government paid for each false claim. In addition, the United States seeks to exclude evidence or argument about the cost of surgical supplies or the value of medical services as irrelevant.

#### 1. Measure of Damages

The parties dispute the proper measure of damages in this case. The United States asserts that the proper measure of damages in an FCA case is the full amount of each claim. Defendants counter that common law principles apply to the FCA, and the proper measure

of damages is the amount paid due to the false claim minus the amount that would have been paid had the claim been truthful.

The measure of damages under the FCA is "[three] times the amount of damages which the Government sustains because of the act of that person" in addition to a civil penalty.   31 U.S.C. § 3729(a)(1).   Although the FCA does not provide a method of calculating damages, courts addressing damages calculations in FCA cases premised on AKS violations have routinely held that the proper measure of damages is the full amount paid for any false claims.   *See, e.g.*, *United States v. Teva Pharm. USA, Inc.*, No. 20-11548-NMG, 2022 WL 6820648, at *4 (D. Mass. Oct. 11, 2022) (concluding that damages "in an FCA case predicated on the AKS are equal to the full value of the kickback-tainted claim"); *United States v. Novak*, No. 17 C 4887, 2018 WL 4205540, at *4 (N.D. Ill. Sept. 4, 2018) (concluding that "a fraud that conceals an individual's ineligibility to receive government spending intended for the benefit of third parties entitles the government to the full amount of the falsely-obtained payments"); *United States v. Rogan*, 517 F.3d 449, 453 (7th Cir. 2008).

Defendants raise three arguments in opposition to Plaintiffs' proposed damages theory.

First, Defendants claim that the text of the FCA permits Plaintiffs to recover only actual damages, measured as the amount paid due to the false claim minus the amount that would have been paid had the claim been truthful.   The text of the FCA provides that the Government can recover up to three times "the damages the government sustains **because of** the [defendant's] act."   31 U.S.C. § 3729(a)(1) (emphasis added).   But in an FCA case

8

premised on an AKS violation, the damages sustained "because of" the defendants are the full value of the claim as AKS compliance is a condition of the government's payment of the claim in full. *See Rogan*, 517 F.3d at 453. Here, because Defendants purportedly violated the AKS, the United States paid a claim that it would otherwise have no obligation to pay. The text of the FCA, therefore, does not support the measure of damages proposed by Defendants.

Second, Defendants assert that long-standing Eighth Circuit precedent provides that, in a FCA case, the "Government should be allowed to recover only the damages that it actually suffered after having entered into a transaction." *United States v. Coop. Grain & Supply Co.*, 476 F.2d 47, 63 (8th Cir. 1973). The Eighth Circuit held in *Cooperative Grain* that the "measure of the government's damages would be the amount that it paid out by reason of the false statements over and above what it would have paid if the claims had been truthful." *Id.* at 62 (citing *United States v. Woodbury*, 359 F.2d 370, 379 (9th Cir. 1966)). But because *Cooperative Grain* was not decided in the context of AKS violations, its holding is not implicated here. Moreover, in an FCA case predicated on AKS violations, recovery is premised on the fact that the government would not have paid any amount if the claim had been truthful. *See Rogan*, 517 F.3d at 453; *see also Teva*, 2022 WL 6820648, at *4; *Novak*, 2018 WL 4205540, at *4. Indeed, when considering an FCA claim premised on an AKS violation, at least one other district court in the Eighth Circuit rejected the benefit-of-the-bargain standard articulated in *Cooperative Grain*. *See United States ex rel. Health Dimensions Rehab., Inc. v. RehabCare Grp., Inc.*, No. 4:12CV00848 AGF, 2013 WL 5340910, at *4 (E.D. Mo. Sept. 23, 2013). Instead, *RehabCare* concludes that that the

proper measure of damages in an FCA case predicated on an AKS violation is "the full amount of each tainted claim rather than the amount the United States would have paid had Defendants not engaged in kickbacks." *Id.* The Court, therefore, does not conclude that *Cooperative Grain* mandates the benefit-of-the-bargain theory of damages advanced by Defendants.

Third, Defendants argue that *United States v. Rogan* is inapposite because *Rogan* involved violations of the Stark Act, rather than the AKS. Because the Stark Act includes statutory provisions that forbid any payment for claims billed in violation of the Stark Act and require a full refund of such payments, Defendants argue, *Rogan* is distinguishable from an FCA claim predicated on an AKS violation. But Defendants fail to address a critical distinction. *Rogan* includes FCA claims predicated on violations of *both* the AKS and the Stark Act. 517 F.3d at 541–52 (noting that the theory of the case is that the patient referrals "violated the Stark Amendment to the Medicare Act, 42 U.S.C. § 1395nn, *and* the Anti-Kickback Act, 42 U.S.C. § 1320a-7b") (emphasis added). Moreover, the relevant holding in *Rogan* is not predicated on the Stark Act provisions on which Defendants rely. Instead, the holding relies on the rationale that when the government offers a subsidiary with conditions, those conditions must be met for any payment to be due. *Id.* at 453. If the conditions are not met, the entire payment is recoverable. This is so, even if the patients received all of the care reflected in the claims form, because claimants cannot "keep money obtained from the Treasury by false pretenses." *Id.* And, as to an FCA case predicated on an AKS violation, neither party disputes that AKS compliance is a condition precedent for

government reimbursement of a claim.  Therefore, the Court rejects Defendants' arguments that *Rogan* does not apply in an FCA cases premised on an AKS violation.

For these reasons, the Court finds that the appropriate measure of damages is the full amount the government paid for each fraudulent claim.  Therefore, the Court grants the United States' motion in limine as to the appropriate measure of damages.

> ### 2.      Relevance of the Cost of Surgical Supplies and the Value of Services

The United States argues that evidence or arguments pertaining to the cost of intraocular lenses (IOLs) and the value of the services provided by the ophthalmologists are irrelevant and should be excluded under Rules 401 and 403 of the Federal Rules of Evidence.  Defendants contend, in response, that evidence relating to the cost of surgical supplies and the value of services is relevant as to several issues at trial, including Plaintiffs' burden to establish that the alleged false claims included the items "resulting from" the alleged kickbacks and Defendants' wrongful intent.

Only relevant evidence is admissible.  Fed. R. Evid. 402.  Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."  Fed. R. Evid. 401. A district court may exclude relevant evidence, however, if the probative value of the evidence is substantially outweighed by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

In light of the Court's earlier determination that the proper measure of damages is the full amount the government paid for each fraudulent claim, the Court concludes that evidence pertaining to the cost of surgical supplies is irrelevant and inadmissible to prove damages at trial. Plaintiffs and Defendants may present evidence about whether particular surgeries for which claims were submitted included Defendants' IOLs. The parties are also permitted to introduce evidence as to the costs of surgical supplies that pertains to non-damages issues, such as the Defendant's intent. But the costs of IOLs makes no fact in the case more or less likely with respect to damages. Fed. R. Evid. 401. Therefore, evidence as to the cost of surgical supplies is excluded as irrelevant as to the measure of damages.

The same rationale applies to the value of services, including the facility fee claims and professional fee claims. Because the appropriate measure of damages is the full value paid for each fraudulent claim, Medicare's division of claims into facility fees and professional fees is irrelevant to the question of damages. *See United States ex rel. Hutcheson v. Blackstone Med., Inc.*, 647 F.3d 377, 394 (1st Cir. 2011) (explaining that "the fact that the physician claims sought payment for services rather than devices" does not "render the fact that the physicians accepted kickbacks irrelevant"). As to the question of damages, the Court finds that both the facility-fee claims and the professional-fee claims are recoverable.

Accordingly, the Court grants the United States' motion in limine to exclude evidence concerning the costs of surgical supplies and the value of services, subject to the limitations described above.

## B.      Clarification of Prior Orders

The United States seeks guidance from this Court as to the scope of two prior sanctions imposed by the magistrate judge during discovery.  The first sanction pertains to medical-necessity evidence and the second sanction pertains to the untimely identification of false claims.  The scope of each sanction is addressed in turn.

### 1.      Medical-Necessity Sanction

During discovery, the magistrate judge issued a sanction precluding Plaintiffs from "introducing evidence, beyond what the Government testified to during its organizational depositions, . . . [t]hat the claims submitted to CMS were false because the services were not medically necessary."  Plaintiffs seek to confirm that this sanction applies only to preclude references that the underlying medical procedure would have been performed regardless of whether kickbacks were paid.  In particular, Plaintiffs seek to introduce evidence pertaining to the physicians' choice of IOLs and viscoelastic brands, as well as the physicians' use of premium lenses versus standard lenses.  Defendants agree that evidence pertaining to the physicians' choice of IOLs should be permitted under the sanction.  But in light of the sanction, Defendants dispute the admissibility of evidence pertaining to the physician's choice of premium lenses versus standard lenses.  Defendants further assert that evidence pertaining to a physician's choice of premium lenses versus standard lens is inadmissible because such evidence is irrelevant and unfairly prejudicial.

Only relevant evidence is admissible.  Fed. R. Evid. 402.  Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."  Fed. R. Evid. 401. A district

court may exclude relevant evidence, however, if the probative value of the evidence is substantially outweighed by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The Court concludes, and the parties do not dispute, that evidence pertaining to a physician's choice of brand for lenses and viscoelastics is admissible. The discovery sanction, therefore, does not extend to such evidence.

The discovery sanction does bar the introduction of evidence about the physicians' choice of premium lenses over standard lenses, however. Plaintiffs assert that they may explore "whether a physician used a more profitable premium lens . . . when a standard lens . . . may also have been adequate." But the question of whether a premium lens was used when a standard lens would suffice directly implicates the medical necessity of the premium lenses. And Plaintiffs do not identify any other reasons to introduce such evidence that do not implicate whether the use of premium lenses was medically necessary. Because the discovery sanction precludes such medical necessity evidence,[5] the Court will not admit evidence pertaining to a physician's choice between premium lenses and standard lenses at trial.

Accordingly, this portion of the United States' motion in limine is granted in part and denied in part.

---

[5] Because the Court excludes evidence of whether premium or standard lenses were used under the medical necessity sanction, the Court declines to address Defendants' arguments under Rules 401 and 403 of the Federal Rules of Evidence.

## 2.      Claims-Identification Sanction

The parties also dispute the scope of the claims-identification sanction, which precludes Plaintiffs "from introducing evidence regarding any alleged false claims or alleged kickbacks identified after November 7, 2019."  Plaintiffs assert that they are permitted to introduce evidence of other items of value provided by Defendants to physicians that were disclosed during fact discovery, but for which the government is not seeking to recover associated false claims.  In response, Defendants contend that Plaintiffs are attempting to conduct a trial by ambush by introducing evidence of kickbacks that were not identified in discovery.

Here, the claims-identification sanction is limited to "alleged false claims or alleged kickbacks" rather than alleged items of value more broadly.  The plain language of the sanction does not support a reading of the claims-identification sanction as a *per se* restriction that prevents Plaintiffs from introducing such evidence either to rebut Defendants' evidence or to provide needed context for the jury.  However, it is *not* the Court's ruling that evidence pertaining to all items of value that are not identified as kickbacks in Plaintiffs November 9, 2019 disclosure are *per se* admissible either.  As particular evidentiary challenges arise at trial, the court will apply both the Federal Rules of Evidence and the applicable discovery sanctions.  The Court declines to rule on the admissibility of hypothetical, unspecified evidence.  Accordingly, this aspect of the United States' motion in limine is denied without prejudice.

### C.       Permission to Ask Leading Questions

The parties dispute whether Plaintiffs are permitted to ask leading questions of three categories of witnesses:  (1) current Precision Lens employees; (2) former Precision Lens employees and independent contractors; and (3) physicians alleged to have received kickbacks.  The parties also disagree about whether Defendants should be precluded during cross-examination from asking leading questions of these same groups of witnesses.

Leading questions ordinally are impermissible on direct examination.  *United States v. Farlee*, 757 F.3d 810, 822 (8th Cir. 2014).  But Rule 611(c), Fed. R. Evid., permits a directing party to use leading questions when necessary to develop a witness's testimony.  *Id.*  There are three circumstances in which district courts may find leading questions necessary on direct examination when:  (1) the witness is hostile, (2) the witness is an adverse party, or (3) the witness identifies with an adverse party.  Fed. R. Evid. 611(c).  Because the trial court is well positioned to evaluate the necessity of leading questions, a trial court's decision to allow leading questions on direct examination will be reversed only if it is an abuse of discretion.  *See United States v. Stelivan*, 125 F.3d 603, 608 (8th Cir. 1997).

Here, Plaintiffs seek to ask leading questions of current employees, former employees and independent contractors and physicians who allegedly received kickbacks.  Courts have regularly held that current employees of an opposing party constitute witnesses "identified with an adverse party."  *See, e.g.*, *Haney v. Mizell Mem'l Hosp.*, 744 F.2d 1467, 1478 (11th Cir. 1984); *Perkins v. Volkswagon of Am., Inc.*, 596 F.2d 681, 682 (5th Cir. 1979).  This Court reaches the same conclusion here.  Because the Court finds that current

Precision Lens employees are "identified with" Precision Lens itself, Fed. R. Civ. P. 611(c), Plaintiffs may ask leading questions of current Precision Lens employees on direct examination. *Id.* Also, because the "roles of the parties are reversed" when a witness identified with an adverse party testifies, Defendants should ask its employees non-leading questions on cross-examination. *See Alpha Display Paging, Inc. v. Motorola Comm'ns & Elecs., Inc.*, 867 F.2d 1168, 1171 (8th Cir. 1989).

A ruling as to whether Plaintiffs may ask leading questions of former Precision Lens employees, independent contractors and physicians alleged to received kickbacks is premature, however. *See, e.g.*, *Wiggins v. City of Montgomery*, No. 2:17-CV-425-KFP, 2020 WL 13015933, at *1 (M.D. Ala. Dec. 23, 2020) (finding it premature to issue a carte blanche ruling allowing plaintiff to lead six witnesses whom plaintiff claimed where aligned with defendant); *Jackson v. City of White Plains*, No. 05-CV-0491 (NSR), 2016 WL 234855, at *7 (S.D.N.Y. Jan. 19, 2016) ("Rather than rule now, with the benefit of observing each witness' testimony at trial, the Court will permit Plaintiff to renew his application each time a witness testifies"). If Plaintiffs believe that the use of leading questions on direct examination is warranted for a particular witness, Plaintiffs may make a motion to the Court at the time of the witness's testimony. The Court will assess whether the individual witness qualifies under Rule 611(c). Accordingly, the United States' motion in limine is granted in part and denied in part.

**D.    Evidence Pertaining to the Government's Investigation and Discovery Sanctions**

The United States seeks to bar Defendants from presenting any evidence or arguments related to the quality or bias of the government's investigation and the Court's prior discovery sanctions against the United States.  Defendants do not dispute that evidence of the Court's discovery sanctions should be inadmissible.  But Defendants ask that the Court apply its ruling on discovery sanctions equally to both parties.  Defendants oppose the United States' motion to exclude evidence or argument related to the quality or bias of the government's investigation.  The Court addresses each portion of this motion in turn.

**1.    Discovery Sanctions**

The Court first addresses the motion to exclude evidence of the Court's discovery sanctions.

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."  Fed. R. Evid. 401. A district court may exclude relevant evidence, however, if the probative value of the evidence is substantially outweighed by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  In circumstances similar to those presented here, district courts have excluded references to prior discovery sanctions at trial.  *See Fluor Corp. v. Zurich Am. Ins. Co.*, No. 4:16CV00429 ERW, 2021

WL 3021973, at *5–6 (E.D. Mo. July 16, 2021); *Beving v. Union Pac. R.R. Co.*, No. 3:18-cv-00040, 2020 WL 6051598, at *11 (S.D. Iowa Sept. 8, 2020).

As Defendants do not oppose the exclusion of evidence of the Court's discovery sanctions, Plaintiffs' motion in limine is granted as to the discovery sanctions. This holding applies equally to both parties.

### 2.      Quality or Bias of the Government's Investigation

The parties dispute whether, pursuant to Rules 401 and 403, Fed. R. Evid., the Court should bar Defendants from presenting any evidence or argument related to the quality or bias of the Government's investigation. The United States identifies three categories of evidence it seeks to exclude: (1) evidence from a Department of Health and Human Services Office of Inspector General (HHS-OIG) hotline, (2) recordings made by Fesenmaier and (3) other unspecified evidence that goes to "the quality, scope or motive for the government's investigation."

Only relevant evidence is admissible. Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. A district court may exclude relevant evidence, however, if the probative value of the evidence is substantially outweighed by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The Court first considers whether the HHS-OIG hotline evidence is admissible at trial. Defendants assert that the HHS-OIG hotline evidence is admissible to show that the

United States was aware of Fesenmaier's allegations against the Defendants as early as 2010.  Yet with knowledge of Defendants' purported misconduct in violation of the AKS, Defendants argue, the United States continued paying the claims, which demonstrates that the United States did not view such violations as material.  *See Universal Health Servs., Inc. v. United States ex rels. Escobar & Correa*, 579 U.S. 176, 195 (2016) ("[I]f the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material.")

As described above, Plaintiffs have chosen to pursue a material-falsity theory at trial, rather than a theory of liability premised on the 2010 Amendment to the AKS.  Under the material-falsity theory, Plaintiffs must establish that the AKS violations are "material" to the government's payment of claims to prove their case.  *See, e.g.*, *Bidani*, 264 F. Supp. 2d at 614 (explaining that to succeed on an FCA claim, the plaintiff "must show that the alleged AKS violation was material to the government's treatment of defendants' Medicare claims.")  Because proving materiality is an essential element of Plaintiffs' case under their chosen theory, and the purported knowledge of the Government is relevant to the question of materiality, the Court finds that the HHS-OIG hotline evidence is relevant and probative. Subject to Defendants satisfying the other requirements of the Rules of Evidence, such as authenticity and hearsay, the Court will admit such evidence.  Therefore, the Court denies the United States' motion in limine as to the HHS-OIG hotline evidence.

Next, the United States seeks to exclude recordings made by Fesenmaier as part of the government's investigation.  Defendants contend that such recordings are relevant and

admissible because the recordings were produced in discovery, contain statements made by a party-opponent and include statements by Defendant Ehlen that reflect his state of mind during the period from 2012 to 2014.

The Court lacks sufficient information to rule on the admissibility of Fesenmaier's recordings as a whole prior to trial.  While the Court agrees that statements made by Fesenmaier are subject to the party-opponent exception to hearsay, *see* Fed. R. Evid. 801(d)(2)(A), the applicability of Fed. R. Evid. 803(3) is limited to those statements that reflect Ehlen's "then-existing state of mind (such as motive, intent, or plan)." Fed. R. Evid. 803(3).  Without specific statements to consider, the Court cannot assess whether Rule 803(3) is satisfied or whether the statements are sufficiently probative to the issues before the jury to merit admission.  Therefore, the Court declines to rule on the admissibility of such evidence in this Order.  At trial, any party seeking to introduce portions of the recordings must identify the specific portions of the recordings the party seeks to introduce and why such excerpts are relevant and otherwise admissible under the Rules of Evidence. Accordingly, this aspect of the United States' motion in limine is denied without prejudice.

The same rationale applies to the Government's request to exclude other unspecified evidence that goes to the quality, scope or motive for the government's investigation. Although the Court will apply the Federal Rules of Evidence and will not permit irrelevant evidence at trial, the Court declines to rule on the admissibility of hypothetical, unspecified evidence.  This aspect of the United States' motion in limine is, therefore, denied without prejudice.

### III.  Fesenmaier's Motions in Limine

Fesenmaier moves to exclude references to (1) his prior bankruptcy, (2) Defendants' potential financial harm and (3) mandatory monetary entitlements under the FCA.  The Court addresses each motion in turn.

### A.  Fesenmaier's Prior Bankruptcy

Fesenmaier moves to exclude evidence relating to his prior bankruptcy and his finances in relation to the bankruptcy as irrelevant and unfairly prejudicial.  Fed. R. Evid. 401, 403.  Defendants respond that evidence of Fesenmaier's bankruptcy is probative of his character for truthfulness or untruthfulness as Fesenmaier failed to disclose his FCA claims against Defendants when he filed for bankruptcy.

Only relevant evidence is admissible.  Fed. R. Evid. 402.  Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."  Fed. R. Evid. 401. A district court may exclude relevant evidence, however, if the probative value of the evidence is substantially outweighed by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

Rule 608(b) permits a party, on cross-examination, to question a witness on a specific instance of conduct that is probative of a witness's character for truthfulness or

untruthfulness.   Fed. R. Evid. 608(b). [6]   In determining the proper scope of cross-examination under Rule 608(b), courts attempt to balance "each question's relevance to honesty and veracity with its prejudicial impact." *United States v. Daniele*, 886 F.2d 1046, 1054 (8th Cir. 1989).

There is little doubt that evidence of a prior bankruptcy is prejudicial.  But the question before the Court is whether the risk of such prejudice "substantially outweigh[s]" the probative value of the information.  Fed. R. Evid. 403.  The undisputed facts before the Court reveal that Fesenmaier failed to disclose legally required information *about his financial interest in this case* in his bankruptcy filings and did not correct these misstatements until years later when the Defendants challenged his failure to do so. Because Fesenmaier's misstatements directly relate to his financial interest in this case and his character for untruthfulness, the Court finds that the probative nature of his omissions in the bankruptcy filings substantially outweighs any prejudicial impact to Fesenmaier.  *See United States v. Ruzicka*, No. 16-246 (JRT/FLN), 2018 WL 401188, at *2 (D. Minn. Jan. 12, 2018) (allowing party to present evidence that opposing party misreported his income taxes); *In re Peanut Farmers Antitrust Litig.*, No. 2:19cv463, 2021 WL 1140917, at *2 (E.D. Va. Feb. 23, 2021) (explaining that Rule 608 authorizes inquiry into instances of misconduct that are clearly probative of truthfulness or untruthfulness, such as perjury, fraud, swindling, forgery, bribery and embezzlement).

---

[6]   Because Rule 608(b) is specifically limited to cross-examination, evidence of Fesenmaier's misstatements in his bankruptcy filings will be admitted only if Fesenmaier testifies.

However, given the legitimate issues as to relevance and the potential for unfair prejudice that are presented by an unfettered presentation of Fessenmaier's financial misfortunes, the Court excludes references to Fesenmaier's bankruptcy that are unrelated to his misstatements pertaining to his financial interest in this case.   Defendants are cautioned that while a "cross-examiner may inquire into specific incidents of conduct" the questioner "does so at the peril of not being able to rebut the witness' denials" because extrinsic evidence may not be admitted under Rule 608(b).  *In re Peanut Farmers Antitrust Litig.*, 2021 WL 1140917, at *2.   The parties are also permitted to submit limiting instructions for the Court's consideration.  *See United States v. Walker*, 470 F.3d 1271, 1275 (8th Cir. 2006) (explaining that a limiting instruction diminishes the danger of unfair prejudice arising from the introduction of evidence).  For these reasons, the Court grants in part and denies in part Fesenmaier's motion in limine as addressed herein.

### B.      Defendants' Potential Financial Harm

Fesenmaier seeks to preclude Defendants from arguing, mentioning or presenting evidence that Defendants would be financially harmed by a judgment against them in this case.  Defendants represent that they do not intend to introduce present-day evidence pertaining to their ability to satisfy a judgment or the post-judgment impacts of an unfavorable verdict.  However, Defendants contend that their belief and understanding about the potential consequences of violating the FCA and AKS between 2006 to 2015 is relevant and admissible.

Only relevant evidence is admissible.  Fed. R. Evid. 402.  Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence"

and "the fact is of consequence in determining the action."  Fed. R. Evid. 401. A district court may exclude relevant evidence, however, if the probative value of the evidence is substantially outweighed by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

The Court concludes, and the parties agree, that evidence pertaining to Defendants' present-day ability to satisfy a judgment is irrelevant.  Therefore, the Court excludes such evidence.

However, evidence of Defendants' understanding of the potential consequences of violating the FCA and AKS between 2006 to 2015 may be relevant as to whether Defendants engaged in the purported kickback scheme.  Notably, Fesenmaier's motion pertains to Defendants' ability to "satisfy a judgment in favor of Plaintiffs," rather than Defendants' knowledge of FCA and AKS penalties during the relevant time period.  To the extent Plaintiffs have specific objections to the introduction of Defendants' contemporaneous knowledge of the consequences of violating the FCA and AKS, such objections will be addressed by the Court at trial.  *See Farmer v. State Farm Fire & Cas. Co.*, No. 17-4309, 2022 WL 741039, at *2 (D. Minn. Mar. 11, 2022) (denying motion in limine and instead instructing counsel to object at trial).  Accordingly, Fesenmaier's motion in limine is granted in part and denied in part as explained above.

### C.    Mandatory Monetary Entitlements under the FCA

Fesenmaier moves to preclude Defendants from proffering evidence that the FCA allows:  (i) treble damages and penalties for each false claim, (ii) a successful realtor to

recover reasonable attorneys' fees, expenses and costs, and (iii) for a specific percentage range of any proceeds received by the United States to be awarded to the relator. Defendants raise two limited objections to Fesenmaier's motion. First, Defendants assert that both parties intend to introduce legal advice Defendants received between 2006 and 2019, which includes advice on the potential penalties and consequences of an FCA violation. Second, Defendants argue that because Fesenmaier's financial interest in the case may be relevant if Fesenmaier testifies, the Court should address these concerns through evidentiary rulings at trial. Each objection is addressed in turn.

### 1. Evidence of Treble Damages, Statutory Penalties and Fee-Shifting Provisions in the FCA

The parties dispute whether evidence of treble damages, statutory penalties and fee-shifting provisions in the FCA is admissible.

Only relevant evidence is admissible. Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. A district court may exclude relevant evidence, however, if the probative value of the evidence is substantially outweighed by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The jury's responsibility in an FCA case is to return a verdict for actual damages. *Cook Cnty. v. United States ex rel. Chandler*, 538 U.S. 119, 132 (2003). The Court is then responsible for trebling damages, assessing penalties and applying the fee-shifting

provisions of the FCA.  *Id; see also United States ex rel. Laymon v. Bombardier Transp. United States*, 656 F. Supp. 2d 540, 547–48 (W.D. Pa. 2009) (applying the general rule that instructing a jury as to treble damages, attorneys fees, or other court-determined awards is error in FCA cases) (internal quotation marks omitted).  Courts assessing whether evidence pertaining to damages beyond actual damages can be introduced have recognized the "real risk" that a jury might "invade the Court's domain by reducing its damages figure or the number of violations it finds in order to offset the effect of penalties and trebling."  *United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, No. 95-1231 (RCL), 2007 WL 851868, at *2 (D.D.C. Mar. 14, 2007).  In addition, "it is conventional wisdom" that mentioning fee-shifting, attorneys' fees or costs of litigation serves "no appropriate purpose when injected into a jury trial (other than perhaps creating the potential for unfair prejudice . . . )."  *Rodriguez v. Texan, Inc.*, No. 01 C 1478, 2002 WL 31061237, at *1 (N.D. Ill. Sept. 13, 2002).

In light of the strong possibility that references to specific treble damages, statutory penalties or fee-shifting provisions will improperly influence the jury, and the limited probative value such evidence provides, this Court finds such evidence to be inadmissible. *See Miller*, 2007 WL 851868, at *2; *Rodriguez*, 2002 WL 31061237, at *1.  Although Defendants assert that both parties intend to reference such evidence at trial, the memorandum cited in Defendants' briefing refers only generally to the existence of penalties under the FCA, without specifying the particular penalties at issue.  This general reference to statutory penalties is permissible, as it does not specify for the jury what additional penalties are contemplated beyond actual damages.  What is not permissible is

any specific evidence that might influence the jury, such as the details of provisions trebling damages, shifting attorneys' fees or imposing particular statutory penalties. Such evidence serves no purpose other than to improperly influence the jury and will therefore be excluded. *Rodriguez*, 2002 WL 31061237, at *1. For these reasons, the Court grants in part and denies in part Fesenmaier's motion in limine as to evidence of treble damages, statutory penalties and fee-shifting provisions.

### 2.      Evidence of Fesenmaier's Financial Interest in the Lawsuit

Fesenmaier also contends that, while Defendants can inquire generally as to his financial interest in the lawsuit, Defendants should be precluded from "making any reference to [Fesenmaier's] specific share of any proceeds or characterizing its size." Defendants respond that, because Fesenmaier stands to benefit financially from this litigation, the existence and scope of Fesenmaier's financial interest in this case is relevant evidence of his bias.

Only relevant evidence is admissible. Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. A district court may exclude relevant evidence, however, if the probative value of the evidence is substantially outweighed by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

As a general principle, parties may cross-examine a relator who testifies on his "significant financial interest" in the FCA action because such financial interest is relevant

to a relator's potential bias.  *United States ex rel. Savage v. CH2M Hill Plateau Remediation Co.*, No. 4:14-CV-05002, 2021 WL 802125, at *2 (E.D. Wash. Jan. 11, 2022); *Miller*, 2007 WL 851868, at *1.  However, when a relator does not testify, "his self-serving interest is irrelevant, as it does not affect whether a defendant's actions were legal or not." *United States ex rel. Kiro v. Jiaherb, Inc.*, No. CV 14-2484-RSWL-PLAx, 2019 WL 2869186, at *6 (C.D. Cal. July 3, 2016).

The admissibility of Fesenmaier's financial interest will be determined based on whether Fesenmaier testifies.  If Fesenmaier does not testify, Defendants will not be entitled to cross-examination him on his financial interest in this litigation.  If Fesenmaier testifies, Defendants are permitted to cross-examine him on his financial interest.  Because the actual percentages that Fesenmaier is entitled to are of limited probative value and could result in an improper reduction of any award of actual damages, Defendants may not introduce the specific statutory percentages of the overall recovery to which Fesenmaier is entitled.  Fed. R. Evid. 403.  However, the Court will not prohibit Defendants from making reasonable characterizations about the size of the award Fesenmaier is entitled to.

For these reasons, Fesenmaier's motion in limine is granted in part and denied in part as to evidence of his financial interest, as adressed above.

## IV.  Precision Lens's Motions in Limine

Precision Lens moves to exclude (1) inflammatory language, including references to Defendants' wealth; (2) the report and testimony of Plaintiffs' Medicare-claims expert, Ian Dew; (3) references to settlements, unrelated litigation and a purported "rebate" fund

and (4) evidence pertaining to Medicare claims for which Plaintiffs lack causation evidence. The Court addresses each motion in turn.

### A.    Inflammatory Language

Precision Lens asks this court to preclude Plaintiffs from using specific adjectives such as luxury, extravagant, lavish, exclusive, upscale, luxurious, expensive and nouns such as bribes and gifts when describing Defendants and the alleged activities at issue, on the basis that such characterizations are irrelevant and prejudicial.  Plaintiffs argue that such terms fairly reflect undisputed facts that are relevant to the government's proof that Defendants provided remuneration.  In particular, Plaintiffs assert that the fact that the meals, trips, hotels and gifts were valuable is an essential element of the offense, and the Court should not limit the characterizations of witnesses and the government when describing the purported remuneration.

The standard for relevance under Rule 401, Fed. R. Evid., is low.  *United States v. Oldrock*, 867 F.3d 934, 940 (8th Cir. 2017).  Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."  Fed. R. Evid. 401. A district court may exclude relevant evidence, however, if the probative value of the evidence is substantially outweighed by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

"Generally, any reference to the wealth or poverty of either party, or reflection on financial disparity, is improper argument."  *Brown v. Coleman Co.*, No. CIV-06-403

MV/RLP, 2007 WL 9707028, at *1 (D.N.M. Sept. 17, 2007); *see also Reilly v. Natwest Mkts. Grp., Inc.*, 181 F.3d 253, 266 (2d Cir. 1999) (observing that evidence of wealth, "which can be taken as suggesting that the defendant should respond in damages because he is rich" is inadmissible in trials not involving punitive damages). However, "evidence of wealth or extravagant spending may be admissible when relevant to issues in the case." *United States v. Bradley*, 644 F.3d 1213, 1271 (11th Cir. 2011).

To prove its FCA claims, Plaintiffs must prove that Defendants offered or paid remuneration, which includes transfers of items or services, for free or for other than fair market value. 42 U.S.C. §§ 1320-7b(b)(2); 1320-7a(i)(6). Because Defendants' spending is relevant to establishing remuneration, the Court finds that accurately describing the alleged remuneration, which includes trips, meals and other gifts, does not unfairly prejudice Defendants. Witnesses will not be barred from testifying about such practices, even if their testimony includes characterizations about the items of value provided. Nonetheless, Plaintiffs are directed to ground their case in facts, and not in subjective characterizations or in inappropriate references to Defendants' financial status. If Defendants believe that a specific characterization is unfairly prejudicial, Defendants may object at trial. But the Court declines to impose a blanket prohibition on the use of the words identified in Precision Lens' motion in limine.

The Court denies Precision Lens' motion in limine pertaining to inflammatory language.

###### B.      Medicare-Claims Expert Ian Dew

Precision Lens seeks to preclude Plaintiffs from introducing the report and testimony of Plaintiffs' expert Ian Dew, on the basis that it this evidence premised on a "taint" theory rejected by the Eighth Circuit in *Cairns*, 42 F.4th at 835.  Plaintiffs respond that Mr. Dew is not offered as an expert to testify regarding causation, his testimony will identify sets of false cataract-related Medicare claims after causation is established by other evidence.

Only relevant evidence is admissible.  Fed. R. Evid. 402.  Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."  Fed. R. Evid. 401. A district court may exclude relevant evidence, however, if the probative value of the evidence is substantially outweighed by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

The admissibility of expert testimony is an issue of law for the district court to decide and is governed by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  An expert witness "may express an opinion that is based on facts that the expert assumes, but does not know, to be true." *Williams v. Illinois*, 567 U.S. 50, 57 (2012).   "It is then up to the party who calls the expert to introduce other evidence establishing the facts assumed by the expert."   *Id.*

The Plaintiffs now represent—as they did at the summary judgment stage—that they do not intend to establish causation through Mr. Dew's testimony. Instead, Plaintiffs assert that Mr. Dew will identify sets of false cataract-related Medicare claims after causation is established by other evidence at trial.[7] Because Mr. Dew is permitted to assume facts for purposes of his analysis that Plaintiffs will prove through other sources, his testimony as to sets of false cataract-related Medicare claims is admissible. *Id.*

The Court denies Precision Lens' motion in limine pertaining to Mr. Dew's testimony.

### C.     Settlements, Unrelated Litigation and the "Rebate" Fund

Precision Lens argues that Plaintiffs should be precluded from addressing three types of evidence:  (1) evidence pertaining to Sightpath's or Dr. Jitendra Swarup's settlement in this litigation, (2) the contractual dispute between Sightpath and Defendants and (3) the "rebate" fund, also referred to as a "slush" or "secret" fund.  Plaintiffs argue that each category of evidence is admissible.  The Court addresses each argument in turn.

---

[7]     In their motion in limine briefing pertaining to Mr. Dew's testimony, the parties dispute the requisite causation standard in the wake of *Cairns*, 42 F.4th at 835.  For the reasons addressed above, the Court finds that but-for causation need not be proven to the extent that Plaintiffs rely solely on a material-falsity theory.  Because further analysis regarding the applicable causation standard is unnecessary to resolve Precision Lens' motion in limine based on Plaintiffs' representation that Mr. Dew's testimony will not be offered to establish causation, the Court declines to address this aspect of the parties' arguments.

1.    **Evidence Related to Sightpath and Dr. Swarup's Settlement in this Litigation**

The parties dispute whether evidence of settlement as to Sightpath and Dr. Swarup is admissible at trial.

Federal Rule of Evidence 408 bars the admission of settlements "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction."   Fed. R. Evid. 408(a).   But district courts have broad discretion to admit or exclude evidence of settlements for other purposes.  *See, e.g.*, *Thomas v. Law Firm of Simpson & Cybak*, 244 F.3d 682, 689 (7th Cir. 2005).  The Eighth Circuit interprets Rule 408 narrowly, explaining that it only applies "to evidence of compromise offered to prove liability for or the amount of the claim that was compromised."  *Dahlgren v. First Nat'l Bank of Holdrege*, 533 F.3d 681, 699 (8th Cir. 2008).  Evidence of settlement with third parties has been deemed admissible when excluding such evidence could confuse the jury or invite speculation about the third party's absence.  *See Kennon v. Slipstreamer, Inc.*, 794 F.2d 1067, 1070 (5th Cir. 1986) ("In a case such as this one, where the absence of defendants previously in court might confuse the jury, the district court may, in its discretion, inform the jury of the settlement in order to avoid confusion.").

Fesenmaier, who previously worked at Sightpath, filed this *qui tam* suit against the current Defendants, as well as Dr. Swarup, Sightpath and others.  Plaintiffs subsequently settled with both Dr. Swarup and Sightpath, who admitted no wrongdoing.  Given Fesenmaier's status as a former Sightpath employee, and the significant connections between Sightpath, Swarup and the remaining Defendants, the Court agrees that the

absence of Sightpath and Dr. Swarup should be explained to the jury.  The Court concludes that admitting limited evidence of the existence of a settlement, without providing specific information as to the amount of the settlement or the agreement itself, is necessary to avoid confusing the jury.  *Id.*  In addition, the Court will consider any limiting instructions submitted by the parties as to the appropriate use of such evidence in deliberations.  *See Walker*, 470 F.3d at 1275 (explaining that a limiting instruction diminishes the danger of unfair prejudice arising from the introduction of evidence).

For these reasons, Precision Len's motion in limine is denied as to evidence of settlements with Sightpath and Dr. Swarup.

### 2. Evidence Pertaining to Litigation Between Sightpath and Precision Lens

Precision Lens argues that evidence pertaining to litigation between Sightpath and Precision Lens should be excluded as irrelevant.  In response, Plaintiffs argue that the litigation is relevant to the relationship between Precision Lens and Sightpath and Precision Lens' desire to remain in a unique role as the only non-manufacturing distributor of IOLs.

Only relevant evidence is admissible.  Fed. R. Evid. 402.  Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."  Fed. R. Evid. 401. A district court may exclude relevant evidence, however, if the probative value of the evidence is substantially outweighed by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

The litigation at issue arose from Sightpath's attempts in 2013 to purchase IOLs directly from producers, essentially cutting out Precision Lens as its supplier. Precision Lens initiated a lawsuit against Sightpath, which was subsequently settled with Sightpath agreeing not to purchase IOLs from the manufacturer for surgeries within Precision Lens' territory. Here, the crux of Plaintiffs' theory is that Defendants paid kickbacks to physicians to induce physicians to use Precision Lens' IOLs in their surgeries. While the overall relationship between Precision Lens and Sightpath is relevant to this lawsuit, the settled litigation between Precision Lens and Sightpath does not make it any more or less likely that Precision Lens paid kickbacks to physicians. *See United HealthCare Corp. v. Am. Trade Ins. Co.*, 88 F.3d 563, 573 (8th Cir. 1996) (excluding evidence of lawsuit which was not relevant to issues to be decided at trial). Therefore, the Court excludes such evidence as irrelevant under Rule 401.

Accordingly, Defendants' motion in limine is granted as to the admissibility of evidence pertaining to litigation between Sightpath and Precision Lens.

### 3.    Evidence Related to the "Rebate" Fund

The parties dispute whether evidence related to the "rebate" fund is admissible. Defendants assert that evidence related to the fund is irrelevant because the fund was maintained on Precision Lens' books as a liability because the money belonged to Sightpath, not Precision Lens. In particular, Defendants assert that Plaintiffs rely solely on evidence that Sightpath CEO Jim Tiffany directed Precision Lens to pay money out of the account on three occasions. But, Defendants contend, such evidence is irrelevant because the payments were not made by Defendants. Plaintiffs argue that evidence of Defendants'

administration of the fund demonstrates knowledge and willfulness on the part of Defendants.

Only relevant evidence is admissible. Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. A district court may exclude relevant evidence, however, if the probative value of the evidence is substantially outweighed by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The Eighth Circuit has concluded that "furtive conduct by the accused" is circumstantial evidence of a defendant's knowledge. *United States v. Idriss*, 436 F.3d 946, 950 (8th Cir. 2006). In this case, evidence of furtive conduct is probative of whether Defendants "knowingly and willfully" violated the AKS. 42 U.S.C. § 1320-7b(b)(2). A reasonable jury could conclude, based on the existence of the fund on Precision Lens' books and Sightpath's use of the fund, that Precision Lens maintained the fund for Sightpath to allow the money to be used to provide kickbacks to Defendants' customers or potential customers. Given the legal standard for relevance, the Court declines to exclude evidence pertaining to the fund.

Nor does the parties' reference to the fund as a "slush" fund or "secret" fund require the exclusion of such evidence. Fed. R. Evid. 403. The record establishes that both Precision Lens' employees and Sighpath's CEO referred to the account as a slush fund or a secret fund. Moreover, the terms "slush" and "secret" are not so inherently inflammatory

37

that they substantially outweigh the probative value of the statements at issue. Therefore, the Court does not find the use of the term "slush" fund or "secret" fund inadmissible under Rule 403.

Accordingly, Precision Lens' motion in limine is denied as to evidence pertaining to the fund.

### D.      Medicare Claims Lacking Causation Evidence

Precision Lens seeks the exclusion of evidence pertaining to claims for which Plaintiffs lack causation evidence, citing the United States Court of Appeals for the Eighth Circuit's recent decision in *Cairns*, 42 F.4th 828 (2022). Plaintiffs dispute the interpretation of *Cairns* advanced by Precision Lens, asserting instead that *Cairns* requires but-for causation only for FCA cases predicated on the 2010 Amendment. Plaintiffs represent that they intend to proceed exclusively on their separate theory of material falsity. And for this reason, Plaintiffs contend that they are not bound by the but-for causation standard articulated in *Cairns*.

For the reasons addressed above, this Court concludes that but-for causation need not be proven so long as Plaintiffs proceed exclusively on their material-falsity theory. Instead, Plaintiffs must establish that Defendants' kickbacks proximately caused physicians to use Defendants' lenses in cataract surgeries billed to Medicare, in violation of the FCA. Because but-for causation is not the relevant legal standard, the Court rejects Precision Lens' argument that evidence pertaining to claims for which Plaintiffs cannot establish but-for causation must be excluded.

For these reasons, Precision Lens' motion in limine is denied.

## V.    Ehlen's Motions in Limine

Ehlen moves to (1) exclude Plaintiffs' late-disclosed "summary" spreadsheets, (2) admit the testimony of causation expert Scott Van Meter and (3) admit the testimony of Medicare expert David Gregory.  The Court addresses each motion in turn.

### A.    Summary Spreadsheets

Ehlen seeks to exclude Plaintiffs' Rule 1006 spreadsheets, arguing that: (1) Plaintiffs did not adequately disclose the bases for the Other-Subsets claims included in the spreadsheets,[8] (2) the spreadsheets were created by counsel and fail to fairly summarize evidence and (3) there is no witness who can lay an adequate foundation to admit the spreadsheets.  In response, Plaintiffs argue that the Court should permit the introduction of the spreadsheets because they are admissible and will assist the jury in its deliberations regarding Precision Lens' products used in surgeries connected to false claims.

Only relevant evidence is admissible.  Fed. R. Evid. 402.  Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."  Fed. R. Evid. 401. A district court may exclude relevant evidence, however, if the probative value of the evidence is substantially outweighed by the danger of "unfair prejudice, confusing the issues,

---

[8]    The Other-Subsets claims include 16,539 claims that Plaintiffs' expert Dew identified as recoverable by cross-referencing physicians' tax identifications numbers with lists of patient names and surgery dates provided by Plaintiffs' counsel.

misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

"Rule 1006 allows a party to 'use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court.' " *Petrone v. Werner Enters., Inc.*, 42 F.4th 962, 969 (8th Cir. 2022). For a Rule 1006 summary to be admitted, the proponent of the summary must establish that the underlying materials are themselves admissible in evidence. *Ford Motor Co. v. Auto Supply Co.*, 661 F.2d 1171, 1175 (8th Cir. 1981). In addition, the proponent must make the underlying materials available for review, and, crucially, the summary "must be an *accurate* summarization of the underlying materials involved." *White Indus., Inc. v. Cessna Aircraft Co.*, 611 F. Supp. 1049, 1070 (W.D. Mo. 1985) (emphasis in original).

Ehlen first argues that Plaintiffs did not disclose the bases for the claims included in the spreadsheets, because Plaintiffs meaningfully forestalled related discovery by falsely claiming that Plaintiffs' expert would address the topic. In truth, Ehlen contends, Plaintiffs' lawyers were deciding which claims should or should not be included in the spreadsheets provided to Plaintiffs' expert for analysis. Plaintiffs respond that they disclosed the bases for the claims underlying the spreadsheet through Darcie Boschee's deposition, which addresses the "process by which the government took information . . . and used that information to identify whether the particular surgery that is the genesis of the claim . . . involved a Precision Lens product." Plaintiffs further assert that they provided supplemental interrogatory responses to Defendants on November 7, 2019, and continued

to supplement the record in April 2020 with additional information regarding the process for identifying and cataloging relevant claims.

Although Defendants contend that Plaintiffs' disclosures were not sufficient, the Court concludes that the information provided to Defendants satisfied their discovery obligations. "Rule 1006 is an evidentiary rule, not one of discovery, and provides only that the underlying documents, not the summaries themselves, must be produced to the opposing party." *United States v. Streb*, 477 F. Supp. 3d 835, 854 (S.D. Iowa 2020) (internal quotation marks omitted). Here, the parties do not dispute that the underlying medical records and claims information were provided in discovery. Moreover, the Court finds that the disclosures Plaintiffs made in November 2019 and April 2020 were sufficient to inform Defendants of how Plaintiffs matched the claims identified in the Other-Subsets spreadsheets. Therefore, Plaintiffs' disclosures were not untimely, and the Rule 1006 summaries are not precluded.

Next, Defendants contend that the spreadsheets created by Plaintiffs are not Rule 1006 summaries, because they were created by lawyers and paralegals working for Plaintiffs, they fail to "fairly summarize voluminous trial evidence" and they are not uniform. *See United States v. Needham*, 852 F.3d 830, 837–38 (8th Cir. 2017). Plaintiffs respond that the involvement of Plaintiffs' lawyers and paralegals is a matter of weight rather than admissibility, that the spreadsheets fairly summarize voluminous trial evidence and that the spreadsheets are sufficiently uniform.

The involvement of Plaintiffs' lawyers and paralegals in assessing what claims to include does not render the summaries inadmissible but pertains to evidentiary weight.

*United States v. Hofstetter*, No. 3:15-CR-27-TAV-DCP, 2019 WL 5057176, at *5 (E.D. Tenn. Oct. 8, 2019); *see also John Wiley & Sons Inc. v. Book Dog Books, LLC*, 327 F. Supp. 3d 606, 631 (S.D.N.Y. 2018) (allowing summary evidence under Rule 1006 where one team member responsible for the preparation of the summaries could testify).  While Defendants argue that a Rule 1006 summary cannot be created by "the lawyers trying the case" under *United States v. Grajales-Montoya*, 117 F.3d 356, 361 (8th Cir. 1997), the concern addressed in *Grajales-Montoya* was predicated on the fact that the summary at issue was not "prepared by a witness available for cross-examination".  *Id.*

Moreover, the spreadsheets are not unfair summarizations.  There are nearly 100,000 unique claims at issue in this case.  And while Defendants assert that the spreadsheets do not summarize the third-party records, Plaintiffs explain that the summaries link claims data produced by the Centers for Medicare & Medicaid Services (CMS) with patient medical information identifying which surgical products were used in connection with each surgery.  These are the type of voluminous records that are appropriately summarized under Rule 1006, rather than requiring Plaintiffs to independently admit each CMS record and corresponding patient medical record to prove whether Defendants' products were used in a given surgery.  *Petrone*, 42 F.4th at 969. Questions pertaining to the uniformity of the summaries are properly addressed when Plaintiffs lay foundation for the admission of the spreadsheets.  The Court does not find the spreadsheets *per se* admissible.  Plaintiffs may attempt to lay the appropriate foundation at trial to support admission of the Rule 1006 spreadsheets.

Finally, Defendants assert that Boschee's deposition precludes her from laying the necessary foundation for the spreadsheets.  In support of this argument, Defendants point to particular excerpts from Boschee's deposition in which Boschee could not answer certain questions about the preparation of the spreadsheets.  In response, Plaintiffs contend that Defendants mischaracterize Boschee's testimony.  Plaintiffs also argue that any deficiencies in Boschee's deposition answers pertain to the credibility of her testimony, not its admissibility.

Boschee's deposition responses do not conclusively establish her ability to lay the appropriate foundation.  However, the disputes among the parties about the extent of Boschee's ability to properly lay foundation for the underlying document render the question of whether she can lay the necessary foundation for the 1006 spreadsheets premature.  Plaintiffs may call Boschee and attempt to lay the appropriate foundation for admission of the 1006 spreadsheets.  After hearing Boschee's testimony, the Court will rule on whether the foundation evidence is sufficient to allow admission of the spreadsheets.

Therefore, the Court denies Ehlen's motion in limine, subject to Plaintiffs' ability to lay the appropriate foundation at trial for the admission of the Rule 1006 summaries.

### B.      Causation Expert Scott Van Meter

Ehlen asserts that, consistent with the Eighth Circuit's decision in *Cairns*, the Court should allow Defendants to present the statistical regression analysis conducted by Scott Van Meter.  Plaintiffs respond that *Cairns* does not change the applicable causation standard in this case, and, therefore, does not provide a basis to revisit or alter the Court's previous holding to exclude these portions of Van Meter's proposed testimony.

Only relevant evidence is admissible.  Fed. R. Evid. 402.  Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."  Fed. R. Evid. 401. A district court may exclude relevant evidence, however, if the probative value of the evidence is substantially outweighed by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

As the Court explained in its summary judgment Order, Van Meter's opinion—that physicians did not buy more of Defendant's products after receiving a purported kickback—makes no fact in the case more or less likely.  Although Defendants assert that the but-for causation requirement from *Cairns* requires the Court to reconsider its earlier conclusion, *Cairns* does not apply to Plaintiff's material-falsity theory for the reasons previously explained.   As such, the Court is not persuaded that *Cairns* requires reconsideration of the Court's prior Order.

Accordingly, Van Meter is precluded from testifying as to causation and directly testifying as to Defendant's intent.  Ehlen's motion in limine seeking reconsideration of the admissibility of Van Meter's testimony is denied.

### C.    Medicare Program Expert David Gregory

Defendants request an order precluding Plaintiffs from advancing a measure of damages that calculates damages based on the full reimbursement amount paid by the United States.  Defendants also ask the Court to admit the opinions of their expert, David Gregory, addressing whether the products used in a cataract surgery affect the

reimbursement amount.  Plaintiffs respond that Defendants are improperly attempting to relitigate issues previously decided in the Court's *Daubert* Order.  And Plaintiffs argue that Gregory's testimony should be excluded because it irrelevant under the proper measure of damages.

For the reasons addressed in the Court's analysis of the United States' first motion in limine, the Court concludes that the proper measure of damages is the full amount paid for any false claims.  *See, e.g.*, *Teva Pharms.*, 2022 WL 6820648, at *4; *Novak*, 2018 WL 4205540, at *4; *Rogan*, 517 F.3d at 453.  Defendants' request to preclude Plaintiffs from advancing their proposed measure of damages is, therefore, denied.

Similarly, because the Court concludes that the appropriate measure of damages is the full value of the claims submitted for reimbursement, the Court's conclusions in its *Daubert* order regarding the admissibility of Gregory's testimony remain unaltered.  To the extent Gregory's opinions rely on a but-for causation standard or an analysis that categorically excludes Medicare claims (or portions thereof) that did not directly reimburse the costs of Defendants' products, such opinions are excluded as irrelevant and contrary to the applicable legal standard for damages.  However, Gregory's rebuttal opinions as to Dew's analysis remain admissible, in accordance with the Court's prior Order.

For these reasons, Ehlen's motion in limine pertaining to Gregory's testimony is denied.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1.     Plaintiff United States of America's motion to exclude evidence regarding surgical supplies and the value of services, (Dkt. 748), is **GRANTED**.

2.     Plaintiff United States of America's motion for clarification of orders, (Dkt. 748), is **GRANTED IN PART AND DENIED IN PART** as addressed herein.

3.     Plaintiff United States of America's motion to permit leading questions of certain witnesses, (Dkt. 748), is **GRANTED IN PART AND DENIED IN PART** as addressed herein.

4.     Plaintiff United States of America's motion to exclude evidence of investigation and discovery sanctions, (Dkt. 748), is **GRANTED IN PART AND DENIED IN PART** as addressed herein.

5.     Plaintiff Kipp Fesenmaier's motion to exclude reference to his prior bankruptcy, (Dkt. 758), is **GRANTED IN PART AND DENIED IN PART** as addressed herein.

6.     Plaintiff Kipp Fesenmaier's motion to exclude reference to Defendants' potential financial harm, (Dkt. 764), is **GRANTED IN PART AND DENIED IN PART** as addressed herein.

7.     Plaintiff Kipp Fesenmaier's motion to preclude reference to the False Claims Act's mandatory monetary entitlements, (Dkt. 769), is **GRANTED IN PART AND DENIED IN PART** as addressed herein.

8.     Defendant The Cameron-Ehlen Group, Inc., *doing business as* Precision Lens' motion to exclude inflammatory languages and references to Defendants' wealth, (Dkt. 742), is **DENIED**.

9.      Defendant The Cameron-Ehlen Group, Inc., *doing business as* Precision Lens' motion to exclude the expert report and testimony of Ian Dew, (Dkt. 744), is **DENIED**.

10.     Defendant The Cameron-Ehlen Group, Inc., *doing business as* Precision Lens' motion to exclude references to settlements, unrelated litigation and rebate fund, (Dkt. 746), is **GRANTED IN PART AND DENIED IN PART** as addressed herein.

11.     Defendant The Cameron-Ehlen Group, Inc., *doing business as* Precision Lens' motion to exclude evidence concerning claims for which Plaintiffs do not have causation evidence, (Dkt. 759), is **DENIED**.

12.     Defendant Paul Ehlen's motion to exclude Plaintiffs' late disclosed "summary" spreadsheets, (Dkt. 763), is **DENIED**.

13.     Defendant Paul Ehlen's motion to admit Van Meter expert testimony on the issue of causation, (Dkt. 768), is **DENIED**.

14.     Defendant Paul Ehlen's motion to admit testimony of defense expert David Gregory in full and exclude evidence not related to actual damages, (Dkt. 773), is **DENIED**.


Dated:  January 4, 2023                              s/Wilhelmina M. Wright
                                                    Wilhelmina M. Wright
                                                    United States District Judge