UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, ex rel. Kipp Fesenmaier, | Case No. 13-cv-3003 (WMW/DTS) |
| Plaintiffs, | **ORDER** |
| v. | |
| The Cameron-Ehlen Group, Inc., *doing business as Precision Lens*; and Paul Ehlen, | |
| Defendants. | |

This matter is before the Court on three pending evidentiary issues: (1) Defendants' objection to Plaintiffs' proposal to designate deposition testimony of James Tiffany; (2) Plaintiffs' objection to 25 witnesses that Defendants intend to call to testify during trial; and (3) Plaintiffs' request to ask leading questions during direct examination of three witnesses scheduled to testify over the coming days.

**(1) Tiffany Deposition**

Plaintiffs seek to designate the bulk of the deposition testimony of James Tiffany, who invoked his Fifth Amendment right against self-incrimination throughout his deposition and declined to answer any substantive question posed to him by counsel for any party. Defendants object on the grounds that Tiffany's invocation of his Fifth Amendment rights is not relevant to the issues in dispute and that admission of Tiffany's invocation would be unfairly prejudicial to them.

Unlike in criminal proceedings, "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976). Nor does the Fifth Amendment forbid a factfinder from drawing an adverse inference against a party when a nonparty witness invokes his or her Fifth Amendment rights. *See, e.g.*, *LiButti v. United States*, 107 F.3d 110, 120-23 (2d Cir. 1997).

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "In order for evidence to be admissible under Rule 401, it need not necessarily prove that a fact of consequence exists; it need only make it more probable that that fact exists." *Cerro Gordo Charity v. Fireman's Fund Am. Life Ins. Co.*, 819 F.2d 1471, 1482 (8th Cir. 1987).

As explained by the Eighth Circuit in *Cerro Gordo Charity*, a witness's invocation of his or her Fifth Amendment rights may appropriately serve as evidence tending to show that the witness acted wrongfully. *See id.* In this case, a reasonable factfinder could conclude that Tiffany's invocation makes it more probable that Tiffany was engaged in the activities described in other testimony admitted during trial. Tiffany's conduct, in turn, may—not *must*, but *may*—serve as one factual basis upon which a reasonable factfinder could conclude that Defendants acted in violation of the False Claims Act. The fact of Tiffany's invocation therefore is relevant.

Admission of the fact of Tiffany's invocation also would not result in unfair prejudice to Defendants. Throughout trial, Defendants have suggested that the alleged

2

wrongdoing of Tiffany is wholly separable from the actions of Defendants. Plaintiffs have attempted to show the opposite. The extent to which the jury imputes to Defendants an adverse inference from Tiffany's invocation of his Fifth Amendment rights will depend largely, if not entirely, upon how the jury resolves this factual question. The invocation is likely to be prejudicial to Defendants only to the degree that the factfinder decides to associate the conduct and interests of Tiffany with those of Defendants. That is appropriately a question for the jury.

By contrast, a lack of evidence regarding Tiffany's whereabouts might prove unfairly prejudicial—perhaps to *either* party. Tiffany is an important figure in this litigation, and his absence from trial could cause the jury to draw an unwarranted—and unpredictable—inference from his absence. Evidence of Tiffany's Fifth Amendment invocation, therefore, will fill an important evidentiary gap. *See Cerro Gordo Charity*, 819 F.2d at 1482.

Defendants' objection to the admission of Tiffany's deposition, therefore, is overruled, albeit with two caveats. First, Defendants are correct that Plaintiffs proposed designation of more than 20 pages of deposition testimony is entirely too much to serve the only appropriate purpose for which the testimony is admissible. *See* Rule 403, Fed. R. Evid. The point to be made to the jury is a simple one: Tiffany has refused to answer questions posed to him by the Plaintiffs and would likely refuse to answer questions if called to testify at trial. Plaintiffs can make that point by designating no more than two pages (50 lines) from the Tiffany deposition transcript. The transcript passages designated by Plaintiffs need not be consecutive.

Second, Defendants correctly assert that they, too, were unable to ask questions of Tiffany during his deposition. As part of an earlier objection to deposition designations, Defendants conditionally counter-designated page 30:2 to 30:25 of the Tiffany deposition transcript, during which a question posed by Defendants also was met with an invocation of Tiffany's Fifth Amendment rights. If Plaintiffs designate any portion of Tiffany's deposition testimony, Defendants will be permitted to counter-designate page 30:2-25 of the transcript as well.

**(2) Defendant Witnesses**

Plaintiffs object to 25 witnesses that Defendants intend to call to testify during trial on the grounds that Defendants did not adequately disclose these witnesses pursuant to discovery and that any testimony offered by these Defendants is likely to be irrelevant.

Of the 25 witnesses, 23 appear on the most recent list of alleged kickbacks for which Plaintiffs seek recovery in this litigation.[1] As to those defendants, the Court concludes that Defendants have adequately met their discovery obligations and that Plaintiffs cannot reasonably claim to be surprised that Defendants might intend to call those witnesses to testify. The Court also concludes that Defendants may reasonably expect to elicit

---

[1] Those witnesses are Omar Awad (Claim 4); Keith Baratz (Claim 5); Ray Birkenkamp (Claims 6-8); Kent Carlson (Claim 16); Jonathan Cutler (Claim 21); Paul Kalina (Claim 84); Jabin Krassin (Claim 89); Paul Kuck (Claims 90-94); Stephen Lane (Claims 95-96); Thomas Lang (Claims 97-100); Daniel Lange (Claims 101-104); Ronald Lange (Claim 105); Paul Leep (Claim 106); Susan Relf (Claims 150-51); Harold Rodenbiker (Claims 161-62); Thomas Samuelson (Claim 163); Scott Schafer (Claim 164); Lorne Schlecht (Claim 165-67); Mark Sczepanski (Claim 168); Mark Shanfeld (Claim 169); Jeffrey Stephens (Claim 173); Darrell Williams (Claims 234-35); and David Williams (Claim 236).

admissible testimony from any person identified by Plaintiffs as having received an alleged kickback for which Plaintiffs continue to seek recovery. Although the Court is mindful of the need for this case to be tried expediently and efficiently, it is Plaintiffs, not Defendants, who have placed and kept the conduct of these witnesses in dispute. Plaintiffs are entitled to do so. But Defendants likewise are entitled to fairly address each of the allegations of wrongful conduct for which Plaintiffs seek recovery. Plaintiffs' objections to those witnesses being called to testify are, therefore, overruled. To the extent that Defendants attempt to elicit irrelevant or otherwise inadmissible testimony from those witnesses, Plaintiffs may object during examination as appropriate.

Plaintiffs no longer seek recovery for any alleged kickbacks related to the two remaining witnesses (Lisa Graham and John Berdahl), however. It is therefore not obvious what relevant testimony those witnesses could now offer. Plaintiffs' objection to Graham and Berdahl is neither overruled nor sustained at this time. But absent further demonstration by Defendants that the testimony of Graham and Berdahl is likely to be relevant, probative and otherwise admissible, those witnesses will not be permitted to testify.

### (3) Leading Questions

Finally, Plaintiffs seek permission to ask leading questions of three witnesses—Jitendra Swarup, Brendan Shiel, and Pete Gosz—whom Plaintiffs intend to call to testify. "Leading questions should not be used on direct examination except as necessary to develop the witness's testimony." Fed. R. Evid. 611(c). "Ordinarily, the court should

allow leading questions: (1) on cross-examination; and (2) when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party." *Id*.

Swarup has evinced sufficient hostility towards Plaintiffs during this proceeding to suggest that he is likely to do so again when called by Plaintiffs to testify at trial. Requiring Plaintiffs to begin their examination of Swarup without the use of leading questions is likely only to delay the inevitable—and to require setting aside valuable juror time for Plaintiffs to renew their request to proceed with leading questions. Plaintiffs, therefore, will be permitted to ask leading questions of Swarup during direct examination.

Shiel has not demonstrated the same hostility as Swarup towards Plaintiffs. However, Plaintiffs contend that Shiel is represented by the same counsel as Defendants—a contention that Defendants have not disputed.[2] The Court, therefore, concludes that Shiel is sufficiently identified with an adverse party for Plaintiffs to begin their examination of Shiel with the use of leading questions.

Gosz, like Shiel, has not yet demonstrated sufficient hostility towards Plaintiff to justify use of leading questions during direct examination. Moreover, unlike Shiel, Gosz is not represented by Defendants' counsel—again, assuming Plaintiffs' representations in this regard to be truthful. The Court, therefore, concludes that there is not an adequate basis upon which to permit Plaintiffs to examine Gosz through leading questions. Plaintiffs may renew their request, however, should circumstances change during Gosz's testimony.

---

[2] Defendants have stated that "if anything, the [three] witnesses are aligned with the Government and/or hostile to Defendants." (Dkt. 870 at 1.) It is difficult to see how this could possibly be true in the case of Shiel, assuming Plaintiffs are correct that Shiel shares counsel with Defendants.

# ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1. Defendants' objection to the designation of deposition testimony of James Tiffany is **SUSTAINED IN PART and OVERRULED IN PART**:

   a. Plaintiffs may designate no more than 50 lines from the Tiffany deposition transcript for presentation to the jury. The designated lines need not be consecutive.

   b. Should Plaintiffs designate any portion of Tiffany's deposition testimony, Defendants may counter-designate page 30:2-25 of the transcript.

2. Plaintiffs' objection to 25 witnesses whom Defendants intend to call to testify is **OVERRULED IN PART**:

   a. The objection is **OVERRULED** with respect to the following witnesses: Omar Awad, Keith Baratz, Ray Birkenkamp, Kent Carlson, Jonathan Cutler, Paul Kalina, Jabin Krassin, Paul Kuck, Stephen Lane, Thomas Lang, Daniel Lange, Ronald Lange, Paul Leep, Susan Relf, Harold Rodenbiker, Thomas Samuelson, Scott Schafer, Lorne Schlecht, Mark Sczepanski, Mark Shanfeld, Jeffrey Stephens, Darrell Williams, and David Williams. Defendants may call to testify any witness alleged to have received a kickback for which Plaintiffs continue to seek recovery.

   b. Plaintiffs' objection with respect to witnesses Lisa Graham and John Berdahl is neither sustained nor overruled at this time.

7

3. Plaintiffs are permitted to ask leading questions during their direct examination of witnesses Jitendra Swarup and Brendan Shiel.

Dated:  January 22, 2023                                          s/Wilhelmina M. Wright
                                                                  Wilhelmina M. Wright
                                                                  United States District Judge