UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, ex rel. Kipp Fesenmaier, | Case No. 13-cv-3003 (WMW/DTS) |
| Plaintiff, | **ORDER** |
| v. | |
| The Cameron-Ehlen Group, Inc., doing business as Precision Lens; and Paul Ehlen, | |
| Defendants. | |

This matter is before the Court on Plaintiff United States of America's motion to substitute Defendant Paul Ehlen, who recently died, with his wife Kathryn Weitzel Ehlen in her role as personal representative for Paul Ehlen's estate. For the reasons addressed below, the motion is granted.

BACKGROUND

Plaintiffs brought this action alleging that Paul Ehlen and a business entity that he largely controlled, Defendant The Cameron-Ehlen Group, Inc., provided ophthalmologists with meals, tickets for sporting events, and other items of value with the goal that those persons would do business—or would continue doing business—with Ehlen and his company. The ophthalmologists later sought reimbursement from Medicare for procedures that involved the use of products purchased from Ehlen's company. When seeking reimbursement from Medicare, the ophthalmologists did not disclose that they had received

benefits that the United States later characterized as kickbacks from Ehlen and his company. According to the United States, the doctors violated the False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq., each time that they sought Medicare reimbursement and failed to disclose that they had received kickbacks. And because Ehlen had induced those FCA violations, he had violated the FCA as well.

Following a trial that spanned most of two months, a jury concluded that the United States established that Ehlen had caused to be submitted 64,575 false claims resulting in $43,694,641.71 in damages to Medicare. (*See* Verdict Form at 5-6, Dkt. 985.) Judgment was entered on May 12, 2023, against Ehlen and The Cameron Ehlen Group, Inc., in the amount of $487,048,705.15, excluding interest, statutory attorneys' fees, or other taxable costs. (*See* Judgment, Dkt. 1043.) Nearly three quarters of this amount represents statutory penalties. *See* 31 U.S.C. § 3729(a)(1). The remainder of the judgment consists of the approximately $43 million in actual damages found by the jury as multiplied by the FCA's provision for trebling actual damages. *See id.* That judgment remains subject to post-trial motions practice and may be the subject of an appeal after that motions practice has concluded.

Ehlen died in a plane crash shortly after judgment was entered. The United States now seeks to replace Ehlen as a defendant in this action pursuant to Rule 25(a)(1) of the Federal Rules of Civil Procedure, substituting his wife, Kathryn Weitzel Ehlen, in her role as personal representative for the Estate of Paul C. Ehlen.[1] Kathryn Weitzel Ehlen opposes

---

[1] The United States initially requested that the Estate itself serve as a replacement defendant, (*see* Dkt. 1064), but the brief in opposition to the United States's motion to

the motion, arguing that the FCA claims against her husband were extinguished upon his death.

## ANALYSIS

Rule 25(a)(1), Fed. R. Civ. P., provides that "[i]f a party dies and the claim is not extinguished, the court may order substitution of the proper party." Kathryn Weitzel Ehlen contends that the claims brought against Paul Ehlen under the FCA extinguished upon his death and that neither she nor anyone else may be substituted as a defendant.[2]

Depending on the specific claim at issue, whether a particular claim has become extinguished upon the death of a party is determined by one of three sources of law. First, state law sometimes governs whether a claim extinguishes upon the death of the party. For example, state-law claims are governed by the abatement law of the state that created the cause of action. *See Martinez v. 35-50 81st St. Realty LLC*, No. 20-cv-3167 (MKB/SJB), 2021 WL 2877415, at *1 (E.D.N.Y. June 21, 2021) ("Whether a state-law claim survives the death of a plaintiff is governed by state law."). But the same is true for some claims under federal law. For example, whether a claim brought pursuant to 42 U.S.C. § 1983

---

substitute contended that Kathryn Weitzel Ehlen in her role as personal representative for the Estate would be a more appropriate substitute defendant. The United States, in turn, "do[es] not oppose the substitution of Ms. Kathryn Ehlen in her role as personal representative for the estate of Mr. Ehlen, provided that Ms. Ehlen as substituted party will have the authority to bind the estate." (Dkt. 1076 at 2.) The Court will therefore regard the motion for substitution as concerning Kathryn Weitzel Ehlen rather than the Estate itself.

[2] The Cameron-Ehlen Group, Inc., remains a party to this action regardless of whether a substitute defendant is named for Ehlen. *See* Fed. R. Civ. P. 25(a)(2) ("After a party's death, if the right sought to be enforced survives only to or against the remaining parties, the action does not abate, but proceeds in favor of or against the remaining parties.").

survives the death of a party is a question of state law rather than federal law. *See Robertson v. Wegmann*, 436 U.S. 584 (1978). These instances are rare, however. For most federal-law causes of action, the question of whether the claim extinguishes upon the death of a party is answered by reference to the second source of law on abatement: federal common law. *See United States v. NEC Corp.*, 11 F.3d 136, 137 (11th Cir. 1993) ("In the absence of an expression of contrary intent, the survival of a federal cause of action is a question of federal common law."). The United States Court of Appeals for the Eighth Circuit has characterized the "traditional federal common law rule" to be "that penal claims—as distinct from remedial claims—abate on death." *Guenther v. Griffin Constr. Co., Inc.*, 846 F.3d 979, 986 (8th Cir. 2017); *accord Ex parte Schreiber*, 110 U.S. 76, 79-80 (1884).

Federal common law is sometimes supplanted by federal statutory law, the third potential source of law on abatement. For example, 28 U.S.C. § 2404 provides that "[a] civil action for damages commenced by or on behalf of the United States or in which [the United States] is interested shall not abate on the death of a defendant but shall survive and be enforceable against his estate as well as against surviving defendants." Actions brought under the FCA are actions "commenced by or on behalf of the United States." If this action is an "action for damages," Section 2404 controls and the action did not abate with respect to Ehlen upon his death.

The FCA creates three forms of civil liability for persons found to have violated that statute. First, a person found liable under the FCA is responsible for the "damages which the Government sustains because of the act of that person." 31 U.S.C. § 3729(a)(1). This

4

is a damages provision within the meaning of Section 2404. Not only is the word "damages" used in the provision, but the recovery afforded to the United States by this provision is consistent with the traditional definition of damages: "Money claimed by, or ordered to be paid to, a person as compensation for loss or injury." Damages Definition, Black's Law Dictionary (11th ed. 2019), *available at* Westlaw. The FCA compensates the United States for its loss resulting from false or fraudulent claims.

Second, the FCA includes a provision that multiplies the amount of actual damages for which the defendant is liable. Usually, as in this case, the amount recoverable by the United States is "3 times the amount of damages." 31 U.S.C. § 3729(a)(1). Whether this multiple is itself "damages" within the meaning of Section 2404 is not obvious, as "treble damages have a compensatory side, serving remedial purposes in addition to punitive objectives." *Cook County, Ill. v. United States ex rel. Chandler*, 538 U.S. 119, 130 (2003). The trebling provision is intended to punish wrongdoers, but it also is intended to cover the expenses of investigation, to provide an overage from which a relator may be compensated, and to offset the lack of prejudgment interest owed under the FCA—motives that have been characterized as compensatory rather than punitive. *Id*. at 130-31. The Eighth Circuit has not addressed the question directly, but every court except one that has considered the question appears to have concluded that the FCA's trebling provision is sufficiently compensatory to be fairly classified as remedial rather than punitive. *See, e.g.*, *United States ex rel. Robinson-Hill v. Nurses' Registry & Home Health Corp.*, No. 5:08-cv-145-(KKC), 2015 WL 3403054, at *2-3 (E.D. Ky. May 27, 2015); *United States ex rel. Hood v. Satory Global, Inc.*, 946 F. Supp. 2d 69, 80-81 (D.D.C. 2013); *but see United States ex rel.*

*Harrington v. Sisters of Providence in Oregon*, 209 F. Supp. 2d 1085, 1088-89 (D. Or. July 22, 2002).

Third, the FCA provides that, for each false claim submitted to the United States, the defendant is liable "for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990." 31 U.S.C. § 3729(a)(1). The statute is clear that this is *not* a damages provision. Consistently throughout the text of the FCA, this penalty is contrasted with the damages provisions discussed above. *See* 31 U.S.C. § 3729(a)(3) ("A person violating this subsection shall also be liable to the United States Government for the costs of a civil action brought to recover any such penalty or damages."); 31 U.S.C. § 3730(d)(2) ("If the Government does not proceed with an action under this section, the person bringing the action or settling the claim shall receive an amount which the court decides is reasonable for collecting the civil penalty and damages.").

Case law discussing whether the FCA's trebling provision should be characterized as "remedial" or "punitive" cannot reasonably be described as abundant. But case law discussing the interaction of Section 2404 with the FCA's penalty provision is, so far as this Court can tell, non-existent. The reason for this may be that, in many cases where a defendant is found liable under the FCA, civil penalties are only a trivial percentage of the amount owed by the defendant. Many substituted defendants, therefore, might reasonably have concluded that litigating the effect of the civil-penalty provision on the operation of Section 2404 would cost more money than it was likely to save. But this case is not the typical FCA case. The jury in this matter concluded that Ehlen caused nearly 65,000 false

6

claims to be submitted to the United States. This resulted in more than $350 million in civil penalties being assessed against Ehlen. By contrast, the jury concluded that the United States suffered only $43,694,641.71 in damages. This damages amount, even when trebled to $131,083,925.13, is substantially less than the penalty amount Ehlen owed.[3] Even if every penny of the trebled damages amounts to compensatory relief rather than a punitive fine (which is debatable), the majority of the judgment entered against Ehlen was a penalty rather than damages.

Because the case law addressing the survivability of claims under the FCA does not grapple with the FCA's penalty provision, that case law does not resolve the question whether the FCA claims against Ehlen survive his death. The case law is similarly unhelpful for another reason: It consistently conflates federal common law and the requirements of Section 2404.

The "traditional federal common law rule" is "that penal claims—as distinct from remedial claims—abate on death." *Guenther*, 846 F.3d at 986. Under Section 2404, by contrast, "action[s] for damages commenced by or on behalf of the United States or in which it is interested shall not abate on the death of a defendant." At first blush, these rules appear to be similar, and courts frequently equate the phrase "action for damages" in Section 2404 with formulations such as "remedial claims" used by courts applying federal common law. But there is a key difference. The federal common law rule, at least as often

---

[3] At this time, the Court does not reach the issue of whether the penalties and treble damages assessed against the defendants in this matter violate the Excessive Fines Clause of the United States Constitution. *See United States v. Aleff*, 772 F.3d 508, 512-13 (8th Cir. 2014).

interpreted, requires courts to determine primacy as to whether a claim can be more fairly characterized, on the whole, as one for remedial damages or as a penalty. *See, e.g.*, *Murphy v. Household Finance Corp.*, 560 F.2d 206, 209 (6th Cir. 1977); *Robinson-Hill*, 2015 WL 3403054, at *2-3 (applying *Murphy* in concluding that "the FCA is primarily remedial in nature" and therefore does not abate on the death of the defendant). Section 2404, by contrast, is categorical. If the action is a "civil action for damages commenced by or on behalf of the United States," then the action survives the death of the defendant.

The FCA clearly is both remedial and punitive. Indeed, the Supreme Court repeatedly has said as much, although with differing emphasis over time, sometimes stressing the punitive nature and other times emphasizing the remedial purpose of the statute. *See, e.g.*, *Chandler*, 538 U.S. at 130; *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 784-86 (2000) (characterizing trebling provision and civil penalties as "essentially punitive in nature"); *United States v. Bornstein*, 423 U.S. 303, 314 (1976) (describing damages multiplier as remedial in nature). The dual nature of the FCA would present severe difficulties under the rule of abatement created by federal common law, which requires courts to place claims for relief within a single category, remedial or punitive.

The inquiry required by Section 2404, by contrast, is simpler. To survive the death of the defendant, Section 2404 requires only that an action be a "civil action for damages."

8

An action under the FCA is an action for damages insofar as it seeks remedial relief.[4] *See* 31 U.S.C. § 3729(a)(1). Such an action is *also* an action for non-damage remedies, including civil penalties. But so long as damages are sought, the action is one for damages. Accordingly, under the plain language of Section 2404, an action brought under the FCA seeking remedial relief to any degree survives the death of the defendant, even if the request for punitive relief comes to predominate over the request for remedial relief.[5]

This categorical rule is mandated by statute and allows the Court to calculate with a degree of certainty how much of Ehlen's liability could be attributable to penalties rather than damages. Instead of requiring federal courts to attempt to categorize FCA actions in their infancy as primarily remedial or punitive, Section 2404 requires federal courts only to determine whether damages are sought at all—whether the action is "[a] civil action for

---

[4] Some courts have concluded that FCA liability can attach even in the absence of damages to the United States. *See, e.g.*, *United States ex rel. Feldman v. Van Gorp*, 674 F. Supp. 2d 475, 481-82 (S.D.N.Y. 2009) (surveying cases). The question of whether damages are a necessary element of a claim under the FCA need not be resolved here; it suffices to say that the United States argued, and the jury agreed, that Ehlen caused false claims to be presented to the United States and that the false information was material to the United States's decision to pay the claim. (*See* Jury Instruction 11,982). Consequently, in this case, damages were a necessary component of the United States's claims.

[5] The Court briefly makes two additional points. First, there is no constitutional limitation upon the survival of claims that are primarily punitive in nature following the death of the defendant. Even in the criminal context, "the abatement rule does not have a constitutional basis," rather it is a creature of federal common law. *See United States v. Volpendesto*, 755 F.3d 448, 453 (7th Cir. 2014). Second, under Section 2404, it is expressly the "action" that survives, not merely that part of the action or claim that can be characterized as compensatory. In this respect, Section 2404 is consistent with the federal common law rule. *See Fed. Sav. & Loan Ins. Corp. v. Fielding*, 316 F. Supp. 82, 85 (D. Nev. 1970).

damages," as this one is.[6]  (*See also* Am. Compl. ¶ 118, Dkt. 20) (alleging that "[t]he United States has been damaged as a result" of defendants' conduct).

The United States's motion to substitute is granted.  Kathryn Weitzel Ehlen in her role as personal representative for the Estate of Paul C. Ehlen is substituted as a defendant for Paul Ehlen, and the Clerk of Court is directed to adjust the docket accordingly.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. The motion of Plaintiff United States of America to substitute Defendant Paul Ehlen, (Dkt. 1063), is **GRANTED**.

2. Kathryn Weitzel Ehlen in her role as personal representative for the Estate of Paul C. Ehlen is substituted as a defendant for Paul Ehlen, and the Clerk of Court is directed to adjust the docket accordingly.

Dated: October 11, 2023               s/Wilhelmina M. Wright
                                      Wilhelmina M. Wright
                                      United States District Judge

---

[6] Defendants earlier argued that the United States did not suffer any damages resulting from Ehlen's conduct.  Kathryn Weitzel Ehlen renews this argument for the purpose of contending that the FCA is wholly punitive as applied to this case.  Both the Court on summary judgment and the jury through its verdict rejected the contention that the United States did not suffer damages resulting from Ehlen's conduct, and the Court declines to revisit either of those conclusions.